**Declaration of Molly Lauterback**

1. I am a Senior Staff Attorney in the Immigration Practice at Brooklyn Defender Services ("BDS").

2. BDS is a nonprofit legal services provider which represents detained clients in removal proceedings under the auspices of the New York Immigrant Family Unity Project ("NYFIUP").

3. Through NYFIUP, qualified indigent people who are detained by Immigration and Customs Enforcement ("ICE") are entitled to free legal representation when they are facing deportation.

4. I met with Mr. ███████████ on February 27, 2025 over video. At that time, he was detained at the Moshannon Valley Processing Center. I assessed that he was eligible for our services.

5. Mr. ███████████ Notice to Appear ("NTA"), which I have reviewed, states that he is a citizen of Venezuela who entered the United States at or near Eagle Pass, Texas on December 15, 2023 and charges him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General.

6. On February 27, 2025, I entered my appearance as his attorney with the Elizabeth Immigration Court in New Jersey.

7. On March 7, 2025, ICE filed a Form I-213 in Mr. ███████████ case. The I-213 states that he "has been identified as a Tren de Aragua gang associate." ICE has not provided any information beyond that one sentence to support that allegation.

8. Mr. ███████████ has a pending application for asylum, which he timely filed on August 30, 2024, and the basis for which is his fear of harm and mistreatment from multiple criminal groups, including the Tren de Aragua gang.

9. On March 7, 2025, Mr. ███████████ wife informed our office that she was unable to add money into Mr. ███████████ commissary account because it had been deactivated.

10. That same day, I sent an email to ICE stating "As you know, Mr. ███████████ has counsel and a pending removal proceeding before the Elizabeth Immigration Court and therefore cannot be transferred. Can you confirm that Mr. ███████████ is not being transferred to a different facility?" In response, I received an email on Monday, March 10, 2025 that the matter was being investigated.

11. On March 10, 2025, Mr. ▮▮▮▮▮▮▮▮ location in the ICE Detainee Locator site was changed to the El Valle Detention Facility in Texas.

12. On March 10, 2025, I sent an email to the El Valle Detention Facility contacts asking for a video call with my client and attaching my Form G-28, Notice of Entry of Appearance as Attorney and Attorney ID Card. I received multiple bounce back auto-responses, but I did not receive any actual responses to my request for a call with my client.

13. On March 12, 2025, I appeared for Mr. ▮▮▮▮▮▮▮▮ first master calendar hearing before the Immigration Court. Mr. ▮▮▮▮▮▮▮▮ was not produced.

14. During the March 12 immigration hearing, the ICE attorney stated that she believed Mr. ▮▮▮▮▮▮▮▮ was at El Valle and that he would be transferred again. When asked where he would be transferred, the ICE attorney stated that she did not know.

15. I explained on the record that I had been unable to speak with my client since his transfer to El Valle and that ICE's failure to allow for our communication was interfering with his due process rights.

16. During the hearing, the ICE attorney did not mention anything about my client's supposed association with the Tren de Aragua.

17. The Immigration Judge reset the case for a master calendar hearing for March 26, 2025 and instructed ICE to submit to the court a completed Form I-830, Notice to EOIR: Alien Address, which informs the Immigration Court of a noncitizen's address and detention status.

18. The Immigration Judge also instructed ICE to assist in facilitating calls between my client and me.

19. I made several attempts to contact my client after ICE failed to produce him for his Master Calendar Hearing.

    a. On March 13, 2025, I emailed the ICE attorney who had appeared in court. She did not respond. On March 14, 2025, I emailed her again and she responded saying "at this point you are ahead of what I am aware of." When I asked her where my client would be transferred next, I did not receive a response.

    b. On March 14, 2025, I emailed El Valle for the third time to speak to my client and finally received this response at 10:19 am EST: "Good morning, you client [] is no longer at EVDF." When I asked where he was, I was told "We do not have that information." After receiving that email, I forwarded it to multiple ICE deportation officers for whom I have contact information.

    c. I did not hear back via email so, later in the day on March 14, 2025, I called Assistant Field Office Director Francis Kemp to ask where my client was. Mr. Kemp

      instructed me to send him an email because he was not in his office and stated that my need to know my client's whereabouts was not his problem.

20. At approximately 11:00 am EST on March 14, 2025, ICE filed via ECAS Form I-830, Notice to EOIR: Alien Address, showing that my client was detained at the El Valle Detention Center.

21. The afternoon of March 14, 2025, my client called me from a paid recorded call. After ICE told him he was being moved in preparation for a flight, he was returned to El Valle and called me. I understand ICE is saying they will put him on a flight Saturday, March 15 or Sunday, March 16.

22. I emailed the El Valle Detention Facility at around 1:30pm on March 14, 2025 requesting a confidential call with my client. I received an email stating, "At the moment non-citizen has not arrived to their dorm, once he is available, we will try our best to connect." Later that day, I again spoke to my client from El Valle when he called me from a paid recorded line. During the call he said he had no privacy. I was finally able to have confidential conversation with my client the evening of March 14.

23. Acting Assistant Field Office Director Joseph Pujol responded to my earlier email stating, "Your client remains detained at El Valle at this time." When I asked where he was going to be transferred next, Officer Pujol stated, "Unfortunately he is not a NYC case so I have no further information." Officer Pujol connected me to Deportation Officer Josh Belcher who emailed me and said, "I am monitoring his case, however, I am unable to provide reasoning for his transfer." When I asked where my client would be transferred next, I did not receive a response.

I, Molly Lauterback, swear under penalty of perjury that the forgoing declaration is true and correct to the best of my knowledge and recollection.

_____                     03/14/2025_____

Name: Molly Lauterback

3