UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.G.G., *et al.*, | Civil Action No. 1:25-cv-00766 |
| Plaintiffs-Petitioners, | |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| Defendants-Respondents. | |

**MOTION TO STAY THE MARCH 18 MINUTE ORDER**

What began as a dispute between litigants over the President's authority to protect the national security and manage the foreign relations of the United States pursuant to both a longstanding Congressional authorization and the President's core constitutional authorities has devolved into a picayune dispute over the micromanagement of immaterial factfinding. In a series of orders this Court has requested the Government to provide it details about the movements of aircraft outside of the United States and interactions with foreign nations which have no bearing on any legal issue at stake in the case. The underlying premise of these orders, including the most recent one requiring the production of these facts *ex parte* today at noon, is that the Judicial Branch is superior to the Executive Branch, particularly on non-legal matters involving foreign affairs and national security. The Government disagrees. The two branches are coequal, and the Court's continued intrusions into the prerogatives of the Executive Branch, especially on a non-legal and factually irrelevant matter, should end.

The Court's pending questions relate to a comment by the Court to a Government attorney suggesting, incorrectly, that the attorney had the ability to divert aircraft operating at the

President's direction on an extraterritorial mission to remove members of a designated foreign terrorist organization from the United States in connection with one or more sensitive diplomatic agreements requiring months of negotiation. The comment betrayed a complete misunderstanding of the serious national security, safety, regulatory, and logistical problems presented by a fiat from the Court directed at pilots operating outside the United States and was made without regard to whether any such aircraft could feasibly be diverted or even had enough fuel to safely do so. Further, the Court did not pause the hearing to give the attorney an opportunity to act on the remark, nor did it memorialize the remark in the subsequent minute order.

There is no serious dispute that the Government complied with the minute order, and the pending questions are grave encroachments on core aspects of absolute and unreviewable Executive Branch authority relating to national security, foreign relations, and foreign policy. Even addressing the questions in an *ex parte* submission would result in an immediate flood of media inquiries and demands for the information, subjecting the diplomatic relationships at issue to unacceptable uncertainty about how the Court will address those demands. Worse, the risks created by addressing the Court's pending questions would undermine the Executive Branch's ability to negotiate with foreign sovereigns in the future by subjecting all of the arrangements resulting from any such negotiations—as well as the negotiations themselves—to a serious risk of micromanaged and unnecessary judicial fishing expeditions and potential public disclosure.

Accordingly, Defendants seek a stay of this Court's order today requiring the production of specific information *ex parte* tomorrow in under 24 hours, at noon today. The Government continues to object to the compelled disclosure of the immaterial information sought and believes that the court's actions to date represent grave usurpations of the President's powers under the

Alien Enemies Act ("AEA") and his inherent Article II powers. Subject to that continuing objection, the Government submits that a stay is warranted here for four reasons.

*First*, Defendants are currently evaluating whether to invoke the state secrets privilege as to portions of the information sought by this Court's order. Whether and how to invoke that privilege involves both weighty considerations and specific procedures that are not amenable to the 21-hour turnaround period currently provided by this Court's order.[1] This Court itself raised the possibility that the Government might raise the state secrets privilege as a potential basis for not producing information. *See*, *e.g.*, 3/17/25 Tr. at 9:25-10:18. The Government cannot hastily conduct an evaluation of the invocation of that privilege except in exigent circumstances, and the flightpath of an airplane that landed three days ago is not an exigent circumstance warranting such evaluation.

This Court should therefore stay or delay its order to provide Defendants an opportunity to make an orderly but expedited decision as to whether to invoke the state secrets privilege and, if so, as to what information. Indeed, the Supreme Court has instructed that a "formula of compromise" must be applied to cases in which the state secrets privilege may be raised. *United States v. Reynolds*, 345 U.S. 1, 9 (1953). Further, a "court may [not] automatically require a complete disclosure to the judge before the claim of privilege will be accepted in any case," and a court may glean "from all the circumstances of the case" without disclosure, even ex parte, whether

---

[1] *See* Attorney General Memorandum for Heads of Executive Departments and Agencies Heads of Department Components on Supplement to Policies and Procedures Governing Invocation of the State Secrets Privilege (Sept. 30, 2022), https://www.justice.gov/d9/pages/attachments/2022/09/30/supplement_to_policies_and_procedures_governing_invocation_of_the_state_secrets_privilege.pdf (explaining that generally the request to invoke the privilege and requisite declaration(s) "must be provided to the Department of Justice at least 40 calendar days before the date it is anticipated that the privilege must be invoked in litigation," with "final declarations" being submitted at least 15 calendar days before and that the "request, declaration(s), and required Department recommendations must be presented to the Attorney General for decision at least 10 calendar days before the date it is anticipated that the privilege must be invoked in litigation").

compulsion will expose "matters which, in the interest of national security, should not be divulged." *Id*. at 10. A cautious approach, rather than an expedited deadline of less than 24 hours, is warranted to avoid forcing the Government into a Hobson's choice—a hasty and potentially underexamined invocation of the state secrets privilege or the release of sensitive national security and foreign affairs information. To that end, the "formula of compromise" in this case is simple and clear: stay the Court's order until the circuit court has ruled on the Government's pending stay motion.

*Second*, a stay is warranted because a decision by the D.C. Circuit on the Government's request for a stay pending appeal is likely imminent. That court set a highly expedited briefing schedule which will be completed by 5pm tomorrow, and a decision will likely be issued by the end of the week. That decision is expected to provide important guidance as to this Court's authority to review Presidential determinations under the AEA, as well as the scope of judicial review, if any.

As the government has explained in its motion to dissolve the TRO, this case is not even justiciable. *See generally* Doc. 26. In particular, the D.C. Circuit has explicitly characterized the AEA as providing "*[u]nreviewable* power in the President to restrain, and to provide for the removal of, alien enemies in time of war[, which] *is the essence of the Act*." *Citizens Protective League v. Clark*, 155 F.2d 290, 294 (D.C. Cir. 1946) (emphasis added)). *Citizens Protective League* remains binding authority and underscores why judicial intervention is particularly unwarranted here. *See also Ex parte Gilroy*, 257 F. 110, 112 (S.D.N.Y. 1919) ("The authority of the President to promulgate by proclamation or public act 'the manner and degree of the restraint to which they (alien enemies) shall be subject, and in what cases,' is, of course, *plenary and not reviewable*." (emphasis added)). The government also possesses very strong arguments that

4

Plaintiffs' claims necessarily *and exclusively* sound in habeas—which would incontrovertibly preclude this Court's assertion of jurisdiction. *See* Doc. 26 at 7-11.

Particularly because the Court's inquiries relate only to retrospective and immaterial facts, and not future compliance, there is simply no need for the information at issue before the D.C. Circuit can issue its stay ruling.

Moreover, the Government has already set forth its arguments for why its actions complied with this Court's March 16 minute order, *see* Doc. 24, which do not require reference to any of the information sought to support those arguments. And Plaintiffs have not explained why they need any of the requested information to raise whatever compliance arguments they intend to make either. In short, the Plaintiffs and the Court are seeking information about a past event to which the Government has already spoken and which has no salience to the Plaintiffs' claims. Continuing to beat a dead horse solely for the sake of prying from the Government legally immaterial facts and wholly within a sphere of core functions of the Executive Branch is both purposeless and frustrating to the consideration of the actual legal issues at stake in this case. This consideration also warrants a stay.

*Third*, disclosure of the information sought could implicate the affairs of United States allies and their cooperation with the United States Government in fighting terrorist organizations. Such disclosure would unquestionably create serious repercussions for the Executive Branch's ability to conduct foreign affairs. The prospect of hasty and wholly unnecessary disclosure of this information, which these continued proceedings have made manifest, would have a chilling effect on the willingness of other nations to cooperate with the United States. The Court has no basis to intrude into the conduct of foreign affairs by the Government, and a more deliberative and respectful approach is warranted.

*Fourth*, the government does not currently have any assurance at this time that information provided to the Court on an *ex parte* basis would not subsequently be provided to the Plaintiffs or the general public before the Government could seek appellate review of that further disclosure. Once that secondary disclosure occurred, any opportunity for appellate review would be moot; the damage would be done, and the effect on United States foreign policy could be catastrophic.

Therefore, the Government requests that before the Court mandates disclosure of the information sought by the March 18 order, that the Court commit not to make further disclosures of that information before the Government would have an opportunity to seek expedited appellate review of that further disclosure.

## CONCLUSION

The Court has now spent more time trying to ferret out information about the Government's flight schedules and relations with foreign countries than it did in investigating the facts before certifying the class action in this case. That observation reflects how upside-down this case has become, as digressive micromanagement has outweighed consideration of the case's legal issues. The distraction of the specific facts surrounding the movements of an airplane has derailed this case long enough and should end until the Circuit Court has had a chance to weigh in. The Government respects this Court and has complied with its request to present the Government's position on the legality of the Court's TRO and the Government's compliance with that TRO. The Government now asks the Court to accord it the same respect as a coequal branch by staying its order until the important issues raised by this case are considered by the circuit court. Defendants' request for a stay of this Court's March 18 order should be granted.

Respectfully Submitted,

PAMELA J. BONDI
U.S. Attorney General

TODD BLANCHE
Deputy Attorney General

EMIL BOVE
Principal Associate Deputy
Attorney General

CHAD MIZELLE
Acting Associate Attorney General

ABHISHEK KAMBLI
Deputy Associate Attorney General

YAAKOV M. ROTH
Acting Assistant Attorney General

s/ Drew C. Ensign
DREW C. ENSIGN
Deputy Assistant Attorney General
950 Pennsylvania Avenue
Washington, DC 20530
Phone: (202) 514-2000
e-Mail: drew.c.ensign@usdoj.gov

AUGUST E. FLENTJE
Acting Director

EREZ REUVENI
Assistant Director

BRIAN C. WARD
Acting Assistant Director

CHRISTINA P. GREER
Senior Litigation Counsel

PATRICK GLEN
Senior Litigation Counsel