UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.G.G., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>    Defendants. | Civil Action No. 25-766 (JEB) |

**ORDER**

Mere hours before their filing deadline and characterizing the Court's proceedings as "a picayune dispute over the micromanagement of immaterial factfinding," Defendants seek to stay the Court's Order requiring them to produce *in camera* particular information. See ECF No. 37 (Mot.) at 1. Although their grounds for such request at first blush are not persuasive, the Court will extend the deadline for one more day.

To begin, the Court seeks this information, not as a "micromanaged and unnecessary judicial fishing expedition[]," id. at 2, but to determine if the Government deliberately flouted its Orders issued on March 15, 2025, and, if so, what the consequences should be.

The Government requests a "stay or delay" in part to "make an orderly but expedited decision as to whether to invoke the state secrets privilege and, if so, as to what information." Id. at 3. That privilege exists when "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." United States v. Reynolds, 345 U.S. 1, 10 (1953). When such circumstances exist, courts do not "jeopardize the security which the privilege is meant to protect by insisting upon an examination

1

of the evidence, even by the judge alone, in chambers." Id.  The privilege "is not to be lightly invoked." Id. at 7.  To do so, the Government must make a "formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." Id. at 7–8.

The Government's Motion is the first time it has suggested that disclosing the information requested by the Court could amount to the release of state secrets.  To date, in fact, the Government has made no claim that the information at issue is even classified.  Classification is generally considered to be less protective than the state-secrets privilege.  See Mohamed v. Jeppesen Dataplan, Inc., 614 F.3d 1070, 1082 (9th Cir. 2010).  It thus appears to be an uncommon occurrence for the disclosure of unclassified information to threaten state secrets.

Defendants relatedly maintain that "[e]ven addressing the questions in an *ex parte* submission would result in an immediate flood of media inquiries and demands for the information, subjecting the diplomatic relationships at issue to unacceptable uncertainty about how the Court will address those demands." Mot. at 2.  Defendants make that claim despite their own extensive promotion of the particulars of the flights.  For example, the Secretary of State has revealed many operational details of the flights, including the number of people involved in the flights, many of their identities, the facility to which they were brought, their manner of treatment, and the time window during which these events occurred.  See Secretary Marco Rubio (@SecRubio), X (Mar. 16, 2025, 8:39 a.m.), https://x.com/SecRubio/status/1901252043517432213 (sharing post and video revealing these details).  The Court is therefore unsure at this time how compliance with its Minute Order would jeopardize state secrets.

The Court will nonetheless grant the Government an additional 24 hours to consider whether to invoke the state-secrets privilege.  If it does invoke it, this Court is obligated to

"determine whether the circumstances are appropriate for the claim of privilege," Reynolds, 345 U.S. at 8, because "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." Id. at 9–10. As our Circuit has cautioned, the privilege "may not be used to shield any material not strictly necessary to prevent injury to national security; and, whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter." Ellsberg v. Mitchell, 709 F.2d 51, 57 (D.C. Cir. 1983).

While the Court will permit this additional time, it is not persuaded by Defendants' next contention that a stay is warranted because the D.C. Circuit may imminently rule on their request to stay the TROs. See Mot. at 4. In support of that assertion, the Government reiterates its arguments that the TROs were lawfully defective. See id. at 4–5. But, as explained above, the Court seeks the factual information at issue in order to determine whether the Government complied with the TROs. Whether those TROs were legally defective or legally sound does not govern the compliance inquiry. As the Supreme Court has made crystal clear, the proper recourse for a party subject to an injunction it believes is legally flawed — and is indeed later shown to be so flawed — is appellate review, not disobedience. As the Court reiterated in Walker v. City of Birmingham, 388 U.S. 307 (1967),

> An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.

Id. at 314 (emphasis added) (quoting Howat v. Kansas, 258 U.S. 181, 189–90 (1922)).  That "rule of law," the Supreme Court explained, "reflects a belief that in the fair administration of justice no man can be judge in his own case," no matter how "exalted his station" or "righteous his motives."  Id. at 320–21.

The Government also maintains that "disclosure of the information sought could implicate the affairs of the United States allies."  Mot. at 5.  But it never explains how *in camera* disclosure to the Court could possibly lead to such a result.

Last, the Government claims that it needs assurances that the Court would not disclose the information to Plaintiffs or the public without the Government's having an opportunity for prior appellate review.  Id. at 6.  The Court has no problem offering such an assurance.

The Court, accordingly, ORDERS that:

1. Defendants' [37] Motion is GRANTED IN PART and DENIED IN PART; and

2. Defendants shall have until March 20, 2025, at 12:00 p.m. to provide the information discussed in the Minute Order of March 18, 2025, or to invoke the state-secrets doctrine and explain the basis for such invocation.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: March 19, 2025