# EXHIBIT F

DECLARATION OF OSVALDO E. CARO-CRUZ, ESQ.

I, Osvaldo E. Caro-Cruz, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge:

1. My name is Osvaldo E. Caro-Cruz. I am an Immigration Attorney representing JABV in his removal proceedings. I first entered my appearance in this case on October 29, 2024.

2. JABV is a Venezuelan national who was born on January 5, 2001, in Guanare, Venezuela. He lived there until he fled due to political persecution by the Maduro regime. He was an active supporter of opposition leader Maria Corina Machado and was persecuted for his political activism.

3. In January 2024, while participating in a peaceful campaign activity distributing materials in support of the opposition, he was violently abducted by masked men affiliated with the Venezuelan government. He was thrown into a black SUV and beaten severely. His captors threatened him, stating, "Today we spare your life, but if you campaign again, there will be no forgiveness next time."

4. He was taken to the Los Proceres police center, where he was detained for over four days. During this time, he was tortured, deprived of food, and physically assaulted by Venezuelan authorities and pro-government colectivos. His captors repeatedly told him he was a "traitor to the homeland" and that if he was found again, he would be executed.

5. I have obtained video evidence showing Venezuelan police raiding his home, confirming that he was being actively persecuted by the Maduro regime due to his political opposition. His removal places him at imminent risk of harm, including detention, torture, or death at the hands of Venezuelan authorities.

6. Fearing for his life, JABV fled Venezuela on February 12, 2024. He traveled through Colombia, the Darien Gap, and several Central American countries before reaching Mexico, where he applied for entry to the United States through the CBP One application. He did not seek asylum in any other country due to their alliances with the Maduro regime, fearing deportation back to Venezuela.

7. His Notice to Appear (NTA) states he applied for admission in the US at San Ysidro, CA, on August 3, 2024, using the CBP One app.

8. His Record of Deportable/Inadmissible Alien (Form I-213) states he had no prior criminal history in the US, that he was a citizen of Venezuela, and that he was fleeing the country because he feared for his life. The same document states: "Subject has gang-related tattoos which were photographed by CBPO Clesi. The tattoos are well-known tattoos that Tren de Aragua gang members tend to have. Subject denied being part of Tren de Aragua or any other gang."

9. The allegation that JABV was affiliated with the Tren de Aragua gang is entirely speculative and unsubstantiated. DHS never provided any evidence of his involvement with el Tren de Aragua, or any other gang.

10. His tattoos are a Rose, a Clock and a Crown with his son's name on it. These are common in Venezuela and bear no exclusive association with gang affiliation.

11. As his attorney, I did my due diligence regarding his past, JABV has never been arrested, charged, or convicted of any crime in Venezuela or the United States.

12. On November 7, 2024, I filed a Form I-589, Application for Asylum, Withholding of Removal, and Protection under the Convention Against Torture on behalf of JABV. His asylum claim is based on the previous events and his well-founded fear of persecution due to his political opposition to the Venezuelan government.

13. Because JABV was in expedited removal, he was detained while his case was pending before the Immigration Court. His individual hearing was scheduled for April 7, 2025, at 1:00 PM before Honorable Judge Francis Mwangi in the Jena Immigration Court. Even though he was frustrated with the fact that he was detained, he understood, and was patiently waiting for his day in court in order to present his case.

14. On March 16, 2025, while trying to schedule several Virtual Meetings with the El Valle Detention Center, I learned that JABV had been removed from the United States without any notice to me, his attorney on record, or to his family. Despite multiple inquiries to

ICE and DHS, I have not received any information regarding his current location or the country to which he was deported.

15. On March 18th, I received confirmation from ICE that JABV was in fact removed from the Country on or about midday 3/15/2025, but had no information regarding his current whereabouts.

16. According to pictures and flight plans made public through social media, that is the exact same day and time a plane carrying various immigrants was sent to El Salvador. This makes me believe that he is currently being detained there. His brother states he recognized him in the videos published by El Salvador president, Nayib Bukele.

17. It is important to emphasize that JABV had **NO** removal order at the time of his removal from the United States, and even as of today, he still has no removal order in Immigration Court.

18. JABV was abruptly transferred multiple times before his removal. Initially detained in Jena, Louisiana, he was transferred to El Valle Detention Facility in Texas without explanation. There were no formal notices provided to me as his attorney, and at no point was he advised of the reasons for these transfers. He was not given any documentation explaining the moves, nor was he allowed to contest them.

19. As of the time of writing this declaration, I have not been informed about the exact circumstances of my client's removal, where he has been sent, or whether any further action can be taken to rectify this situation.

I, Osvaldo E. Caro-Cruz, affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Osvaldo Caro Cruz, Esq.
Dated: 3/19/2025