IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.G.G., *et al.*,<br><br>*Plaintiffs–Petitioners*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants–Respondents*. | No: 1:25-cv-00766-JEB |

**PLAINTIFFS' NOTICE REGARDING THE COURT'S MARCH 19 ORDER
REQUIRING DEFENDANTS TO PROVIDE INFORMATION**

In response to this Court's factual inquiries about whether its March 15 oral and written Temporary Restraining Orders were violated, Plaintiffs make a few brief points, and request the opportunity to respond further on March 31 should the government invoke the state secrets privilege. *See* Order (ECF No. 47).

*First*, there are already sufficient undisputed facts in the record and in the public domain for this Court to find that its Orders were violated. Plaintiffs recognize that the Court understandably wishes ultimately to gather all of the facts and to create a complete record. Nonetheless, the consequences of Defendants' violations—that the individuals sent to El Salvador are being held incommunicado in a prison known for horrible conditions, where they face immediate and grave harm—militate in favor of further immediate relief, in light of facts already known.

Those facts include two new declarations submitted with this Notice and referenced by undersigned counsel at the March 21 hearing. The first is from a Venezuelan woman who states

1

(1) that the government sought to remove her on Thursday, March 13 and Friday, March 14 (before the Proclamation was published on Saturday March 15); (2) that on Saturday March 15 she was on one of the planes that landed in El Salvador along with Venezuelan men, but she was ultimately brought back to the United States and detained because Salvadoran officials informed United States officials that their President would not take women, (3) that there were seven other Venezuelan woman who were returned with her; and (4) that shortly after takeoff she overheard discussions by government officials showing awareness of the Court's Order.  Ex. A.  The second declaration is from a Nicaraguan man who was also returned from El Salvador when officials realized that he was not Venezuelan.  Ex. B.  These declarations are submitted to refute the government's contention that it was not "feasibl[e]" for the planes to bring anyone back, and that this Court did not account for practical considerations like whether the planes "had enough fuel" to turn around.  Defs. Mot. to Stay Mar. 18 Order at 2 (ECF No. 37). [1]

In addition, public information shows that two planes were still in the air when the Court issued both its oral and written Orders.  Most significantly, based on information publicized by U.S. government officials and publicly available flight data, at least two flights took off during the hearing on March 15—one at 5:26pm EDT and the other at 5:45pm EDT—and landed well after this Court's written Order had been filed.  *See* Pls. Resp. to Defs. Notice (ECF No. 21); *see also* Joyce Sohyun Lee and Kevin Schaul, *Deportation Flights Landed after Judge Said Planes Should Turn Around*, Wash. Post (Mar. 16, 2025).[2]  And the video released by President Bukele that shows Plaintiff class members being hauled off the planes in El Salvador includes each

---

[1] In *Grace v. Barr*, No. 1:18-cv-1853, the plane landed in El Salvador and, upon order of Judge Sullivan, returned to the United States.  *Grace v. Sessions*, No. 1:18-cv-1853, ECF No. 29 ¶¶ 12-14.
[2] https://www.washingtonpost.com/immigration/2025/03/16/deportation-flights-trump-el-salvador [https://perma.cc/Q6NH-ATY8].

plane's tail number.[3]  That video was then reposted by both President Trump[4] and Secretary of State Rubio.[5]

Whether the planes were in U.S. airspace at the time the Orders were issued is not relevant.  The Court's Orders unequivocally covered situations where Plaintiff class members were still in U.S. custody, whether or not in U.S. airspace.  Indeed, that was the point of the Court's discussion at the hearing regarding the need for Defendants to move quickly to avoid immediate harm and the government's potential arguments that the Court would lose jurisdiction if individuals were turned over to El Salvador.  *See* Hearing Tr. at 5, 43, 44 (Mar. 15, 2025).

If the Court does determine that class members were unlawfully removed in violation of the TRO, Plaintiffs respectfully request that the Court order that class members be returned promptly to the United States.  Plaintiffs note that both the United States and El Salvador have represented that El Salvador is acting at the behest of the United States government, and the detention is directly paid for by the United States government.  *See* Matthew Lee & Regina Garcia Cano, *US Prepares to Deport about 300 Alleged Gang Members to El Salvador*, Assoc. Press (Mar. 15, 2025) (describing agreement in which the United States will pay El Salvador to imprison Venezuelans transferred from the U.S.).[6]

And as the Court has already found, Salvadoran prisons are notoriously dangerous and life-threatening.  Pls. Opp. at 37–38 (ECF No. 44); Order on Motion to Vacate TRO at 33-35 (ECF No. 53).  Plaintiffs' expert reports detail conditions that amount to torture—including

---

[3] https://x.com/nayibbukele/status/1901245427216978290 [https://perma.cc/BM73-547H].
[4] https://truthsocial.com/@realDonaldTrump/posts/114173862724361939 [https://perma.cc/67LY-FREW].
[5] https://x.com/SecRubio/status/1901252043517432213 [https://perma.cc/RXH4-XH4R].
[6] https://apnews.com/article/trump-deportations-salvador-tren-aragua-64e72142a171ea57c869c3b35eeecce7 [https://perma.cc/2RWA-XLBB].

suffocation, burning, mock executions, electric shocks, and public beatings. Bishop Decl. ¶¶ 35, 37, 40. Such torture is a "habitual practice" rather than "isolated incidents," and death is a real possibility. *Id.* ¶¶ 32 43–50. Any doubt about how these men will be treated is dispelled by the video released by Salvadoran officials (and applauded by President Trump and Secretary Rubio), which showed the men chained and transported into a maximum-security prison.

*Finally*, in light of the Court's inquiries at the March 21 hearing about the significant gap in time between the Proclamation's signing and publication, Plaintiffs note that there is now confusion as to when the Proclamation was issued—and whether the President signed it at all. *See* Jeff Zeleny & Kit Maher, *Trump Says He Didn't Sign Proclamation Invoking Alien Enemies Act*, CNN (Mar. 22, 2025) (Trump: "I don't know when it was signed, because I didn't sign it. Other people handled it, but (Secretary of State) Marco Rubio has done a great job and he wanted them out and we go along with that.");[7] Kelsey Walsh, *White House Backtracks on Trump Statement that He Didn't Sign Alien Enemies Act Order*, ABC News (Mar. 20, 2025) (White House press office's statement that "President Trump was obviously referring to the original Alien Enemies Act that was signed back in 1798," quoting White House spokesman Steven Cheung).[8]

Dated: March 24, 2025                                  Respectfully submitted,

Noelle Smith                                           /s/ Lee Gelernt
Oscar Sarabia Roman                                    Lee Gelernt (D.D.C. Bar No. NY0408)
My Khanh Ngo                                           Daniel Galindo (D.D.C. Bar No. NY035)

---

[7] https://www.cnn.com/2025/03/21/politics/trump-signature-alien-enemies-act-proclamation/index.html [https://perma.cc/Y9MV-4YTQ]. Video of the President making that statement is available at https://www.cnn.com/2025/03/21/politics/trump-signature-alien-enemies-act-proclamation/index.html (at 1:29) [https://perma.cc/P8WX-S4BV].
[8] https://abcnews.go.com/Politics/live-updates/donald-trump-second-term/?id=119864095&entryId=120061457 [https://perma.cc/EV9A-FYVB].

Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
nsmith@aclu.org
osarabia@aclu.org
mngo@aclu.org
cwofsy@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Ashley Gorski
Patrick Toomey
Sidra Mahfooz
Omar Jadwat
Hina Shamsi (D.D.C. Bar No. MI0071)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION,
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org
ptoomey@aclu.org
smahfooz@aclu.org
ojadwat@aclu.org
hshamsi@aclu.org

Somil B. Trivedi (D.C. Bar No. 1617967)
Bradley Girard (D.C. Bar No. 1033743)
Michael Waldman (D.C. Bar No. 414646)
Sarah Rich
Skye Perryman (D.C. Bar No. 984573)
Audrey Wiggins (DC Bar No. 482877)
Christine L. Coogle (DC Bar No. 1738913)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
strivedi@democracyforward.org
bgirard@democracyforward.org
mwaldman@democracyforward.org
srich@democracyforward.org
sperryman@democracyforward.org
awiggins@democracyforward.org
ccoogle@democracyforward.org

*Attorneys for Plaintiffs-Petitioners*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 24, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 24, 2025

Respectfully Submitted,

*/s/ Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org

*Attorney for Plaintiffs–Petitioners*