# EXHIBIT R

**DECLARATION OF Y.R.R.**

I, Y.R.R., hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1.  I make this declaration based on my own personal knowledge, and if called to testify, I could and would do so competently and truthfully to these matters.

2.  My name is Y.R.R., I currently live in Carabobo, Venezuela. I am the aunt of J.M.R.. My mother (his grandmother) raised both of us in Venezuela so we are very close.

3.  I am submitting this declaration because my nephew appears on the public list as those who were deported to El Salvador under the Alien Enemies Act. My nephew had an open asylum case in the United States and had no deportation order. I believe my nephew J.M.R. was accused of being associated with the Tren de Aragua gang, with which he has no affiliation whatsoever. I have known J.M.R. his whole life and he has always been an honest man and a hard worker; he has no interest in gang activities.

4.  J.M.R. came to the United States in July of 2023 to request asylum. In Venezuela, J.M.R. was a police official working for the government. He was not in agreement with the actions and policies of the Venezuelan government, and so he requested to be discharged but that request was denied. Since refusing to continue serving as a police officer would have resulted in imprisonment, his only option was to leave the country.

5.  In July of 2024, J.M.R. submitted his application for asylum and had a master calendar hearing scheduled for November 2026. While waiting for his application to be processed, he worked hard as a driver, minded his own business, and never got into any criminal trouble.

6.  In early February 2025, ICE officers arrived at the dwelling in New York where J.M.R. was living with some other people from Venezuela. The ICE officers claimed that they were searching for "someone" who supposedly lived at the dwelling and had a deportation order. Though J.M.R. was not the person they were looking for, and he did not have a deportation order or any criminal record, the ICE officers detained him along with about eight other Venezuelan men living there. J.M.R. told the ICE officers that he had a pending asylum application, but they detained him anyways and did not say why.

7.  After a few days, the ICE officers transported him to El Valle Detention Center in Texas. He was supposed to have an immigration hearing on February 18, but no one took him to his hearing.

8.  Every time J.M.R. called me, he would tell me that he was not getting information from anyone about why he was detained. He told me that he tried to ask ICE about his immigration hearing that was supposed to have occurred on February 18, but no one could give him any answers.

9. He also told me that when he was transferred to El Valle, his jumpsuit was changed from an orange jumpsuit to a red one. He told me that he knows that a red jumpsuit means a higher level of security, but he was never told why his suit had been changed to red despite multiple requests for answers.

10. J.M.R. has no tattoos, no criminal record in any country, and he did not have an order of deportation.

11. On March 14, 2025, he called me to say that the ICE officials had told him and other Venezuelan men at the facility that they were going to be deported to Venezuela. On that same day, he was boarded onto a plane that never took off, supposedly to Venezuela.

12. On March 15, 2025, he called a friend in the U.S. to tell her that they were being told they would be boarded on a plane again, but this time he did not know the destination. He said that not even the officials directing them could tell them where the plane was headed. J.R. told his friend that he was never told where he was being removed to or on what basis.

13. I am very worried about the conditions J.M.R. is facing in El Salvador. J.M.R. was requesting asylum in the United States, he never got into any trouble and he does not deserve what has happened to him.

14. Everything in this declaration is true and correct to the best of my knowledge and recollection. This declaration was read back to me in Spanish, a language in which I am fluent.

Executed on the 28th day of March, 2025.

Y.R.R.

**ATTESTATION AND CERTIFICATE OF TRANSLATION**

I, Talia Roma, certify that I am fluent in both English and Spanish. On March 28, 2025, I personally spoke with Y.R.R. and read the foregoing information to her over the phone. Y.R.R. affirmed that the information in the above declaration is true and accurate.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

_____
Talia Roma
Paralegal
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, 7th Floor
San Francisco, CA 94609
(415) 343-0770
troma@aclu.org