UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.G.G., *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Action No. 1:25-cv-00766 (JEB) |
| DONALD J. TRUMP, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### *AMICI CURIAE* BRIEF IN OPPOSITION TO DEFENDANTS' NOTICE INVOKING STATE SECRETS PRIVILEGE

Heidi Kitrosser, Mark J. Rozell, and Mitchel A. Sollenberger (collectively "Amici") respectfully submit this *Amici Curiae* Brief in Opposition to Defendants' Notice , Dkt. #5 (filed Oct. 19, 2021).

### INTERESTS OF *AMICI CURIAE*[1]

Amici are law professors and/or scholars who teach, research, and/or write about topics related to governmental privileges. They submit this brief in support of Plaintiffs to explain why there is no legitimate basis for an invocation of the state secrets privilege in this case and, even if one were theoretically to exist, that the Government has not met its burden for its extraordinary claims. Their interest in this case is ensuring that this powerful governmental privilege cannot be abused to suit the whims of Executive Branch officials purely seeking to avoid accountability for their actions.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4), as incorporated by this Court's Local Civil Rule 7(o)(5), undersigned counsel states that no party's counsel authored this brief in whole or in part. Nor did any party or party's counsel, or any other person other than *amici curiae* or their counsel, contribute money that was intended to fund preparing or submitting this brief.

Because Plaintiffs have ably explained why the information at issue in this case is not closely held, let alone classified, the primary purpose of this brief is to provide more context to the questions before the Court and address points which warrant elaboration beyond what the parties have written. To be clear, however, Amici agree with and endorse Plaintiffs' arguments regarding the lack of merit to the Government's contentions.

## ARGUMENT

There are numerous issues with the Government's attempt to invoke the state secrets privilege, most of which Plaintiffs have already identified. In the interest of judicial economy, Amici will limit this brief to the most glaring examples, whether because they are intentionally misleading or because they are simply wrong.

### I.     THERE ARE NO SEPARATION OF POWERS CONCERNS

Perhaps the most egregious example of overreach in the Government's Notice is the naked claim—without any support—that the question before the Court has *anything* to do with separation of powers. (*See*, *e.g.*, Not. Invoking State Secrets Privilege, Dkt. #56, at 1 (filed Mar. 24, 2025) ("Further intrusions on the Executive Branch would present dangerous and wholly unwarranted separation-of-powers harms with respect to diplomatic and national security concerns that the Court lacks competence to address.") [hereinafter Gov't Notice].) By making this claim, the Government attempts to conflate two *very* different privileges while only claiming one: the one that does not involve separation of powers.

As the Government recognizes—apparently without recognizing the significance—"[t]he state secrets privilege is a *common law* evidentiary rule that protects information from discovery when disclosure would be inimical to the national security." (*Id.* at 2-3 (emphasis added) (quoting *In re United States*, 872 F.2d 472, 472 (D.C. Cir. 1989).) This distinction is fatal to the

Government's talismanic invocation of the separation of powers, as summarized by Wright and Graham, *inter alia*:

> Some writers have argued that the state secrets privilege is constitutionally required. They rely upon the Supreme Court's apparent conflation of the state secrets and executive privileges in the Watergate Tapes Case. The argument seems to be based on the doctrine of separation of powers. It apparently assumes that the Constitution gives the executive branch the exclusive power to determine what national security requires by way of secrecy; hence, any attempt by Congress or the courts to limit such secrecy by refusing the recognize or limiting governmental secrecy is an invasion of the Presidential prerogative and hence unconstitutional. However, the Supreme Court does not seem to think that it was acting unconstitutionally when it promulgated Rejected Rule 509 over the objections of the executive branch that it provided insufficient protection for state secrets. Nor did anyone argue that Congress acted in violation of the Constitution when it declined to adopt the Rejected Rule and left the question of whether or not to recognize a privilege for state secrets and the scope of that privilege to the courts. The better view would seem to be that the state secrets privilege is not a constitutional privilege, but may be altered by legislation or judicial decision.

Charles Alan Wright & Kenneth W. Graham, Jr., 26 Fed. Prac. & Proc.: Evid. § 5663 (1st ed.) (footnotes omitted) (citing multiple sources).

The privilege that the Government is *trying* to invoke by implication—but cannot in reality invoke—is a narrow subcategory of *executive privilege* that pertains to "military or diplomatic secrets" that *is* constitutional in nature, although most court opinions, briefs, and articles only cite *dicta* from *United States v. Nixon* in support of its existence. That case, in which the President attempted to invoke a blanket executive privilege over all Presidential communications and was denied by a unanimous Court, contained the *dicta*:

> Absent a claim of need to protect military, diplomatic, or sensitive national security secrets, we find it difficult to accept the argument that even the very important interest in confidentiality of Presidential communications is significantly diminished by production of such material for in camera inspection with all the protection that a district court will be obliged to provide.
>
> \*     \*     \*

> [The President] does not place his claim of privilege on the ground they are military or diplomatic secrets. As to these areas of Art. II duties the courts have traditionally shown the utmost deference to Presidential responsibilities.
>
> \*   \*   \*
>
> Nowhere in the Constitution, as we have noted earlier, is there any explicit reference to a privilege of confidentiality, yet to the extent this interest relates to the effective discharge of a President's powers, it is constitutionally based.

418 U.S. 683, 711 (1974).

Over the years this language has been twisted and tangled into the following virtually unrecognizable staple of Government pleadings:

> Any doubt that the privilege is rooted in the Constitution was dispelled in *United States v. Nixon,* in which the Supreme Court explained that, to the extent a claim of privilege "relates to the effective discharge of the President's powers, it is constitutionally based." The Court went on to recognize expressly that a "claim of privilege on the ground that [information constitutes] military or diplomatic secrets"—that is, the state secrets privilege—necessarily involves "areas of Art. II duties" assigned to the President.
>
> \*   \*   \*
>
> It is well settled . . . that the courts should [determine if the privilege has been invoked properly] by according the "utmost deference" to the expertise and judgment of national-security officials.

Letter from U.S. Att'y Gen. Michael Mukasey to Sen. Patrick Leahy (Mar. 31, 2008) [hereinafter Mukasey letter], *available at* http://www.fas.org/sgp/jud/statesec/ag033108.pdf (last accessed Apr. 1, 2025). More alarmingly, some courts have on occasion cited twisted versions of this *dicta* falsely equating the state secrets privilege (which was not at issue in *Nixon*) with executive privilege. For instance, the Fourth Circuit characterized *Nixon* as "observing that the *state secrets privilege* provides exceptionally strong protection because it concerns 'areas of Art. II duties [in which] the courts have traditionally shown the utmost deference to Presidential responsibilities.'" *El-Masri v. United States*, 479 F.3d 296, 303 (4th Cir. 2007) (emphasis added). In contrast, the

4

most cited case for the standard of "utmost deference" to the Executive Branch in national security matters, *Halkin v. Helms* (a later iteration of which the Government cites no less than four times), itself clarified that "the Court in *United States v. Nixon* strongly indicates that state secrets are not analogous to the Presidential communications at issue there." 598 F.2d 1, 7 (D.C. Cir. 1978).

Lastly, insofar as the Government is arguing that the state secrets privilege *itself* presents separation of powers concerns, the claim that the Executive Branch has plenary control over all classified information issues has been comprehensibly refuted for decades through the simple act of legislation. Without going into a complete discussion of the various ways in which the statutes confer authority on courts to make determinations regarding classified information, it will suffice for the purposes of this brief to point out that Congress has on numerous occasions explicitly conferred such authority—often over the objections of the Executive Branch—with such examples as the Classified Information Procedures Act, 18 U.S.C. app. 3 §§ 1-16; the Foreign Intelligence Surveillance Act, Pub. L. No. 95-511 (codified as amended at 50 U.S.C. §§ 1801-1885 and in scattered sections of 18 U.S.C.); and the Freedom of Information Act, 5 U.S.C. § 552 (most notably § 552(a)(4)(8), which expressly requires judges to review agency invocations of Exemption (b)(1), dealing with classified materials, *de novo*).

In short, Judge Sullivan could have been describing the Government's position in this case when he wrote over two decades ago:

> If this were the law, the Pentagon Papers case, *New York Times Co. v. United States*, which allowed the publication of classified material, was wrongly decided. If this were the law, *Snepp* [*v. United States*] and *McGehee* [*v. CIA*], which require judicial review of pre-publication classification decisions, were wrongly decided. If this were the law, the provision of the Freedom of Information Act that allows judicial review of documents withheld for national security purposes would be unconstitutional. If this were the law, the provisions of the Classified Information [Procedures] Act that require disclosure of classified information to

> criminal defense counsel, would be unconstitutional. Finally, if the government's theory of separation of powers carried the day, *Youngstown Sheet & Tube Co. v. Sawyer* in [which] the Supreme Court held that the President unconstitutionally assumed the legislative power in the name of national security, was wrongly decided.

*Stillman v. DOD*, 209 F. Supp. 2d 185, 212-13 (D.D.C. 2002) (citations omitted), *rev'd on other grounds sub nom. Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003).

## II.     REGARDLESS OF CLASSIFICATION, THE GOVERNMENT FAILS

As Plaintiffs point out, the Government has never actually claimed that the information in question is classified. (Pls.' Resp. Defs.' Invocation of the State Secrets Privilege, Dkt. #69, at 13 (filed Mar. 31, 2025) [hereinafter Pls.' Resp.].) This is a critical distinction separating the Government's claim in this case from all other state secrets privilege cases: neither Amici nor their undersigned counsel have found *a single case* where the Government attempted to invoke the state secrets privilege to withhold wholly unclassified information.[2]

However, while Plaintiffs briefly discuss the evidence that the Government would need to supply to show that the information was in fact classified (*id.* at 13-14), they overlook one critical flaw in any potential classification claim: the information *cannot be classified*. Executive Order 13,526 established the rules for the current classification system, and that Order is explicit:

> In no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to:
>
> (1) conceal violations of law, inefficiency, or administrative error;
> (2) prevent embarrassment to a person, organization, or agency; . . . or
> (4) prevent or delay the release of information that does not require protection in the interest of the national security.

Exec. Order 13,526 § 1.7(a).

---

[2] To be clear, this is not to say that unclassified information is never the subject of a state secrets privilege invocation. However, when it is, it is *always* intertwined with classified information.

This provision is often misunderstood to mean that information may not be classified for any of these reasons, but it is in fact significantly more strict in that respect. What this means in practice is that information may not be classified *solely* for any of these reasons. For instance, if a covert surveillance program were collecting information on U.S. citizens in violation of the law, information about that program could still be properly classified, not because it concealed violations of law, but because it would reveal intelligence capabilities *as well as* conceal violations of law. Because of this limitation, this provision is *extraordinarily* difficult to trigger, but in this particular case it comes into play.

Simply put, Plaintiffs have ably demonstrated all the ways in which the information being withheld by the Government is not confidential or closely held, generally due to the actions of the Government. The logical conclusion, then, is that if the Government *does* classify this information, then it is not for any of the usual reasons, which clearly do not apply. This places any such classification decision squarely in the categories described by Section 1.7(a), which necessarily means that, according to the Executive Branch's *own rules*, it cannot be properly classified. This fact alone justifies Plaintiffs' stated concern that "'government officials may be motivated to invoke the state secrets privilege' . . . by illegitimate and self-serving reasons." (Pls.' Resp. at 17 (quoting *Mohamed v. Jeppesen Dataplan, Inc.* 614 F.3d 1070, 1085 n.8 (9th Cir. 2010) (en banc)).) And, as noted above, if it is not properly classified, this Court would be the first to allow it to be withheld under the state secrets privilege.

## III.   THIS COURT IS COMPETENT

As the D.C. Circuit has stressed, "deference is not equivalent to acquiescence." *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998). Moreover, "there comes a point where [a] Court should not be ignorant as judges of what [they] know as men [and women]." *Watts v. Indiana*,

338 U.S. 49, 52 (1949). It is for these two reasons that the D.C. Circuit has held that it is entirely proper for a District Court to "rel[y] on its own experience with litigation involving highly sensitive government information and its confidence that the Government's security concerns could be accommodated" when adjudicating a state secrets privilege invocation. *In re United States*, 872 F.2d 472, 478 (D.C. Cir. 1989). The Court does not need to pretend that it is unfamiliar with the issues in play in this matter, and it may rely on its own expertise with such matters when evaluating the merits of the Government's claim. More to the specific point of this claim, the Circuit held in that same case that the fact that the information the Government was attempting to withhold would be part of a bench trial and not a jury trial was relevant, because that "will reduce the threat of unauthorized disclosure of confidential material." *Id.* Needless to say, if the Government has less legitimate need to invoke the state secrets privilege in a bench trial than it does in a jury trial, its need to invoke it to avoid providing information to the Court *ex parte* and *in camera* is weaker still. Given the stakes of this case and the prospect of the Government using this privilege to avoid any semblance of accountability for its apparent violations of the Court's direct order, the Court should reject the Government's claim.

## CONCLUSION

"With all its defects, delays and inconveniences, men have discovered no technique for long preserving free government except that the Executive be under the law." *Youngstown*, 343 U.S. at 655 (Jackson, J., concurring). For the reasons provided above, the Court should reject the Government's attempt to avoid the consequences of its actions by laying claim to a privilege which does not apply.

Date:   April 1, 2025

                         Respectfully submitted,

                         /s/ Kelly B. McClanahan
                         Kelly B. McClanahan, Esq.
                         D.C. Bar #984704
                         National Security Counselors
                         1451 Rockville Pike
                         Suite 250
                         Rockville, MD  20852
                         501-301-4672
                         240-681-2189 fax
                         Kel@NationalSecurityLaw.org

                         *Counsel for* Amici Curiae