1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
2

3    J.G.G., et al.,
                                    Civil Case
                     Plaintiff(s),    No. 25-00766 JEB
4         v.
                                    Washington, D.C.
5    DONALD J. TRUMP, et al.,
                                    April 18, 2025
6                    Defendant(s).

7    ----------------------------------------------------------

8              EMERGENCY HEARING HELD VIA ZOOM
           BEFORE THE HONORABLE JAMES E. BOASBERG
9            UNITED STATES DISTRICT CHIEF JUDGE

10   APPEARANCES:

11   FOR THE PLAINTIFF(S):  Lee Gelernt, Esquire
                           Daniel A. Galindo, Esquire
12                         American Civil Liberties Union
                           125 Broad Street
13                         18th Floor
                           New York, New York 10004
14

15                         Skye Perryman, Esquire
                           Sarah Rich, Esquire
16                         Christine Coogle, Esquire
                           Bradley Girard, Esquire
17                         Democracy Forward Foundation
                           P.O. Box 34533
18                         Washington, D.C. 20043

19

20                         Arthur B. Spitzer, Esquire
                           Aditi Shah, Esquire
21                         ACLU Foundation of the
                            District of Columbia
22                         529 14th Street Northwest
                           Suite 722
23                         Washington, D.C. 20045

24

25

1    APPEARANCES (Cont.):

2

3    FOR THE DEFENDANT(S):    Drew C. Ensign, Esquire
                              United States Department of Justice
4                              950 Pennsylvania Avenue Northwest
                              Washington, D.C. 20530
5

6

7    REPORTED BY:            Tammy Nestor, RMR, CRR
                             Official Court Reporter
8                             333 Constitution Avenue Northwest
                             Washington, D.C. 20001
9                             tammy_nestor@dcd.uscourts.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    The following proceedings began at 6:16 p.m.:

 2         THE COURT:  Okay.  Good evening.  Go ahead and call

 3    it, please, Nikki.

 4         THE COURTROOM DEPUTY:  Yes.  We are here today for an

 5    emergency hearing in Civil Action 25-766, JGG, et al. versus

 6    President Donald Trump, et al.

 7         Beginning with counsel for the plaintiff, please

 8    state your name for the record.

 9         MR. GELERNT:  Good evening, Your Honor.  Lee Gelernt

10    for the plaintiff petitioners.

11         THE COURT:  Good evening.

12         MR. GALINDO:  Good evening, Your Honor.  Daniel

13    Galindo for petitioner.

14         THE COURT:  Hi.

15         MR. SPITZER:  Good evening, Your Honor.  Arthur

16    Spitzer also for petitioners.

17         THE COURT:  Welcome.

18         MS. PERRYMAN:  Good evening, Your Honor.  Skye

19    Perryman for the petitioners.

20         THE COURT:  Thank you.

21         MR. GIRARD:  Good evening, Your Honor.  Bradley

22    Girard for petitioners.

23         THE COURT:  Okay.  Thank you, Mr. Girard.

24         MS. RICH:  Good evening.  Sarah Rich for petitioners.

25         THE COURT:  Good evening.
```

1          MS. SHAH:  Good evening, Your Honor.  Aditi Shah for

2     petitioners.

3          THE COURT:  Hello to you.

4          MS. COOGLE:  Good evening, Your Honor.  Christine

5     Coogle for petitioners.

6          THE COURT:  Is that everyone?

7          Mr. Ensign, you are very much outnumbered, but I will

8     let you go ahead and state your appearance.

9          MR. ENSIGN:  Thank you, Your Honor.  Good evening.

10    Drew Ensign for the United States.

11         THE COURT:  Thanks, everybody, for being available at

12    such short notice.  I appreciate it.  It's not a Saturday

13    like the last time we were assembling on short notice, but

14    it's still a Friday evening, so I appreciate everyone being

15    available.

16         I certainly have a number of concerns with my ability

17    to act on the plaintiffs' TRO, but I think what I need to

18    know before I do anything and inquire about -- to the

19    different legal issues involved here is to both find out

20    what's happening in courts and to find out what's happening

21    on the ground.

22         So, Mr. Gelernt, let me hear you first on the

23    litigation.  I know there may be some action in the Fifth

24    Circuit.  There may be some action in the Supreme Court.

25    Can you give me an update on that as best you know.

1          MR. GELERNT:  Yes, Your Honor.  So we have --

2          THE COURT:  You are a little bit faint.  If you can

3    speak up a little or maybe turn your mic up, that would be

4    great.

5          MR. GELERNT:  I apologize, Your Honor.

6          So we have sought emergency relief in both the Fifth

7    Circuit and the Supreme Court.  We have not heard from

8    either court yet.  But we have done that simultaneously in

9    light of the urgent circumstances.

10         THE COURT:  And when you say that, do you mean -- are

11   you seeking the same relief there that you are seeking here?

12         MR. GELERNT:  We are, Your Honor.

13         THE COURT:  Which is no removals without 30-day

14   notice?

15         MR. GELERNT:  Your Honor, we believe that the 30 days

16   is proper, especially given that that's what happened in

17   World War II.  But at this point, I think we would take a

18   much shorter period and just keep the men here.  They have

19   already been loaded onto buses.  We believe they are on the

20   way to the airport.  And we just got word a few minutes ago

21   that it appears that they are preparing more men for travel

22   tonight.

23         THE COURT:  In other words, right, you are seeking

24   relief from the Fifth Circuit and the Supreme Court, no

25   removals without more notice?

1          MR. GELERNT:  Exactly.

2          THE COURT:  And the men who are being removed are all

3     being removed out of the Northern District of Texas?

4          MR. GELERNT:  That's correct, Your Honor.  As you

5     know, they were all held in the Southern District the first

6     time around, that March 15.  We received a TRO, a class -- a

7     district-wide TRO from Judge Rodriguez in the Southern

8     District.  So now all the Venezuelan men from all over the

9     country have been moved to the Northern District, and that's

10    where they are.

11         And as we set forth in our filing, the district court

12    in the Northern District denied the TRO on the ground that

13    the two named petitioners were not going to be removed

14    according to the government, and they wouldn't be removed

15    absent them alerting the court.

16         The court then went on to state that he didn't see

17    any imminent risk to the class plaintiffs because, in light

18    of the government's general representations and the Supreme

19    Court's notice rule, he didn't see that they were at

20    imminent risk.

21         A few hours later, we began hearing that notices were

22    being provided to the men.  And those notices, and I

23    apologize, Your Honor.  That should have been before you,

24    and we can get that to you immediately, but it was only in

25    English.  It did not tell the men that they could contest

1      the designation.  It did not tell them, much less, how they

2      could do it, what the time frame was.  It just said you are

3      being removed under the president's proclamation, and the

4      only thing that it remotely said is you can make a phone

5      call if you want, but not what the phone call would be

6      about.  And in any event, it was in English.

7           The men were then starting -- the men were moved the

8      next day, this morning, without even 24 hours' notice from

9      getting the form, much less, you know, the fact that the

10     form didn't really do anything in any event.

11          So our position is that whatever the Supreme Court

12     meant, whatever you meant, that can't possibly be sufficient

13     notice.  And the government obviously led the district court

14     to believe that the men were -- I mean, I'll put that aside.

15     But the district court clearly seemed to believe that they

16     weren't at imminent risk, and then a few hours later, they

17     were already getting these notices.

18          So I think hopefully Mr. Ensign will tell you where

19     the planes are, but we had people in front of the detention

20     center who saw buses being pulled away, the media has seen

21     buses pulled away with men, and we just heard a few minutes

22     ago that additional men are being prepared for travel.

23          THE COURT:  But you believe this is in front of both

24     the Fifth Circuit and the Supreme Court now?

25          MR. GELERNT:  It is.  We haven't heard from either

1    court yet.

2         THE COURT:  Okay.  Mr. Ensign, let me ask you on the

3    legal issue.

4         MR. ENSIGN:  Yes.

5         THE COURT:  Just on sort of the legal status, the

6    legal landscape, we will get into the arguments in a little

7    bit, but can you -- do you want to add or contest anything

8    about the legal landscape that Mr. Gelernt has set forth?

9         MR. ENSIGN:  Your Honor, maybe just to add some

10   details.  So I am aware they have sought relief from both,

11   on an emergency basis, from both the Fifth Circuit and

12   Supreme Court.  I believe there are TRO requests pending in

13   the Northern District as well, I believe, in two different

14   cases, filed habeas actions that are TROs pending with, I

15   believe, class requests in both, though the plaintiffs could

16   confirm that.

17        There are TROs that have been issued in other

18   districts as well.  For example, the Southern District of

19   New York, I know, and I believe the District of Colorado.

20        So there are certainly quite a number of these cases,

21   and I have a chart somewhere.  But that's my understanding

22   of the basic legal landscape as well as this case obviously.

23        THE COURT:  Okay.  So now can you talk to me about

24   what's going on on the ground?  I guess the first question

25   is, do you agree on the notice with the plaintiffs that they

1    were given -- that people were given 24 hours' notice in

2    English only?

3         MR. ENSIGN:  Your Honor, this was only scheduled an

4    hour ago, but I have been trying to frantically gather

5    information.

6         I have been told that it was not just given in

7    English, that there were notices given in people's language

8    that they could understand, specifically including Spanish

9    is what I have been told.  And so it is not just in English.

10   Where people are Spanish speakers, they would be given the

11   same notice in Spanish is what I have been told.

12        I have also been told that there are no flights

13   tonight and that the people I spoke to were not aware of any

14   plans for flights tomorrow.

15        THE COURT:  Okay.  So I appreciate your letting me

16   know.

17        A couple of other questions on that.  Do you know

18   what the government's position is on whether a detainee just

19   has to check a box or indicate that he wants to file a

20   challenge or whether he actually has to get to court within

21   the specified time?

22        MR. ENSIGN:  Your Honor, I have been told there's an

23   initial period where you can express that you would like to

24   file habeas.  People that do so then have an additional

25   period to file habeas.  I believe that is at least 24 hours

1    before any actions would be taken and that if anyone files a

2    habeas petition, the government has no plans to remove

3    anyone that's filed a habeas petition.  And it's

4    specifically represented to the Northern District of Texas

5    that all individual plaintiffs that have filed habeas

6    petitions will not be removed while those petitions are

7    pending.

8         THE COURT:  Okay.  And do you know -- you mentioned

9    the periods.  Do you know what the lengths of the periods

10   are?  You are saying that they have a certain period in

11   order to express that they would like to file a habeas, and

12   then they would have another period in which to actually

13   file it, and the government wouldn't deport them if they

14   have done each within the correct window, is that correct?

15        MR. ENSIGN:  I believe so, Your Honor.  I don't know

16   specific time tables.  I know, you know, due process is

17   flexible and may vary based on the circumstances.  My

18   understanding is that the initial period is somewhat similar

19   to expedited removal where people have, you know, a window

20   in which they can express their intent to file a habeas

21   petition.

22        There's a second window which I believe is a minimum

23   of 24 hours then that they can actually file it.  And then

24   people that file habeas petitions, there are no plans to

25   remove while those are pending and have represented to Judge

1    Hendrix that while those are pending, those individuals will

2    not be removed.

3         I think I can note too that there have been many of

4    these filed that, you know --

5         THE COURT:  When you say many, many of these, you

6    mean many habeas petitions?

7         MR. ENSIGN:  Exactly, and in many different districts

8    including, I believe, Southern District of Texas, Northern

9    District of Texas, District of Colorado, Southern District

10    of New York.  And I know that's not the complete list.  I

11    think plaintiffs could probably inform you where else those

12    have been filed.

13         THE COURT:  All right.  That's all very helpful.

14         Mr. Gelernt, I know we are sort of dealing with

15    imperfect information here, particularly you, but do you

16    have reasons to doubt Mr. Ensign's representation that there

17    are no flights leaving tonight or tomorrow?

18         MR. GELERNT:  Your Honor, I think, you know, as you

19    said, we are dealing with imperfect information.  I will

20    take Mr. Ensign at his word if he's telling you point blank

21    that there are no flights, Alien Enemy Act flights, tonight

22    or tomorrow.  It obviously is not ruling out the possibility

23    of Sunday, Monday, Tuesday.

24         So I think we still need this relief, but I don't

25    know that it would have to be tonight and you couldn't wait

1    for the Fifth or SCOTUS to rule.  You know, that's assuming,

2    again, that we are taking the government at its word.

3        I would just say a few things about the notice.  I

4    don't know if Mr. Ensign has seen the notice.  I know that

5    DOJ lawyers have not seen notice despite filing briefs, and

6    they simply said we are going to provide reasonable notice.

7        And if Your Honor wants to take a break, we can email

8    a copy.  I think we may have already emailed it to your

9    chambers.  There's no box to check to say I want to contest.

10   There's nothing that suggests you have the right to contest,

11   much less how to do it or what time frame.  And so there

12   is --

13       THE COURT:  All right.  Just hold on one second.

14       I'm going to get it printed out momentarily,

15   Mr. Gelernt.

16       Will you just email a copy to Mr. Ensign so we are

17   looking at the same thing.

18       Mr. Ensign --

19       MR. GELERNT:  We have lost Mr. Ensign.

20       THE COURT:  Do you have a copy of what they contend

21   is the notice?

22       MR. ENSIGN:  I don't have it in front of me, Your

23   Honor.  I have seen the notice, and I think it is the same.

24   But if they want to email me, they can --

25       THE COURT:  Will you email it to Mr. Ensign, please.

```
 1              Oh, I'm sorry.  I think you're on the thread,
 2      Mr. Ensign, that I just got.
 3              MR. ENSIGN:  Okay.
 4              THE COURT:  Why don't you pull that up.
 5              MR. GELERNT:  I believe it's now ECF 92, Your Honor.
 6              THE COURT:  So what you are saying is this one
 7      doesn't even seem to say you have an ability to challenge
 8      this?
 9              MR. GELERNT:  Correct, Your Honor.
10              THE COURT:  And you are saying you believe this is
11      the only notice they have been given?
12              MR. GELERNT:  It's the only one we have seen, Your
13      Honor.  If the government is giving out a different notice,
14      we would be interested in seeing it.  But this is the one
15      that we have been told -- we had a difficult time reaching
16      people in this detention facility, but this is the one we
17      know about.
18              THE COURT:  Okay.  So, Mr. Ensign, what do you know
19      about this notice?
20              MR. ENSIGN:  I believe this is correct, or at least I
21      don't at present have any reason to contest that this is the
22      notice given.  I have been told that the notice is also
23      being given in Spanish and perhaps other languages where
24      that's people's native language.
25              THE COURT:  Isn't the problem, though, that it
```

```
1    doesn't say you have the right to contest, you have the

2    right to challenge anything?  It's just telling you, here's

3    the notice, you are getting removed.

4         MR. ENSIGN:  I don't believe so, Your Honor, because

5    what the Supreme Court said in JGG is that they must receive

6    notice that they are subject to removal under the act.  It

7    doesn't require notice of various mechanisms by which it

8    could be challenged.

9         THE COURT:  All right.  So this -- the quote in JGG,

10   and this is at page 3, is, quote, the notice must be

11   afforded within a reasonable time and in such a manner as

12   will allow them to actually seek habeas relief in the proper

13   venue before such removal occurs, and also the detainees are

14   entitled to notice and opportunity to be heard appropriate

15   to the nature of the case.

16        So the government's position is that this notice

17   complies with the Supreme Court's ruling in JGG?

18        MR. ENSIGN:  That's correct, Your Honor.

19        THE COURT:  Again, we don't know the specific time

20   windows that you are giving, correct?

21        MR. ENSIGN:  That's correct, Your Honor; although,

22   you know, I have been told that -- and certainly in these

23   cases, it would be at least 24 hours, and that we've already

24   seen that many people have filed individual habeas

25   petitions.
```

```
1          THE COURT:  In other words, what you are saying is
2     they get this notice, and then they have to express that
3     they would want to file habeas, and then they would have 24
4     hours to file habeas?
5          MR. ENSIGN:  At least, Your Honor, and it certainly
6     could be more than that.
7          THE COURT:  I have to say the notice certainly seems
8     problematic to me without any indication of any of their
9     rights.
10          Okay.  So the last fact on the ground I want to
11     discuss, and then we will talk -- have some discussion on
12     legal issues, I think what you said, and I don't want to
13     misquote you, Mr. Ensign, was that there were no flights
14     tonight and no plans for tomorrow.  You mean no plans as of
15     right now for tomorrow, but that could change?
16          MR. ENSIGN:  Your Honor, I'm not -- the information
17     that was relayed to me was a definitive there are no flights
18     tonight, and the people I spoke to were not aware of any
19     plans for flights tomorrow.  And that's -- that was all the
20     information I was able to gather in that time.
21          THE COURT:  All right.  But I'm wondering if we -- it
22     would be nice to get something more authoritative about
23     tomorrow.  If we recessed, is that something you think you
24     would be able to secure?
25          MR. ENSIGN:  Your Honor, it's something I am
```

```
1    certainly prepared to try.

2          THE COURT:  Okay.  We will -- I want to ask plaintiff

3    some answers, then I think I would like to recess and see

4    what we can find out and then figure out where we stand.

5          MR. GELERNT:  Could I just --

6          THE COURT:  Yes, Mr. Gelernt.

7          MR. GELERNT:  Yes.  I'm sorry.  Just on this last

8    point before you go to the legal questions, I would ask the

9    government to just -- I know this sounds a little picayune,

10   but make sure that we're not talking about after midnight as

11   today and then immediately 12:01 as tomorrow.

12         THE COURT:  I think that's right.  I think that's

13   legitimate.  In other words, when we say tomorrow, that

14   starts at 12:01 a.m.

15         So when we recess, Mr. Ensign, if you can determine

16   if there will be any flights leaving at any time on

17   April 19.

18         So let me ask you, Mr. Gelernt.  Here are a couple of

19   questions I have for you.  So in order for me to have any

20   authority to act here, there must be a valid claim in your

21   current complaint, right?

22         MR. GELERNT:  Yes.

23         THE COURT:  And I know that you are going to amend to

24   bring a habeas claim.  I think it's next week.  I can't

25   remember if that's Monday -- is that Monday or another day
```

```
 1    next week that's on the time schedule?
 2          MR. GELERNT:  I think Your Honor is holding the
 3    hearing on the notice claim Monday, and then I think we have
 4    a couple more days.  I apologize.  I don't have that
 5    schedule in front of me.
 6          THE COURT:  No, that's okay.  I can pull it up.
 7          All right.  And that claim will be on behalf of
 8    members who were deported on March 15 were held --
 9          MR. GELERNT:  Correct.
10          THE COURT:  -- in the habeas claim on behalf of the
11    people who were deported and are now currently held in
12    El Salvador on the ground that they were deported
13    improperly?
14          MR. GELERNT:  Correct, Your Honor.
15          THE COURT:  And a habeas could be venued in
16    Washington.  There obviously is the issue about to what
17    degree they are in U.S. custody.  But again, that's
18    something that we will have to address once that amended
19    complaint is filed.
20          But back to my question is, so aside from that, why
21    do you think you have a standalone claim that's any
22    different from what the Supreme Court said I didn't have
23    venue to do last time?
24          MR. GELERNT:  Yeah, so we think that the notice claim
25    is a standalone.  It doesn't have to be brought in habeas.
```

1    What we understand the Supreme Court to be saying is if you

2    want to challenge the Alien Enemies Act designation, which

3    the Court understood to be getting a core habeas because it,

4    I think, entailed release, we understand we cannot bring

5    that case under 1331 -- that claim in a 1331 APA action.

6            But this seems to stand outside of habeas because

7    this is just the way to effectuate habeas.  That's what I

8    think is different is you can't actually even have that

9    habeas right as we are seeing today without notice.  And so

10   we don't think that sounds in habeas because you providing a

11   notice protocol doesn't mean we are challenging the Alien

12   Enemies Act designation.

13           And I would just note that I don't think the Supreme

14   Court could have issued its ruling about notice if it didn't

15   that think it could do it under 1331 APA because, as Your

16   Honor knows, we voluntarily dismissed our habeas claim.  So

17   what went up to the Supreme Court was only the 1331 APA

18   action, and the Court did specifically hold and affirmed

19   Your Honor that notice was required.

20           And so I think it does, in our view, stand outside

21   habeas, and I think there would be no way to really

22   effectuate the habeas right that the Supreme Court

23   recognized absent your ability to ensure notice.

24           And I would just sort of say as a practical manner,

25   Mr. Ensign noted that there are habeas actions around the

1    country that we have filed.  There's also one in the Western

2    District of Pennsylvania.  I anticipate us having to file in

3    the middle of night perhaps in 94 districts now because the

4    government will not give us any notice, and the notice -- we

5    finally saw what notice they are giving, and it's, I

6    think -- I don't see how it can possibly be set to comply

7    with the Supreme Court's ruling.

8         So absent some kind of notice protocol, we will be

9    filing in 94 districts.  I don't see any way around it.

10        THE COURT:  Okay.  But let me sort of push on this a

11   little bit more, which is the relief you seem to be -- you

12   are asking me to impose seems to me pretty close to what I

13   imposed last time, what you were seeking last time, which

14   was stop deportation, stop removal without notice, and --

15   the first was you can't deport them at all under the AEA,

16   and second, even if you could, you've got to give notice.

17   And my ruling was I don't need to decide the first issue

18   because there's clearly insufficient notice to satisfy due

19   process.  And that's what was vacated.

20        So my question is, why aren't you asking me to do

21   exactly what I did last time, which was then vacated?

22        MR. GELERNT:  I think two things, Your Honor.  One is

23   that I do not think the Supreme Court anticipated that its

24   ruling would be ignored like this.  And so I do think that

25   if the Court understood that, it would be saying you can

1    require notice in order to effectuate this habeas right that

2    we are acknowledging that people have the right to contest.

3    I just think as a practical matter, it's all that's left

4    now.

5         The second thing is I think if it really came down to

6    it, Your Honor, you could require a proper notice protocol

7    and then not say they can't remove if they don't comply with

8    it if Your Honor felt worried about that.

9         I assume the government would comply with it.

10   Obviously we would be extremely nervous that the government

11   might not comply and that people could end up in

12   El Salvador, and the government would take the position

13   mistakes can't be remedied.  So it would not be effective

14   for us.  But if Your Honor felt concerned about it and felt

15   like he absolutely could not say no removal without notice

16   notwithstanding that it would effectuate the Supreme Court's

17   ruling, I think that's one way to do it, and we would hope

18   that the government would comply with that.

19        THE COURT:  Another issue is you want me to certify

20   nationwide class here.  There are classes that have already

21   been certified in certain places.  As you said, you may have

22   to file in 94 districts.  I don't envy you on that score at

23   all.  Then again, I'm not sure why the government moved

24   everybody from Hell Valley to Bluebonnet except to

25   circumvent the TRO in the Southern District and go to

 1    somewhere else where there wasn't a TRO.

 2          I'll hear, Mr. Ensign, if you've got a reason for

 3    that.

 4          But is that something I can do is issue a nationwide

 5    class, certify a nationwide class, while we've got these

 6    other subclasses already out there?

 7          MR. GELERNT:  That's a fair question, Your Honor.

 8    And I think where courts have already decided, at least, you

 9    know tentatively what the notice should be, it's possible

10    you could carve those out and let those courts continue.

11    But most of them haven't got there.

12          But at this point, I think we would take the Northern

13    District of Texas alone at least until Your Honor had more

14    time to consider this.  We obviously have a hearing Monday

15    night.  I think our immediate concern is the Northern

16    District of Texas.  We would ask --

17          THE COURT:  But on the Northern District of Texas,

18    isn't that in front of a judge there?  That's in front of

19    Judge Hendrix there already, right?  And so --

20          MR. GELERNT:  My understanding --

21          THE COURT:  -- what authority do I have to

22    essentially oust him from a case that he's presiding over?

23          MR. GELERNT:  Your Honor, he has not certified a

24    class.  So I think at this point, there's only the few named

25    petitioners, so I don't think it would be ousting it.

```
 1          But I think it's fair if Your Honor wants to carve
 2     out where there has been, at least provisionally, a class
 3     certified.  But at this point, Judge Hendrix has not
 4     certified a class, so it's no different than a couple of
 5     habeas petitions having been filed.
 6          And the government is vigorously opposing class
 7     relief and would not give us any information about anybody
 8     but the few named petitioners and the fact that they were
 9     going to try and remove people or give notice at least.
10          So at this point, I don't think you would be usurping
11     anything in the Northern District of Texas.
12          THE COURT:  Mr. Ensign, let me -- I want to ask you
13     that one factual question, and then I want to hear your
14     responses to Mr. Gelernt.
15          So the first is, factually, can you tell me why all
16     these people were moved from Hell Valley to Bluebonnet if
17     not to circumvent the Southern District of Texas TRO?
18          MR. ENSIGN:  Your Honor, I don't have any information
19     about those transfers.
20          THE COURT:  Any reason you can think of that would be
21     actually in good faith?
22          MR. ENSIGN:  Your Honor, sure.  You know, people are
23     moved within the immigration system all the time.
24     Immigration detention is something that's committed to the
25     discretion of the secretary.  And people are certainly
```

1    moved, you know, between facilities all the time.

2    THE COURT:  Yeah, no, I agree with everything you

3    said, but it certainly seems an unlikely coincidence that

4    they just happened to be moved to Bluebonnet while there was

5    an injunction in the Southern District and not the Northern,

6    but --

7    MR. GELERNT:  Your Honor -- I apologize, Your Honor.

8    I just wanted to make sure that there was nothing I said

9    that was misleading.  We don't know how many people were

10   actually moved from Honouliuli, the Southern District, to

11   Bluebonnet, as opposed to coming from other places in the

12   country and, instead of like last time, being put in the

13   Southern District, now being -- anyway, I think Your Honor

14   understood that.  And I apologize for interrupting.  I just

15   wanted to make sure --

16   THE COURT:  Thank you.

17   Mr. Ensign, do you want to respond to some of the

18   points Mr. Gelernt -- the legal issues that Mr. Gelernt was

19   responding to my questions on?  I want to hear your thoughts

20   on those.

21   MR. ENSIGN:  Absolutely, Your Honor.  I mean, I think

22   we very much share your initial instinct, that this is

23   exactly what Your Honor ordered in the original TRO, that

24   relief sought was to enjoin removals, and the basis on which

25   the Court declined to vacate its TRO was due-process based.

1    This is the exact same claim, and it's one in which the

2    Supreme Court has vacated those precise orders.

3         And the relief they are seeking is not different.

4    They are seeking to prevent removals, just as they were in

5    the first iteration.  And the Supreme Court said very

6    clearly that both has to be brought in habeas, and habeas

7    has to be brought in the district they are being detained.

8         So given those two factors, this Court absolutely

9    does not have jurisdiction to consider these claims.

10        I think there's also severe comity concerns that Your

11   Honor's comments have already kind of gotten to, that this

12   is pending in the Northern District of Texas.  What

13   plaintiffs are doing here is essentially trying to have this

14   Court exercise appellate jurisdiction over the Northern

15   District of Texas because they don't like the decisions they

16   have been getting from the Northern District of Texas.

17        To the extent that that's true, plaintiffs' remedy is

18   to seek an appeal in the Fifth Circuit, which, you know,

19   they are doing.  They are seeking emergency relief in the

20   Fifth Circuit.

21        So if they disagree with decisions in the Northern

22   District of Texas, that's the remedy, not rushing off to a

23   court, you know, more than a thousand miles away.

24        THE COURT:  Okay.  Those are precisely my concerns as

25   well here.

```
 1              Okay.  What I would like to do is recess.
 2    Mr. Ensign, I would like you to get information, further
 3    information, about plans for tomorrow and Sunday to the
 4    extent you can get them.  I would ask you to make best
 5    efforts to do that.  And then we can come back and talk
 6    about where things stand on this and also how that relates
 7    to what we are doing on Monday.
 8              So I will give you whatever time you need,
 9    Mr. Ensign.  You tell me what's -- it's 6:49 now.  You tell
10    me what's a reasonable amount of time.  A half hour is
11    enough or not?
12              MR. ENSIGN:  Let me try in a half hour.
13              THE COURT:  All right.  So we'll say return at
14    7:20 p.m.
15              Mr. Gelernt, are you available for that?
16              MR. GELERNT:  Yes, Your Honor.
17              THE COURT:  Okay.  Return at 7:20.  All right.
18    Thanks, everyone.  See you then.
19              (A recess was taken at 6:50 p.m.)
20              THE COURTROOM DEPUTY:  We are back on the record in
21    Civil Action 25-766, JGG, et al. versus President Donald
22    Trump, et al.
23              THE COURT:  Okay.  Welcome back, everybody.
24              Mr. Ensign, what can you tell us?
25              MR. ENSIGN:  Your Honor, so I have asked for
```

```
1    information.  As to the question of the Bluebonnet facility,
2    I can represent that that was not selected because of the
3    Southern District of Texas TRO.  That was -- and people
4    are -- it is people being gathered from around the country.
5    It is not just from the Southern District.  I think it's all
6    around.  It was selected for operational reasons.
7           THE COURT:  Okay.  And I appreciate your clarifying
8    this and, Mr. Gelernt, I think, clarifying something that I
9    either took the wrong way or was making the wrong inference.
10          But are people being moved from Southern District to
11   Northern District, or is it people from around the country,
12   but not from the Southern District; do you know?
13          MR. ENSIGN:  I don't know that granular detail.  I do
14   know that it's absolutely from all around the country.
15          THE COURT:  Okay.  Thank you.  And then planes.
16          MR. ENSIGN:  Your Honor, I have spoken with DHS.
17   They are not aware of any current plans for flights
18   tomorrow, but I have also been told to say that they reserve
19   the right to remove people tomorrow, that that would be
20   consistent with the JGG decision.
21          THE COURT:  Okay.  Mr. Gelernt, do you want to be
22   heard on that any further?
23          MR. GELERNT:  Your Honor, I think our position would
24   be clear on that.  That doesn't give us much confidence that
25   there won't be planes.
```

1          And so we would ask that Your Honor at a minimum

2    issue some kind of emergency relief TRO at least until

3    Monday night when the Court can figure out its jurisdiction.

4    I think the Court could use the All Writs Act.

5          I don't think I need to belabor the point that if the

6    planes do take off and people are in El Salvador, the

7    government will take the position that that divests the

8    Court of jurisdiction.  I think that's exactly what the All

9    Writs Act is intended for.

10          So I think through Monday night, if SCOTUS or the

11    Fifth Circuit rules before then and has something definitive

12    about notice rules for this case, I think we would come back

13    to you and we would have to figure that out.  But at this

14    point, I don't feel like we have anything reproaching a

15    guarantee that there won't be people sent to El Salvador

16    tomorrow.

17          THE COURT:  No, I don't think you do.  And I

18    certainly think the notice is very troubling.  I strongly

19    doubt that the notice, particularly with a short time frame,

20    complies with the Supreme Court's instruction where it

21    doesn't give anything about the right to challenge or seek a

22    hearing.

23          Like I said, I find it very concerning.  But at this

24    point, I just don't think I have the ability to grant relief

25    to the plaintiffs.  And then it's really the two reasons

1      that we talked about earlier.  I just don't see really how

2      you are asking me to do anything different from what the

3      Supreme Court said I couldn't do.

4          I think ultimately, you do want me to enjoy removal.

5      Even if it's not for 30 days, it's at least even until

6      Monday.  And the Supreme Court said I couldn't do that.  And

7      I think you are making interesting arguments, but I think

8      the distinctions would be too fine for me to distinguish

9      what is being requested of me to do here as opposed to what

10     the Supreme Court said I couldn't do.

11         MR. GELERNT:  Your Honor, would you mind if I take

12     one more shot at it, or have you --

13         THE COURT:  Go ahead.  And I'll tell you my second

14     reason is, again, really a prudential abstention based on

15     principles of comity.  I think it's hard for me to say that

16     I should inject myself into this controversy given where

17     matters stand in the Fifth Circuit relating to the Northern

18     District of Texas and then also the Supreme Court.

19         I know you said we can sort of figure out what would

20     happen if something were to occur in those courts, but I

21     just don't think I would be observing appropriate principles

22     of comity by injecting myself.  I'm happy to hear you take

23     another shot, but I think these are points that are just

24     very tough for the plaintiff.

25         MR. GELERNT:  No, I understand, Your Honor.  I think

1    on the second point, the comity point, I think what we would

2    ask then is if you would issue a TRO just until the Fifth

3    Circuit rules, just so there's no -- something along those

4    lines.  I understand, Your Honor, and it's fair, but we are

5    concerned.

6         I don't know if Mr. Ensign is saying right now that

7    there are no planes tonight that will take off.  I heard him

8    talk about tomorrow.  I could pause for a moment and ask

9    whether there's additional planes that may go out tonight

10   given that we are hearing men are being requested to change

11   clothes.

12        THE COURT:  When you say tonight, you mean after

13   midnight?

14        MR. GELERNT:  No.  I actually mean even before

15   midnight because I think --

16        THE COURT:  I think he represented pretty clearly

17   there would be nothing today.

18        MR. GELERNT:  Okay.  Is that -- I don't know if he

19   was reserving the right to say that that would change or

20   not.

21        THE COURT:  Fine.  I am happy to ask Mr. Ensign.

22        Mr. Ensign, my understanding, and correct me if I'm

23   wrong, is that the representations you have made are that

24   there will be no planes tonight, and that at the moment,

25   there are no plans for planes tomorrow.

1          MR. ENSIGN:  That is my understanding, and that is

2     what I have been told.

3          THE COURT:  Okay.

4          Mr. Gelernt, back to you.

5          MR. GELERNT:  Yes, Your Honor.  I think on that, I

6     just feel compelled to ask whether the clients would put in

7     a declaration to that effect because I'm not sure -- I think

8     we have had this problem before, potential miscommunication

9     between the client and the attorneys.  So that's one point.

10    And I think we would ask just until the Fifth Circuit rules.

11         But on the first point, the only thing I would say is

12    I think what's changed now is the government's reaction to

13    the Supreme Court's ruling.  I think when the Supreme Court

14    ruled and said it didn't want you to enjoin removals based

15    on notice without habeas jurisdiction, I think it was

16    envisioning a world where that would actually happen.

17         And so now we have a situation where it's not

18    happening, and I just don't know, and I would be interested

19    in Mr. Ensign saying something about it, how the Supreme

20    Court's decision can be effectuated.

21         The government is arguing routinely all over the

22    country in these cases that there's no standing because they

23    haven't designated people yet and so it's premature, and so

24    they are asking the courts to wait until someone is

25    designated in these habeas actions.

1          But now when we see what happens when people are

2     designated, there's no time to get back in court.  And so I

3     think we are in a very difficult position of the Supreme

4     Court and you saying there clearly needs to be notice, go

5     into habeas, we are filing them all over the country, and

6     the government walks in and says, well, no one's been

7     designated yet and we will give you reasonable notice.

8          This judge, at least, in the Northern District of

9     Texas said, okay, well, under those representations, I

10    cannot not certify a class and not issue a TRO, and then we

11    see this situation.

12         So I think that's where we feel stuck, and that's why

13    we feel it's different than when we went to the Supreme

14    Court the first time, because I think the Court had a vision

15    of how this would work, and now that it's not working, I

16    think that's where we feel stuck.  And I don't know that the

17    government has provided a satisfactory answer to how we

18    won't be continuously stuck.

19         THE COURT:  And I'm sympathetic to everything you are

20    saying.  I just don't think I have the power to do anything

21    about it.  I think in terms of the Supreme -- if the Supreme

22    Court -- you are going to be up in the Supreme Court, and to

23    the extent you believe that they didn't anticipate this is

24    what would occur, then they will have the chance to make

25    that clear.

1          I mean, again, as I've said, I'm sympathetic to your

2     conundrum.  I understand your concern.  I think they are all

3     valid.  But at this point, I just don't think I have the

4     power to do anything about it for the reasons I expressed,

5     and the reasons Mr. Ensign gave as well.

6          MR. GELERNT:  Understood, Your Honor.

7          THE COURT:  Okay.  And again, I appreciate everyone's

8     effort.  I appreciate your efforts, Mr. Gelernt.  So I will

9     deny the expedited TRO.

10          So I guess the question then is, and this is really

11     to you, Mr. Gelernt, is, what do you want to do about the

12     Monday TRO?  In other words, I don't know what's any

13     different about what I would be able to say on Monday that

14     I'm not saying today.  If you want to -- maybe what you

15     could do -- because part of this is I don't want Mr. Ensign

16     to have to work on a brief that's due at 9:00 tomorrow

17     morning if that's not necessary.

18          So maybe what makes sense, Mr. Gelernt, and I'll hear

19     from you, is to let you think about this, submit an amended

20     TRO to the extent you think you can address my two major

21     concerns, and then we could -- and then we can pick another

22     briefing schedule.  But as I said, right now I don't see

23     what would be any different Monday.

24          MR. GELERNT:  That's fair, Your Honor.  I think what

25     we will do is think about it overnight, see whether we can

1    address your concerns, and maybe cancel the Monday hearing,

2    whichever you prefer, maybe leave it on or cancel Monday's

3    hearing, maybe do it by Zoom.

4         And so I think what may change, but I don't know, is

5    how the Supreme Court -- if the Supreme Court ultimately

6    gets this and they write something along the lines that

7    doesn't preclude you from doing it and if they actually

8    recognize the problem of this notice thing can't be done in

9    habeas because it's to effectuate habeas, then I think that

10    leaves you an opening.  If they write something along the

11    lines that is concerning you now, then there may be no

12    daylight for us.  Let us think about it, whether we write a

13    brief --

14         THE COURT:  Again, what you are saying makes sense.

15    How about what I do is if I stay the schedule on the TRO, so

16    that means the government does not need to respond yet, and

17    then you let me know via notice, maybe there could even

18    be -- what I would ask you to do then is if you want to

19    proceed in some way on that or to amend, I would ask you to

20    consult with the government and then file a joint status

21    report with a proposed schedule for going forward.

22         MR. GELERNT:  That sounds good.

23         THE COURT:  And just so everyone knows, I'm in trial

24    Monday through Thursday, 9:30 to 5:00.  So if it's one of

25    those days, it will have to be at 5:00.  I can do it next

1    Friday.  I've got some flexibility next Friday afternoon.

2            MR. GELERNT:  Okay.  That sounds good.  We will

3    consult with Mr. Ensign if we are going to -- thank you,

4    Your Honor.

5            THE COURT:  All right.  Thank you, everyone.  And I

6    will wait to hear from you.  Again, thanks so much.

7            MR. GELERNT:  Thank you.

8            MR. ENSIGN:  Thank you.

9            (The hearing concluded at 7:34 p.m.)

10                          -  -  -

11                C E R T I F I C A T E

12

13        I hereby certify that the foregoing is an accurate

14    transcription of the proceedings in the above-entitled

15    matter.

16

17

18    4/18/25              s/ Tammy Nestor
                           Tammy Nestor, RMR, CRR
19                         Official Court Reporter
                           333 Constitution Avenue NW
20                         Washington, D.C. 20001
                           tammy_nestor@dcd.uscourts.gov
21

22

23

24

25