**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| J.G.G., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-766-JEB |
| Donald J. Trump, *et al.* | |
| Defendants. | |

## BRIEF OF *AMICI CURIAE* JOHN W. KEKER, ROBERT A. VAN NEST, ELLIOT R. PETERS, AND LAURIE CARR MIMS IN SUPPORT OF THE PLAINTIFFS

## TABLE OF CONTENTS

I.     INTEREST AND IDENTITY OF AMICI ....................................................................1

II.    ARGUMENT .........................................................................................................2

    A.    The Court may hold the Government in contempt. ................................................2

    B.    The USMS cannot lawfully disobey the Court's orders. ......................................7

    C.    Even if the USMS were to follow an unlawful directive to disobey the Court's orders, the Court still would have other options for holding the Government accountable. ....................................................................................9

        1.    The Court can sanction the Government by disqualifying counsel.............9

        2.    The Court can impose adverse litigation outcomes to sanction parties that disobey court orders...............................................................11

        3.    The Court may be able to execute contempt orders by appointing non-marshals. ......................................................................................13

            a.    The Court may be able to use the All Writs Act to appoint non-USMS personnel to enforce judicial orders. .........................13

            b.    The Court may be able to enforce contempt orders by invoking its inherent authority to appoint court officers..............18

        4.    The Court should take into account certain other considerations before appointing non-USMS officials to execute contempt orders. ........20

III.   CONCLUSION ....................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abrego Garcia v. Noem*,
    No. 25-1345 (Apr. 7, 2025) ................................................................................11

*Abrego Garcia v. Noem*,
    No. 25-1404 (4th Cir. April 17, 2025) ..............................................................1, 6

*Aetna Cas. & Sur. Co. v. United States*,
    570 F.2d 1197 (4th Cir. 1978) .........................................................................10, 11

*In re Att'y Gen. of U. S.*,
    596 F.2d 58 (2d Cir. 1979) ..................................................................................4

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ..............................................................................................16

*Cheney v. U.S. Dist. Ct. for D.C.*,
    542 U.S. 367 (2004) ............................................................................................14

*Clinton v. Goldsmith*,
    526 U.S. 529 (1999) ............................................................................................15

*Cobell v. Norton*,
    334 F.3d 1128 (D.C. Cir. 2003) ...........................................................................4

*Columbia Gas Transmission Corp. v. Mangione Enters. of Turf Valley, L.P.*,
    964 F. Supp. 199 (D. Md. 1996) .........................................................................13

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ..............................................................................................2

*De Beers Consol. Mines v. United States*,
    325 U.S. 212 (1945) ............................................................................................13

*DuBerry v. District of Columbia*,
    824 F.3d 1046 (D.C. Cir. 2016) .........................................................................21

*Favell v. United States*,
    27 Fed. Cl. 724 (Cl. Ct. 1992) ...........................................................................10

*Hicks ex rel. Feiock v. Feiock*,
    485 U.S. 624 (1988) ..............................................................................................5

*Freeman v. Giuliani,*
    691 F. Supp. 3d 32 (D.D.C. 2023) ............................................................ 12, 13

*Gilbert v. Johnson,*
    490 F.2d 827 (5th Cir. 1974) ...................................................................... 3

*Giovanno v. Fabec,*
    804 F.3d 1361 (11th Cir. 2015)................................................................... 13

*Gompers v. Bucks Stove & Range Co.,*
    221 U.S. 418 (1911) .................................................................................. 5

*Ex Parte Grossman,*
    267 U.S. 87 (1925) .................................................................................... 5

*Harris v. Nelson,*
    394 U.S. 286 (1969) .................................................................................. 18

*Int'l Union, United Mine Workers v. Bagwell,*
    512 U.S. 821 (1994) .................................................................................. 4, 5

*Jones v. Clinton,*
    36 F. Supp. 2d 1118 (E.D. Ark. 1999) ....................................................... 3

*In re Kessler,*
    100 F.3d 1015 (D.C. Cir. 1996) .................................................................. 3

*Land v. Dollar,*
    190 F.2d 623 (D.C. Cir. 1951 ..................................................................... 3

*In re LeFande,*
    919 F.3d 554 (D.C. Cir. 2019) .................................................................... 16

*Lufkin v. United States,*
    168 F. Supp. 451 (D.N.H. 1958) ................................................................ 13

*Marbury v. Madison,*
    1 Cranch 137 (1803)................................................................................... 16

*Moore v. Napolitano,*
    723 F. Supp. 2d 167 (D.D.C. 2010) ........................................................... 12

*In re Neagle,*
    135 U.S. 1 (1890)....................................................................................... 9

*Nelson v. Steiner,*
    663 F. 3d 1270, 1271 (D.C. Cir. 2011)....................................................... 4

*In re Nevitt*,
   117 F. 448 (8th Cir. 1902) ......................................................................................5

No. 21-CV-02131, 2024 WL 3792654, at \*27 (D.D.C. Aug. 13, 2024)......................................9

*Noem v. Abrego Garcia*,
   No. 24A949 (U.S. Apr. 10, 2025) ......................................................................1, 6

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*,
   474 U.S. 34 (1985) ..........................................................................7, 9, 14, 15

*In re Peterson*,
   253 U.S. 300 (1920) ..........................................................................18, 19

*Printz v. United States*,
   521 U.S. 898 (1997) ..................................................................................20

*Sai v. Dep't of Homeland Sec.*,
   99 F. Supp. 3d 50 (D.D.C. 2015) ..............................................................10

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
   591 U.S. 197 (2020) ..................................................................................8

*Shepherd v. Am. Broad. Companies, Inc.*,
   62 F.3d 1469 (D.C. Cir. 1995) ..............................................................9

*Thomas v. Blocker*,
   No. 21-1943, 2022 WL 2870151 (3d Cir. July 21, 2022) ..................................21

*Turner v. Rogers*,
   564 U.S. 431 (2011) ..................................................................................6

*United States of America v. Arpaio*,
   No. CR-16-01012-001 (D. Ariz. Sept. 11, 2017)..................................................5

*United States v. Arpaio*,
   887 F.3d 979 (9th Cir. 2018) ..............................................................5

*United States v. Broadus*,
   664 F. Supp. 592 (D.D.C. 1987) ..............................................................19

*United States v. McCabe*,
   129 F. 708 (1st Cir. 1904)..........................................................................20

*United States v. N.Y. Tel. Co.*,
   434 U.S. 159 (1977) ..........................................................................14, 18

*United States v. Nixon*,
   418 U.S. 683 (1974) ..........................................................................2, 3

*US Dominion, Inc. v. Byrne,*
    No. 21-CV-02131, 2024 WL 3792654, at *27 (D.D.C. Aug. 13, 2024) ........................... 9, 10

*Young v. United States*
    481 U.S. 787 (1987) .................................................................................5, 17, 18, 19, 20

*Yusov v. Yusuf,*
    892 F.2d 784 (9th Cir. 1989) ....................................................................................... 13

**State Cases**

*Koschkee v. Evers,*
    913 N.W.2d 878 (Wis. 2018) ...................................................................................... 11

**Federal Statutes**

5 U.S.C. § 3331 ...............................................................................................................8

18 U.S.C. § 401 .............................................................................................................16

28 U.S.C. App. Fed. .....................................................................................................18

28 U.S.C. § 561 ...............................................................................................................7

28 U.S.C. § 561(a) ................................................................................................... 9, 15

28 U.S.C. § 566 .................................................................................................... 7, 8, 15

28 U.S.C. § 755 ....................................................................................................... 20, 21

28 U.S.C. § 1251 ...........................................................................................................16

28 U.S.C. § 1253 ...........................................................................................................16

28 U.S.C. § 1331 ...........................................................................................................16

28 U.S.C. § 1332 ...........................................................................................................16

28 U.S.C. § 1651 ...........................................................................................................14

**Rules**

ABA Model Rules of Prof'l Conduct ...................................................................... 10, 11

Fed. R. Civ. P. 4.1 ........................................................................................................13

Fed. R. Civ. P. 37 .........................................................................................................12

Fed. R. Civ. P. 70 .........................................................................................................13

Fed. R. Crim P. 42 ........................................................................................5

Loc. Civ. R. 7 ..............................................................................................1

**Regulations**

28 C.F.R. § 50.15 ......................................................................................11

**Constitutional Provisions**

U.S. Const., Article III, § 2 ......................................................................16

**Other Authorities**

David Noll, *If the Marshals Go Rogue, Courts Have Other Ways to Enforce their Orders*, DEMOCRACY DOCKET (March 14, 2025), https://tinyurl.com/yc2ar88y ...................2

Dimitri D. Portnoi, Note, *Resorting to Extraordinary Writs: How the All Writs Act Rises to Fill the Gaps in the Rights of Enemy Combatants*, 83 N.Y.U. LAW REV. 293 (2008) ................................................................................14

Donald J. Trump, TRUTH SOCIAL (Feb. 15, 2025, 9:53 AM) ......................................17

GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 28(A) (2d ed. 1994) ..............................................................................9

Isaac Chotiner, *What Happens if Trump Defies the Courts*, THE NEW YORKER (Feb. 11, 2025), https://tinyurl.com/2aeweast .........................................2

John W. Keker, Robert A. Van Nest & Elliot R. Peters, *Our Law Firm Won't Cave to Trump. Who Will Join Us?* N.Y. TIMES (Mar. 30, 2025) ...........................................1

Nicholas R. Parrillo, *The Endgame of Administrative Law: Governmental Disobedience and the Judicial Contempt Power*, 131 HARV. L. REV. 685 (2018) .................................................................. 3, 6, 7, 12, 16

Sanford Levinson & Jack M. Balkin, *Constitutional Crises*, 157 U. PA. L. REV. 707 (2009) ................................................................................17

Sanya Shahrasbi, Note, *Can a Presidential Pardon Trump an Article III Court's Criminal Contempt Conviction? A Separation of Powers Analysis of President Trump's Pardon of Sheriff Joe Arpaio*, 18 GEO. J. L. & PUB. POL'Y 207 (2020). ..............................................................................5

Stephen I. Vladeck, *What the Courts Can Still do to Constrain Trump*, THE ATLANTIC (April 15, 2025) ..............................................................1

Trevor W. Morrison and Richard H. Pildes, *This Is What the Courts Can Do if Trump Defies Them*, N.Y. TIMES (Feb. 16, 2025), https://tinyurl.com/yf99cem2 ................................................................................................2

Yasmin Abusaid and Douglas Keith, *What Courts Can Do If the, Trump Administration Defies Court Orders*, Brennan Center for Justice (Feb. 14, 2025), https://tinyurl.com/294m2e2u; ....................................................................2

## I.    INTEREST AND IDENTITY OF AMICI[1]

Amici curiae are name partners and experienced litigators in the San Francisco law firm of Keker, Van Nest & Peters LLP. The Keker firm has taken a strong public stance in support of law firms and lawyers that stand up to the President's unlawful orders and in support of courts that serve as a bulwark against the President's attempts to rule by fiat.[2] Like many lawyers and legal observers, amici have become concerned by the Administration's increasing tendency to ignore or evade court orders, up to and including a recent unanimous order of the United States Supreme Court.[3] Amici also are concerned that courts may "pull their punches" when considering sanctions, including contempt, out of a misplaced fear of provoking a confrontation that they believe they cannot win. Drawing on many decades of high-level litigation experience coupled with amici's research into the problem of executive defiance of judicial orders, amici write to suggest that courts are far from impotent in the face of such defiance and that there are multiple legal avenues that courts may pursue in order to compel compliance with their orders.

---

[1] Pursuant to Local Civil Rule 7(o) (referencing Fed. R. App. P. 29(a)(4)), counsel for amici represent that no party's counsel authored this brief, in whole or in part, or contributed money that was intended to fund preparing or submitting this brief, and that no person contributed money that was intended to fund preparing or submitting this brief, which was prepared on a pro bono basis.

[2] *See* John W. Keker, Robert A. Van Nest & Elliot R. Peters, *Our Law Firm Won't Cave to Trump. Who Will Join Us?* N.Y. TIMES (Mar. 30, 2025), https://www.nytimes.com/2025/03/30/opinion/perkins-coie-trump.html.

[3] *See* Order on Application to Vacate Injunction Entered by the United States District Court for the District of Maryland, *Noem v. Abrego Garcia*, No. 24A949 (U.S. Apr. 10, 2025) (ordering unanimously that the Government must "'facilitate' plaintiff Abrego Garcia's release from custody in El Salvador and ensure that his case is handled as it would have been had he not been improperly sent to El Salvador"); Stephen I. Vladeck, *What the Courts Can Still do to Constrain Trump*, THE ATLANTIC (April 15, 2025) ("[T]he Administration's foot-dragging before Judge Paula Xinis [in the *Abrego Garcia* case] has been unquestionably inconsistent with the spirit of the [Supreme] Court's ruling") (emphasis omitted).

## II.    ARGUMENT[4]

On April 16, this Court entered a finding of probable cause that Defendants' actions constitute contempt. The plaintiffs have since moved for another temporary restraining order. This brief addresses challenges that may arise while the Court is considering what contempt sanction to impose and how to enforce compliance with any additional orders, including addressing the possibility that the Government could attempt to illegally bar the United States Marshals Service ("USMS") from enforcing a court order.[5] As set forth below, court orders and the rules of professional conduct bind the Government and its attorneys with the same force as all other parties and litigants. Make no mistake: Even if the President or Attorney General tries to direct the USMS not to enforce a federal court order, the Court's hands are *not* tied.

### A.    The Court may hold the Government in contempt.

As the Court recognized in its April 16 Opinion, if the Government and its attorneys refuse to comply with a federal court order, the Court can hold the Government in contempt.[6] True, the contours of who can be held in contempt and what form a contempt sanction can take are complicated. For example:

---

[4] Throughout this brief, emphases were added to quotations while internal quotation marks, citations, ellipses, brackets, footnotes, and the like were omitted from them.

[5] Only a few articles or blog posts have offered suggestions about how federal courts might respond in such circumstances. *See, e.g.*, Yasmin Abusaid and Douglas Keith, *What Courts Can Do If the Trump Administration Defies Court Orders*, Brennan Center for Justice (Feb. 14, 2025), https://tinyurl.com/294m2e2u; Isaac Chotiner, *What Happens if Trump Defies the Courts*, THE NEW YORKER (Feb. 11, 2025), https://tinyurl.com/2aeweast; Trevor W. Morrison and Richard H. Pildes, *This Is What the Courts Can Do if Trump Defies Them*, N.Y. Times (Feb. 16, 2025), https://tinyurl.com/yf99cem2; David Noll, *If the Marshals Go Rogue, Courts Have Other Ways to Enforce their Orders*, DEMOCRACY DOCKET (March 14, 2025), https://tinyurl.com/yc2ar88y [hereinafter *Rogue Marshals*].

[6] *Cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (""A court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated.").

- It is an open question whether *the President* can be held in contempt.[7]
- There are questions about the extent to which contempt fines can be entered against an *entire agency*.[8] Courts of appeals "have consistently blocked the fines, sometimes swooping in with only days or hours remaining."[9] But in so doing, "the blocking almost always occurr[ed] for some case-specific reason, which the high court . . . ben[t] over backward to find, rather than [relying] on sovereign immunity grounds. Thus the judiciary avoid[ed] imposing contempt fines or fine schedules but without stating whether such sanctions are available in principle."[10]
- It likely is "possible to impose fines on *an official*, as distinct from fining the agency as a body."[11]
- There is "a widespread understanding that a *federal agency's head official* can, in principle, be imprisoned for the agency's disobedience of a court order."[12]

Despite these questions, "[c]ontempt orders have been levied against executive branch

officials and agencies without even so much as a hint that such orders offend the separation of

powers."[13] For example, in *In re Contempt Finding in U.S. v. Stevens*, the D.C. Circuit upheld

the district court's decision to hold three Department of Justice ("DOJ") attorneys in contempt

---

[7] *Compare United States v. Nixon*, 418 U.S. 683, 692 (1974) ("The issue whether a President can be cited for contempt could itself engender protracted litigation...."), *with Jones v. Clinton*, 36 F. Supp. 2d 1118, 1124 (E.D. Ark. 1999) ("[T]his Court has considered the matter and finds no constitutional barrier to holding the President in civil contempt of court in this case and imposing sanctions.").

[8] *See* Nicholas R. Parrillo, *The Endgame of Administrative Law: Governmental Disobedience and the Judicial Contempt Power*, 131 HARV. L. REV. 685, 704–39 (2018) [hereinafter *Endgame*].

[9] *Id.* at 698.

[10] *Id.*

[11] *Id.* at 757; *see also id.* at 757–63.

[12] *Id.* at 742; *see also Land v. Dollar*, 190 F.2d 623, 633–34 (D.C. Cir. 1951) ("The official status of the respondents does not immunize them from punishment for contempt. Government officials are bound to obey the judgment of a court just as are private citizens, and their belief that the judgment is wrong, no matter how great their good faith in entertaining such belief, cannot justify them in disobeying, or resisting enforcement of, the judgment unless and until it has been set aside or reversed on appeal."), *vacated in part and dismissed as moot in part sub nom. Sawyer v. Dollar*, 344 U.S. 806 (1952) (mem.); *Gilbert v. Johnson*, 490 F.2d 827, 830 (5th Cir. 1974) (directing district court to apply appropriate sanctions to federal Veterans Administration for failure to obey the court's order),

[13] *In re Kessler*, 100 F.3d 1015, 1017 (D.C. Cir. 1996), *as amended* (Jan. 17, 1997).

for flouting court orders requiring the production of certain information.[14] And in *Nelson v. Steiner*, the Seventh Circuit affirmed an order holding the District Director of Internal Revenue for the State of Wisconsin and the Chief of the Claims Division for DOJ in contempt because "[t]he executive branch of government has no right to treat with impunity the valid orders of the judicial branch."[15] Indeed, as the Second Circuit has recognized, it may even be appropriate for courts to hold the Attorney General herself in contempt: Although "holding the Attorney General of the United States in contempt to ensure compliance with a court order should be a last resort, to be undertaken only after all other means to achieve the ends legitimately sought by the court have been exhausted,"[16] such a contempt finding may be necessary where it is "the only appropriate sanction."[17]

In determining whether to impose civil or criminal contempt sanctions, the Court should consider the legal and practical differences between each type of sanction.[18] "[A] contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant.'"[19] A civil contemnor remains imprisoned "only until they comply with the orders of the court, and this they

---

[14] 663 F.3d 1270, 1271 (D.C. Cir. 2011).

[15] 279 F.2d 944, 948 (7th Cir. 1960).

[16] *In re Att'y Gen. of U. S.*, 596 F.2d 58, 65 (2d Cir. 1979). In *In re Attorney General*, the court of appeals reversed the district court's contempt finding because contempt was not "the only appropriate sanction" for the Government's conduct. *Id.* at 67.

[17] *Id.*

[18] *See Cobell v. Norton*, 334 F.3d 1128, 1145 (D.C. Cir. 2003) (quoting *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 827 (1994)) ("A contempt proceeding is either civil or criminal by virtue of its 'character and purpose,' not by reason of the trial judge so denominating the proceeding.").

[19] *Bagwell*, 512 U.S. at 827–28 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)).

4

may do at any time. They carry the keys of their prison in their own pockets."[20] Perhaps most

importantly, the President does not have the authority to pardon findings of civil contempt.[21]

A sanction for criminal contempt, by contrast, is "punitive, to vindicate the authority of

the court."[22] Unlike imprisonment for civil contempt, which lasts only so long as the contemnor

is able to, but refuses, to comply with the court's order, criminal contempt lasts for the duration

specified by the court.[23] Additionally, in cases of criminal contempt, the Department of Justice

may decline to investigate and bring charges.[24] As the Court indicated in its April 16 Opinion,

when that happens a district court may appoint a special prosecutor under Federal Rule of

Criminal Procedure 42.[25] Most significantly, however, unlike findings of civil contempt, the

President at least arguably can pardon convictions for criminal contempt in federal courts.[26]

---

[20] *In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902); *accord Gompers*, 221 U.S. at 442 (same).

[21] *See Ex Parte Grossman*, 267 U.S. 87, 111 (1925) ("For civil contempts, the punishment is remedial and for the benefit of the complainant, and a pardon cannot stop it.").

[22] *Bagwell*, 512 U.S. at 828 (quoting *Gompers*, 221 U.S. at 441).

[23] *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 633 (1988) ("[T]he conditional nature of the [civil-contempt] punishment renders the relief civil in nature because the contemnor 'can end the sentence and discharge himself at any moment by doing what he had previously refused to do.' . . . [T]he unconditional nature of the [criminal-contempt] punishment renders the relief criminal in nature because the relief 'cannot undo or remedy what has been done nor afford any compensation' and the contemnor 'cannot shorten the term by promising not to repeat the offense.'" (quoting *Gompers*, 221 U.S. at 442, 443)).

[24] *United States v. Arpaio*, 887 F.3d 979, 981 (9th Cir. 2018).

[25] *See id.*; *see also Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987).

[26] *See, e.g.*, *Arpaio*, 887 F.3d at 980 (describing presidential pardon for criminal contempt conviction). There may be arguments that such pardons violate the separation of powers, however. *See, e.g.*, Letter from Congressman Jamie Raskin to President Donald J. Trump, March 12, 2025, available at https://democrats-judiciary.house.gov/uploadedfiles/2025-03-12_raskin_to_trump_eop_re_contempt.pdf; Mem. of *Amici Curiae* Erwin Chemerinsky, Michael E. Tigar, and Jane B. Tigar, *United States of America v. Arpaio*, No. CR-16-01012-001 (D. Ariz. Sept. 11, 2017), ECF No. 230; Sanya Shahrasbi, Note, *Can a Presidential Pardon Trump an Article III Court's Criminal Contempt Conviction? A Separation of Powers Analysis of President*

Although this difference in potential "pardonability" would appear to tip the scales in favor of using civil contempt to address executive defiance, there is an additional complication: If and when it becomes objectively impossible for a party to comply with the court's order, the party no longer can be held in civil contempt.[27] Nevertheless, an unsubstantiated or implausible claim of "impossibility" need not incapacitate the court. The Court can push back—vigorously—by demanding *concrete evidence* on such questions as: What actions has the Administration taken to comply with the court's order? What prevented those actions from being effective? What alternative actions has the Administration considered taking to carry out the order, and why did it accept or reject each alternative? And so on.[28] An unwarranted or unexplained failure or refusal to produce such evidence—for example, a spurious assertion of the "state secrets doctrine" or of some other privilege against disclosure—could furnish an *independent basis* for

---

*Trump's Pardon of Sheriff Joe Arpaio*, 18 GEO. J. L. & PUB. POL'Y 207 (2020).

[27] *See Turner v. Rogers*, 564 U.S. 431, 442 (2011) ("A court may not impose punishment in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order."); *see also Endgame* at 743 ("[N]oncompliance cannot support any contempt finding, even a civil one, insofar as compliance is objectively impossible. A related and perhaps identical doctrine says that a defendant can avoid a contempt finding by making all reasonable efforts at compliance or doing everything in his or her power to comply.").

[28] *See, e.g.,* Order on Application to Vacate Injunction Entered by the United States District Court for the District of Maryland, *Noem v. Garcia*, No. 24A949 (U.S. Apr. 10, 2025) (directing Government, on remand, to "be prepared to share what it can concerning the steps it has taken and the prospect of further steps" to facilitate deported plaintiff's release from custody in El Salvador); *see also* Order Denying Mot. for Emergency Stay and Writ of Mandamus at 3-4, *Abrego Garcia v. Noem*, No. 25-1404 (4th Cir. April 17, 2025) (Wilkinson, J.) (refusing to stay or review district court's order requiring Government to "facilitate" return of wrongly deported plaintiff because "'[f]acilitation' does not permit the admittedly erroneous deportation of an individual to the one country's prisons that the withholding order forbids and, further, to do so in disregard of a court order that the government not so subtly spurns. 'Facilitation' does not sanction the abrogation of habeas corpus through the transfer of custody to foreign detention centers in the manner attempted here. Allowing all this would 'facilitate' foreign detention more than it would domestic return. It would reduce the rule of law to lawlessness and tarnish the very values for which Americans of diverse views and persuasions have always stood.").

imposing non-pardonable civil contempt sanctions.

### B.    The USMS cannot lawfully disobey the Court's orders.

The Court also should not shy away from contempt sanctions based on fear that the President or Attorney General may direct the USMS to stand down from enforcing a contempt order. It is not a foregone conclusion that the Marshals would follow such a directive. The Marshals *cannot* choose to disobey a federal court order without violating federal law and becoming oath-breakers.

Federal law is unequivocal that the USMS must enforce and execute federal court orders. "It is the *primary role and mission* of the United States Marshals Service to provide for the security and to obey, execute, and *enforce all orders*" of federal courts.[29] "[T]he United States Marshals Service *shall* execute *all lawful writs, process, and orders* issued under the authority of the United States, and shall command all necessary assistance to execute its duties."[30] And as the Supreme Court has made clear, "[t]he Marshals must obey the mandates of federal courts" so long as the court's authority to issue an order derives from some independent source.[31]

But one of the USMS's governing statutes also describes it as a "bureau within the Department of Justice under the authority and direction of the Attorney General."[32] How should courts resolve the tension between that provision and the ones plainly requiring the USMS to

---

[29] 28 U.S.C. § 566(a).

[30] *Id.,* § 566(c).

[31] *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985). In *Pennsylvania Bureau*, the Court held that because courts have no standalone statutory authority to order transportation of prisoners in state custody, a court could not order the Marshals to transport state prisoners. *Id.* at 38–39.

[32] 28 U.S.C. § 561(a).

execute all lawful federal-court orders?

The answer is straightforward: Where the Attorney General's directions contradict the statutory directive to enforce lawful orders, the latter must prevail—because the Constitution so requires. The proof lies in the USMS's oath of office, which is mandated by law and contains no exception. Marshals must "take an oath or affirmation to faithfully execute the duties of that office."[33] That oath states:

> I . . . do solemnly swear (or affirm) that I will support and defend *the Constitution of the United States* against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. . . .[34]

Because the Marshals swear to support and defend the Constitution—*not the President or the Attorney General*—they cannot choose to disobey their constitutional obligation to "take Care that the Laws be faithfully executed," including executing their duties to enforce lawful federal court orders under 28 U.S.C. § 566.[35]

As Yale Law School Professor Nicholas Parrillo stated in his study of federal-agency disobedience of court orders: "For the President to call off the marshals would flagrantly violate the statute charging the marshals to carry out court orders[.]"[36]

---

[33] *Id.,* § 563.

[34] 5 U.S.C. § 3331.

[35] Art. II, § 1, cl. 1; *see also Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (stating that Take Care Clause applies to federal officer because no single president "could fulfill that responsibility alone").

[36] *Endgame* at 693–94.

**C.** **Even if the USMS were to follow an unlawful directive to disobey the Court's orders, the Court still would have other options for holding the Government accountable.**

Although federal law, including the USMS's oath and the Constitution, imposes an unquestionable obligation on the Marshals to enforce and execute court orders, it is still conceivable that the Government may attempt to justify directing the USMS not to follow the law, likely based on the USMS's status as a bureau within DOJ.[37] But if the Marshals choose to break their oath and follow such an unlawful directive by refusing to enforce or execute a federal court's order, including a contempt order, the court still would have options. To start, there are other sanctions available to federal courts that would not require the Marshals' assistance for execution, including disqualifying counsel and imposing adverse litigation outcomes. Additionally, the Court potentially still could effectuate contempt orders against the Government by turning to officials *other than the USMS* for enforcement.

**1.** **The Court can sanction the Government by disqualifying counsel.**

Federal courts' inherent sanction powers include the disqualification of counsel.[38] For example, the District Court for the District of Columbia recently held in *US Dominion, Inc. v. Byrne* that, although disqualification is an "extraordinary" remedy, "a 'clear violation of the District of Columbia Rules of Professional Conduct' can merit disqualification."[39] In granting a

---

[37] 28 U.S.C. § 561(a); *see also Pa. Bureau*, 474 U.S. at 36 n.1 ("Marshals are within the Executive Branch of the Federal Government . . . subject to the supervision and direction of the Attorney General"); *In re Neagle*, 135 U.S. 1, 63 (1890) ("[M]arshals of the United States . . . belong emphatically to the executive department of the government.").

[38] *See Shepherd v. Am. Broad. Companies, Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995) (citing GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 28(A) (2d ed. 1994)).

[39] No. 21-CV-02131, 2024 WL 3792654, at *27 (D.D.C. Aug. 13, 2024) (quoting *Paul v. Judicial Watch, Inc.*, 571 F. Supp. 2d 17, 20 (D.D.C. 2008)).

motion to disqualify, the court emphasized that it "views intentional violations of its orders as severe misconduct."[40] The *Byrne* court made clear that disqualification is warranted when an attorney "clearly views compliance with Court Orders with which she does not agree as optional," a view that "is incompatible with our judicial system."[41]

When necessary, the Court should consider disqualifying DOJ attorneys, the Attorney General, or even all of DOJ, just like it would any other lawyer or law firm. The United States Claims Court made exactly this point in a decision denying a motion to disqualify DOJ:

> This court . . . cannot agree with defendant's broad-sweeping assertion in its responsive pleadings that the Department of Justice cannot be removed from representing the United States. The Constitution of the United States provides for a system of government in which the balance of power between the executive, legislative and judicial branches of government is remarkable and enduring because of the built-in system of checks and balances between these three parts of the government. . . . [U]nder our constitutional system of government no branch of the government should be allowed the unfettered, unchecked ability to act arbitrarily, capriciously or outside the dictates of the law.[42]

It is therefore unsurprising that in cases deciding whether to disqualify DOJ, federal courts have applied the same factors that they apply to private counsel[43]—without any suggestion that DOJ attorneys or DOJ writ large are entitled to special permission to violate court orders or the rules of professional conduct.[44]

---

[40] *Id.* at *27.

[41] *Id.*

[42] *Favell v. United States*, 27 Fed. Cl. 724, 750 (Cl. Ct. 1992).

[43] *See, e.g.*, *Aetna Cas. & Sur. Co. v. United States*, 570 F.2d 1197, 1200 (4th Cir. 1978) (reversing disqualification of DOJ because "nothing in the record to support the conclusion of the court that 'an actual conflict exists,'" so DOJ did not violate the rules of professional conduct); *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 67 (D.D.C. 2015) ("Plaintiff's speculative arguments fall far short of demonstrating ethical violations that rise to the level of 'undermining the court's confidence in the vigor of counsel's representation' as would be required to warrant disqualification of counsel.").

[44] *See, e.g.*, ABA Model Rules of Prof'l Conduct r. 1.2(d) ("A lawyer shall not counsel a client

Even without the ability to rely on the USMS to enforce court orders or resulting contempt orders, the Court therefore could still disqualify DOJ and its lawyers from representing the Government if they violate court orders.[45]

### 2. The Court can impose adverse litigation outcomes to sanction parties that disobey court orders.

The Court also can sanction the Government by imposing litigation-related limitations on the Government, from preclusion, waiver, and striking to—in the most extreme cases—entry of default judgment. Professor Parillo found four instances in which federal courts "seeking to sanction an agency for contempt have . . . imposed adverse outcomes on the agency within the

---

to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent."); *id.*, r. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous."); *id.* r. 3.3(a) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal . . ., or offer evidence the lawyer knows to be false."); *id.*, r. 3.4(c) ("A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal."); *id.*, r. 3.5(d) ("A lawyer shall not . . . engage in conduct intended to disrupt a tribunal."); *id.*, r. 8.4(c), (d) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation" or "engage in conduct that is prejudicial to the administration of justice."); Order on Mot. for Stay Pending Appeal, *Abrego Garcia v. Noem*, No. 25-1345, at 8 n.4 (Apr. 7, 2025) (Thacker, J., concurring) (explaining that "the duty of zealous representation is tempered by the duty of candor to the court, among other ethical obligations, and the duty to uphold the rule of law, particularly on the part of a Government attorney" (citing United States Department of Justice, Home Page, https://www.justice.gov/)).

Further suggesting that federal courts can disqualify DOJ, state courts have granted motions to disqualify state departments of justice and attorneys general. *See*, *e.g.*, *Koschkee v. Evers*, 913 N.W.2d 878, 883 (Wis. 2018) (granting motion to disqualify Wisconsin DOJ and Attorney General).

[45] Before being reversed on other grounds (because there was no conflict of interest requiring disqualification), the district court in *Aetna Casualty & Surety Company v. United States* suggested that the Government should be represented by "private counsel" rather than DOJ. 438 F. Supp. 886, 889 (W.D.N.C. 1977), *rev'd*, 570 F.2d 1197 (4th Cir. 1978); *cf.* 28 C.F.R. § 50.15 (describing parameters for "Representation of Federal officials and employees by Department of Justice attorneys or by private counsel furnished by the Department in civil, criminal, and congressional proceedings in which Federal employees are sued, subpoenaed, or charged in their individual capacities").

lawsuit itself or within the particular agency proceeding that is the subject of the lawsuit."[46]

A preclusion sanction, which prohibits a party from offering certain evidence, "may be so severe as to be litigation-ending, even if it is not described as such."[47] Nonetheless, the District Court for the District of Columbia has entered a preclusions sanction against the Government over its objection that the sanction was "akin to default" because of the Government's history of protracted recalcitrance," as well as "the failure of previous, lesser sanctions to deter subsequent violations, the resulting prejudice to the plaintiffs, and the need to deter the [Government's] willful conduct."[48]

With respect to the most serious litigation outcome sanction—entering a default judgment—there are three basic justifications that "support the use of dismissal or default judgment as a sanction for misconduct."[49] "First, the court may decide that the errant party's behavior has severely hampered the other party's ability to present his case, i.e., that the other party has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case."[50] "A second justification is the prejudice caused to the judicial system when the party's misconduct has put 'an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay.'"[51] Third, "the court

---

[46] *Endgame* at 763–65.

[47] *Moore v. Napolitano*, 723 F. Supp. 2d 167, 179 (D.D.C. 2010); *see also* Fed. R. Civ. P. 37(c)(1).

[48] *Moore*, 723 F. Supp. 2d at 180, 184.

[49] *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 63 (D.D.C. 2023), *judgment entered*, No. CV 21-3354, 2023 WL 9783148 (D.D.C. Dec. 18, 2023), *appeal dismissed*, No. 24-7021, 2025 WL 634800 (D.C. Cir. Feb. 26, 2025).

[50] *Id.*

[51] *Id.*

may consider the need to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future."[52] Applying these considerations, courts of appeals routinely affirm default judgments based on litigants' failure to obey court orders.[53] The Court can do the same when the federal Government is the disobedient party.

### 3. The Court may be able to execute contempt orders by appointing non-marshals.

Even if the USMS refuses to execute orders entered against the Government, the Court may be able to appoint officials other than Marshals to enforce those orders. Although this list is not intended to be exhaustive, we have identified at least two mechanisms[54] for doing so: the All Writs Act and federal courts' inherent authority.

### a. The Court may be able to use the All Writs Act to appoint non-USMS personnel to enforce judicial orders.

To appoint non-USMS law-enforcement personnel to enforce their orders, the Court may

---

[52] *Id.*

[53] *See*, *e.g.*, *Giovanno v. Fabec*, 804 F.3d 1361, 1365 (11th Cir. 2015); *Yusov v. Yusuf*, 892 F.2d 784, 785 (9th Cir. 1989).

[54] If a case already has proceeded to a final judgment that requires a party to perform a "specific act" within a specified time, Federal Rule of Civil Procedure 70 authorizes the court to hold a party in contempt for disobeying that judgment, and further authorizes the court to "order the act to be done—at the disobedient party's expense—*by another person appointed by the court*." *See* Fed. R. Civ. P. 70(a), (e)*; cf. De Beers Consol. Mines v. United States*, 325 U.S. 212, 218 (1945); *Columbia Gas Transmission Corp. v. Mangione Enters. of Turf Valley, L.P.*, 964 F. Supp. 199, 199–200, 203–04 (D. Md. 1996); *Lufkin v. United States*, 168 F. Supp. 451, 455 (D.N.H. 1958).

In addition, Rutgers Law School Professor David Noll has proposed a different basis for appointing non-USMS law-enforcement personnel to enforce a federal court's civil-contempt order. He proposes reading subsection (a) of Federal Rule of Civil Procedure 4.1, which authorizes courts to use a "person specially appointed" to *serve process*, as creating a "general rule" that also affects how one reads subsection (b), which governs *where* an *order committing a person for civil contempt* may be served and enforced (but not by whom). *See Rogue Marshals.*

invoke the All Writs Act ("AWA"),[55] which provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.[56]

The Supreme Court "has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and *prevent the frustration of orders it has previously issued* in its exercise of jurisdiction otherwise obtained."[57] The AWA "has served since its inclusion, in substance, in the original Judiciary Act as *a legislatively approved source of procedural instruments designed to achieve the rational ends of law.* . . . Indeed, unless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it."[58]

Courts applying the AWA generally consider several factors, which, considered in the context of executive defiance, suggest that invoking the AWA may be appropriate to enforce the Court's orders if the USMS stands down.[59]

---

[55] 28 U.S.C. § 1651(a).

[56] *Id.*

[57] *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172–73 (1977); *see also Pa. Bureau*, 474 U.S. at 40.

[58] *Id.*

[59] Dimitri D. Portnoi, Note, *Resorting to Extraordinary Writs: How the All Writs Act Rises to Fill the Gaps in the Rights of Enemy Combatants*, 83 N.Y.U. Law Rev. 293, 294 (2008) [hereinafter *Resorting to Writs*]. Portnoi observes that this "discretionary power historically has been exercised sparingly" and, thus, that there is scant case law concerning the issuance of writs under the AWA. *Id.* at 295. But he identifies several factors that provide a framework for reviewing application of the AWA—the "absence of alternative avenues to obtain the same relief," "an independent basis for subject-matter jurisdiction," and "a finding that the writ is necessary or appropriate in aid of that jurisdiction"—and explains that the writ must be "agreeable to the usages and principles of law." *Id.* at 295, 299–303. While recognizing that this list is not exhaustive, *see, e.g., Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (explaining that a writ may be issued against a lower court when there are "no adequate means to

i.    The availability or absence of alternative remedies.

"The All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law."[60] "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."[61] In other words, the AWA "applies where a legislative scheme is unclear or incomplete. . . . and thus operates as a gap-filler for the *casus omissus*—the unprovided-for case."[62]

A perfect example of a *casus omissus* subject to the AWA would arise if the President or Attorney General ordered the USMS to violate its statutory and constitutional obligation to enforce a lawful court order. No "legislative scheme" addresses that unprecedented situation. Indeed, in that situation, the legislative scheme governing the USMS arguably points in two conflicting directions, at once subordinating the USMS to the Attorney General's authority[63] while requiring the USMS to enforce lawful federal-court orders.[64] While the USMS's constitutional duty to enforce such orders, as reflected in the USMS oath, is crystal clear,[65] what

---

attain the relief" desired, the party's "right to issuance of the writ is 'clear and indisputable,'" and the court is "satisfied that the writ is appropriate under the circumstances"), this brief focuses on the factors that Portnoi has identified for determining whether the circumstances warrant a "drastic and extraordinary" remedy under the AWA.

[60] *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999).

[61] *Pa. Bureau*, 474 U.S. at 43.

[62] *Resorting to Writs* at 294.

[63] *See* 28 U.S.C. § 561(a).

[64] *See id.* § 566(c); *see also id.* § 566(a) (USMS's "primary role and mission" includes "enforc[ing] all orders of" the federal courts); Art. II, § 1, cl. 1.

[65] *See* Part II, *supra*.

a *court* can do when performance of that duty is blocked by an illegal executive command is not clear at all.

### ii.    Whether the Court has an independent basis for exercising jurisdiction.

Of course, federal courts have jurisdiction to hear cases and controversies, to issue orders in their exercise of that jurisdiction, and to issue contempt orders.[66] Indeed, "the Supreme Court has specifically 'upheld a criminal contempt citation even on the assumption that the District Court issuing the citation was without jurisdiction over the underlying action.'"[67]

### iii.    Whether the action is necessary or appropriate in aid of the Court's jurisdiction.

"[T]he power to issue writs under the AWA is limited to orders in response to *threats to jurisdiction*; it is not broadly available to protect the parties' rights."[68] But "[t]he 'necessary or appropriate' language, in conjunction with the broad 'in aid of' interpretation, should be construed to permit writs that are salutary to the court's exercise of jurisdiction or adjudication of the claims before it."[69]

---

[66] U.S. Const., art. III, § 2; 28 U.S.C. §§ 1251, 1253, 1331, 1332; *Marbury v. Madison*, 1 Cranch 137, 177 (1803); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also* 18 U.S.C. § 401(3) ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as," inter alia, "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."); *Endgame* at 692 n.21 ("Despite the word 'punish,' [18 U.S.C. § 401] is understood to cover both civil and criminal contempt." (citing *United States ex rel. Shell Oil Co. v. Barco Corp.*, 430 F.2d 998, 1000 (8th Cir. 1970))).

[67] *In re LeFande*, 919 F.3d 554, 561 (D.C. Cir. 2019) (quoting *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992)).

[68] *Resorting to Writs* at 302.

[69] *Id*. at 302–03.

There can be no greater or more direct "threat" to a federal court's jurisdiction than an Administration's wholesale refusal to obey a lawful judicial order, coupled with that Administration's crippling of the court's ability to enforce that order through its contempt power. In an article carefully and narrowly defining the meaning of the term "constitutional crisis," Professors Sanford Levinson and Jack Balkin opined that the term, frequently bandied about and misused to refer to mere constitutional "conflicts," should apply only to "a potentially decisive turning point in the direction of the constitutional order, a moment at which the order threaten to break down, just as the body does in a medical crisis."[70] One such turning point, they wrote, "arise[s] when political leaders believe that exigencies require public violation of the Constitution."[71]

An Administration that arrogates to itself the power to strip courts of their contempt powers is effectively upending the constitutional order by reducing the courts to mere advisory bodies. "The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other branches. If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery."[72]

            iv.        Whether exercising the AWA is consistent with usages

---

[70] Sanford Levinson & Jack M. Balkin, *Constitutional Crises*, 157 U. PA. L. REV. 707, 714 (2009).

[71] *Id.*; *cf.* Donald J. Trump, TRUTH SOCIAL (Feb. 15, 2025, 9:53 AM) ("He who saves his Country does not violate any Law").

[72] *Young*, 481 U.S. at 796.

**and principles of law**

The AWA's phrase "agreeable to the usages and principles of law" calls on courts to "fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage."[73] Rutgers Law School Professor David Noll points out that the Court's power to appoint non-USMS law-enforcement personnel to enforce contempt orders "is consistent with"—that is, analogous to—"other provisions of the rules that allow [courts] to make use of other parties as a backstop to enforcement by the marshals."[74] He cites, for example, the admiralty-forfeiture rule that when a court takes control of property, "the warrant and any supplemental process" may be enforced by marshals *or* by "someone specially appointed by the court for that purpose."[75] Non-USMS enforcement of contempt orders also is analogous to orders appointing private parties to investigate and prosecute criminal contempt[76] and to provide technical assistance to federal law-enforcement surveillance efforts.[77]

> **b.    The Court may be able to enforce contempt orders by invoking its inherent authority to appoint court officers.**

"Courts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their duties."[78] "This power *includes authority to appoint persons unconnected with the court to aid judges in*

---

[73] *Harris v. Nelson*, 394 U.S. 286, 299 (1969).

[74] *Rogue Marshals.*

[75] *Id.* (referring to 28 U.S.C. App Fed. R. Civ. P. Rules C(3)(b) & G(3)(c)(i)).

[76] *Young*, 481 U.S. at 793 (recognizing courts' "inherent authority" to appoint a private attorney to prosecute contempt proceedings).

[77] *See N.Y. Tel.*, 434 U.S. at 173–76 (holding that AWA authorized federal court to issue orders compelling telephone company to provide technical assistance to federal law enforcement in installing pen registers).

[78] *In re Peterson*, 253 U.S. 300, 312 (1920).

*the performance of specific judicial duties*, as they may arise in the progress of a cause."[79]

"Whether such aid shall be sought is ordinarily within the discretion of the trial judge."[80]

In *In re Peterson*, the Supreme Court upheld the district court's appointment of an auditor because, "without the aid to be rendered through the preliminary hearing and report, the trial judge would be unable to perform his duty of defining to the jury the issues submitted for their determination and of directing their attention to the matters actually in issue."[81] In *Young v. United States ex rel. Vuitton et Fils S.A.*, the Supreme Court upheld the district court's appointment of a contempt prosecutor to protect courts' power to enforce their orders, because "[t]he ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches."[82] Thus, the Court emphasized that courts' contempt proceedings "cannot be at the mercy of another Branch."[83]

It follows from *Peterson* and *Young* that the Court has inherent power to appoint officials to enforce courts' contempt orders, particularly where the only reason the orders are not being enforced is because of the actions of Executive Branch officials. Just like in *Young*, if the USMS refuses to enforce contempt orders, there is a reasonable argument that the Court must be able to

---

[79] *Id.*; *see also Young*, 481 U.S. at 793 (recognizing courts' "inherent authority" to appoint a private attorney to prosecute contempt proceedings).

[80] *Peterson*, 253 U.S. at 313; *see also United States v. Broadus*, 664 F. Supp. 592, 598 fn. 7 (D.D.C. 1987) ("It must be mentioned that a court's inherent powers to supervise the litigation before it, and to do justice through that supervision, are extremely broad") (citing *Young*, 481 U.S. 787 and *Peterson*, 253 U.S. 300)).

[81] *Peterson*, 253 U.S. at 313–14.

[82] 481 U.S. at 796.

[83] *Id.*

appoint officials to do so, "without which courts would be 'mere boards of arbitration whose judgments and decrees would be only advisory.'"[84]

### 4. The Court should take into account certain other considerations before appointing non-USMS officials to execute contempt orders.

Beyond federal courts' arguable authority to appoint non-USMS officials to enforce contempt orders, two other considerations warrant discussion.

First, as a practical matter, the Court will need to weigh how—in practice—such court-appointed officials would enforce contempt orders. Because in a situation where DOJ has successfully ordered the USMS to stand down, there is at least the possibility that court-appointed officials enforcing court orders against the Government would find themselves in direct conflict—and perhaps even an armed standoff—with federal law-enforcement officers. Thus, it is important that the Court make the decision to appoint officials with eyes wide open, considering this possibility.

Second, it is possible that if the Court appoints state law-enforcement officers to enforce court orders, the Government or local officials subject to the order might argue that appointment violates the anti-commandeering doctrine (although it is unclear whether the Government would itself have standing to make this argument).[85] There are likely ways for the Court to avoid

---

[84] *Id.* There is also an argument that a federal judge could order the court crier to execute the court's orders. "[C]riers are appointed by the court, and therefore may well be regarded as constitutional officers." *United States v. McCabe*, 129 F. 708, 709 (1st Cir. 1904). Federal law permits each district court judge to appoint one crier, who serves as a courtroom bailiff and messenger for the appointing judge. 28 U.S.C. § 755. The crier's duties as bailiff are "to attend the court, maintain order, wait upon the grand and petit juries, and *perform such other necessary duties as the judge or marshal may direct*." *Id.* Arguably then, a court might be able to direct the crier to execute court orders.

[85] *See Printz v. United States*, 521 U.S. 898, 933 (1997) ("The Federal Government may not compel the States to enact or administer a federal regulatory program.").

implicating anti-commandeering principles, however. The Court can, for example, craft its appointment orders to make clear that the appointment is voluntary and any appointee has the option to decline the appointment, which would negate any commandeering defense or objection.[86] Further, the Court could appoint former military officials who are not affiliated with any state law-enforcement agency.[87] The Court also potentially could appoint officers from the D.C. Metropolitan Police Department, because the D.C. Circuit has recognized that the anti-commandeering doctrine does not appear to apply to D.C.[88]

### III.    CONCLUSION

The possibility that the Government could disobey the Court's orders and attempt to avoid any resulting accountability is as frightening as it is unprecedented. But that does not mean that the USMS and Court must or should acquiesce in the face of such a threat. Indeed, even if the USMS succumbs to pressure, the Court has tools available to it to ensure that the Government is held responsible for its failure to enforce or execute court orders.

---

[86] *See*, *e.g.*, *Thomas v. Blocker*, No. 21-1943, 2022 WL 2870151, at *4 (3d Cir. July 21, 2022) (concluding that where a "state voluntarily complies" with a federal directive, doing so "does not violate Tenth Amendment anti-commandeering principles"); *see also DuBerry v. District of Columbia*, 824 F.3d 1046, 1057 (D.C. Cir. 2016) (stating that anti-commandeering defense would not have been available to state where it "voluntarily provide[d] the necessary training and voluntarily established a procedure to obtain needed historical information about appellants").

[87] *Cf.* 28 U.S.C. § 755 ("If the position of crier or bailiff is to be filled by the appointment of a person who has not previously served as either crier or bailiff, preference in the appointment shall be given to a person who has served in the military or naval forces of the United States in time of war and who has been honorably discharged therefrom.").

[88] *See DuBerry*, 824 F.3d at 1057 (holding anti-commandeering defense was not available to D.C.).

Respectfully submitted,

Dated:  April 18, 2025

By:    */s/ Steven A. Hirsch*
      STEVEN A. HIRSCH
      (D.C. Bar No. 418647)
      KEKER, VAN NEST & PETERS LLP
      633 Battery Street
      San Francisco, CA  94111
      Telephone:  415-391-5400
      shirsch@keker.com

      Counsel of Record for Amici Curiae
      John W. Keker, Robert A. Van Nest, Elliot
      R. Peters, and Laurie Carr Mims

22

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2025, the foregoing document and all attachments were filed with the Clerk of the Court, using the CM/ECF system, causing them to be served on all parties.


Dated:  April 18, 2025                                     */s/ Steven A. Hirsch*
                                                          STEVEN A. HIRSCH