# EXHIBIT F

## DECLARATION OF LIYANARA SÁNCHEZ

I, Liyanara Sánchez, declare under penalty of perjury as follows:

1. My name is Liyanara Sánchez. I am 36 years old and currently reside in Tampa, Florida. I am a national of Venezuela and seeking asylum. I am the wife of Frengel Reyes Mota, a 24-year-old Venezuelan national and the stepfather of my 10-year-old son.

2. Frengel and I arrived in the United States in 2023 with our son. We had to flee Venezuela due to safety concerns and violence from paramilitary groups that controlled our home town. Frengel applied for asylum in the United States on December 2, 2024. His immigration case was pending, and he did not have a final order of removal at the time of his detention.

3. On February 4, 2025, Frengel appeared for a required check-in at the Tampa Immigration and Customs Enforcement (ICE) office. ICE officers told us the check-in was "routine," but instead detained him without providing any explanation. At no point during the check-in did anyone mention Tren de Aragua ("TdA") or accuse Frengel of being affiliated with a gang.

4. Following his detention, Frengel was transferred through several facilities: Pinellas County Jail, Krome Detention Center, and eventually El Valle in Texas. An attorney was retained to assist with a bond hearing and to represent him in his asylum case.

5. On or around February 19, 2025, during the bond process, we first learned that the government was accusing Frengel of being associated with the Tren de Aragua ("TdA") gang. The only "evidence" was an I-213 form listing this accusation without any explanation or factual support. I have a copy of that form. It states that Frengel "may be a Tren de Aragua associate."

6. This allegation is completely false. Frengel vehemently denied these allegations. Frengel is not and has never been affiliated with any gang. We have been married and living together for more than seven years, and during that time, neither my husband nor I has ever been affiliated with any member of TdA. He does not have a criminal record in Venezuela or in the United States. He does not have any tattoos, let alone tattoos that could be interpreted as gang-related. Our hometown in Venezuela is nearly a 24-hour drive from Aragua, where TdA is believed to be active.

7. On March 6, 2025, Frengel had a bond hearing that I attended. The government told the judge that Frengel was associated with TdA without presenting evidence. At no point during the hearing did the government give Frengel or his attorney a meaningful opportunity to respond to or rebut the allegation of TdA association before he was removed. Nor was he or his attorney given any notice that he was being designated under the Aliens Enemy Act based on the government's allegations.

8. In the early hours of March 15, 2025, during my last conversation with Frengel, he told me he that the ICE officers were telling him that he would be deported to Venezuela. He told me that he was afraid to be removed and be separated from me and his son. On March 17, when the attorney's assistant called the El Valle facility, staff confirmed he had been deported but refused to say where he was.

9. About a week later, we saw Frengel's name on a list of Venezuelans who had been deported to El Salvador. We were never notified by the U.S. government of his transfer.

10. Frengel was sent to the Terrorism Confinement Center (CECOT) in El Salvador, a prison known for its overcrowded and inhumane conditions. I am extremely worried about his health and safety. Neither his attorney nor I have been able to contact him or get any meaningful information about him while he remains detained in this foreign prison. He never should have been sent there.

11. At the time he was deported, Frengel was still in active removal proceedings and had not been ordered removed by a judge. He had an immigration hearing scheduled for March 24, 2025, but was unable to appear because he had already been unlawfully removed from the country.

12. We later obtained copies of his immigration paperwork, including his I-213 form and noticed multiple errors. The documents listed someone else's last name, referred to him with female pronouns, and used two different A-numbers. These mistakes make me extremely worried about how the government identified him for deportation.

13. As his wife, I am dedicated to Frengel's best interests and committed to representing him while he is detained in a foreign prison and unable to speak for himself. Frengel and I have been together for seven years. We met in Venezuela and after dating for six months, we got married and have been building our life together since. He has helped raise my son as his own and has been a devoted stepfather and partner. He is a kind, hardworking, and family-oriented man who has always taken care of us and supported our home. We want to continue growing our family together. I continued to support him throughout his detention by ICE by looking for immigration attorneys, attending all his bond proceedings, and constantly emailing and calling him.

14. Since learning of his deportation, I have done everything I can to follow up with government officials, raise awareness through the media, and help rectify the injustice he is currently facing. On March 17, 2025, a legal assistant called ICE's Enforcement and Removal Operations Detention, Reporting and Information Line (DRIL) at 1-888-351-4024 on my behalf to request information about my husband, who is detained at CECOT, and to possibly speak with him. ICE would only tell us that he had been deported and refused to answer any other questions about him.

15. Frengel's removal has caused our family immense pain and fear because we have never been separated for any extended amount of time. Our son continues to ask for his father and struggles to understand why this has happened. Frengel and our son had a close

relationship, as Frengel consistently supported his schoolwork and my son confided in him. We do not know if or when we will ever see him again.

16. I believe it is in Frengel's best interest to participate as a named petitioner in this case and to have the opportunity to challenge his removal under the Alien Enemies Act. I know he would want to return to the United States so that he can continue pursuing his asylum claim and defend himself in a lawful proceeding.

17. I respectfully ask that Frengel be allowed to return to the United States to pursue his asylum case and be reunited with his family.

Executed on this 24th day of April, 2025.
Tampa, Florida.

**Liyanara Sánchez**

## ATTESTATION AND CERTIFICATE OF TRANSLATION

I, Talia Roma, certify that I am fluent in both English and Spanish. On April 24, 2025, I personally spoke with Liyanara Sánchez and read the foregoing information to her over the phone. Ms. Sánchez affirmed that the information in the above declaration is true and accurate.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

_____
Talia Roma
Paralegal
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, 7th Floor
San Francisco, CA 94609
(412) 626-1379
troma@aclu.org