IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LIYANARA SANCHEZ, as next friend on behalf of FRENGEL REYES MOTA, *et al.*, <br><br> *Petitioners–Plaintiffs*, <br><br> J.G.G., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> *Respondents–Defendants*. | Case No: 1:25-cv-00766-JEB |

**PETITIONERS-PLAINTIFFS' AND PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1

# INTRODUCTION

A class action is appropriate for this challenge to Respondents–Defendants' ("Respondents") invocation of the Alien Enemies Act of 1798 ("AEA"). The President has invoked a war power, the AEA, and has summarily removed noncitizens from the United States and bypassed the immigration laws that Congress has enacted. That invocation is patently unlawful: It violates the statutory terms of the AEA; unlawfully bypasses the INA; and infringes on noncitizens' constitutional right to Due Process under the Fifth Amendment.

The Court had provisionally certified a class of "All noncitizens in U.S. custody who are subject to the March 15, 2025, Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua' and its implementation." Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), Petitioners–Plaintiffs ("Petitioners") and Plaintiffs seek to amend the existing provisionally certified class and certify two new subclasses:

> **CLASS**: All noncitizens who were, are, or will be subject to the March 2025 Presidential Proclamation entitled "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua" and/or its implementation.
>
> **SUBCLASS 1 ("CECOT Subclass")**: All noncitizens in custody at the Terrorism Confinement Center ("CECOT") in El Salvador who were, are, or will be subject to the March 2025 Presidential Proclamation entitled "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua" and/or its implementation.
>
> **SUBCLASS 2 ("Criminal Custody Subclass")**: All noncitizens in criminal custody who were, are, or will be subject to the March 2025 Presidential Proclamation entitled "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua" and/or its implementation.

The proposed amended class and new subclasses readily satisfy the requirements of Rule 23.

Petitioners and Plaintiffs, together, seek to represent the class. Petitioner Frengel Reyes Mota, Andry Jose Hernandez Romero, J.A.B.V., M.A.O.R., G.A.A.A., and M.R.M. are currently

detained in CECOT and seek to represent the CECOT Subclass. Petitioner T.C.I. is currently detained in criminal custody and seeks to represent the Criminal Custody Subclass. Petitioners seek habeas, injunctive, and declaratory relief. *See* Am. Compl., Claims I –XIII.

Plaintiffs are the original Plaintiffs in *J.G.G. v. Trump*: J.G.G., G.F.F., J.G.O, W.G.H., and J.A.V. Because Plaintiffs have filed habeas actions in their districts of confinement and do not seek relief in this Court through the writ of habeas corpus, they continue to be designated as "Plaintiffs," not "Petitioners." Among other things, Plaintiffs continue to seek—as a matter of due process—meaningful notice of the government's intent to remove them. *See J.G.G. v. Trump*, No. 24A931, 2025 WL 1024097, at *2 (U.S. Apr. 7, 2025) (per curiam) (due process requires government to provide detainees notice that they are subject to removal "within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue"); *see* Am. Compl., Claim VIII. Because this claim is a precondition to the effective exercise of habeas rights, it lies outside of habeas. In addition, Plaintiffs continue to advance their original claims in equity and under the Administrative Procedure Act. *See id.*, Claims I –VIII.[1]

The proposed class seeks injunctive and declaratory relief for Claims I–VIII in the Amended Complaint. Both the proposed CECOT Subclass and the Criminal Custody Subclass seek habeas, injunctive, and declaratory relief for Claims I–XIII.

The proposed class and subclasses satisfy Rule 23. Numerosity is present, as demonstrated by the number of people that the government has threatened to or has already removed subject to the AEA Proclamation. *See* Cerna Decl. ¶ 6, ECF No. 28-1 (identifying a total of 258 people in

---

[1] Although the Supreme Court held (in an emergency posture) that Plaintiffs' claims challenging their removal under the AEA must be brought in habeas, *J.G.G.*, 2025 WL 1024097, at *1, Plaintiffs seek to preserve their ability to fully and properly litigate this issue in any future appeal.

the United States who the government believes are TdA members). Additionally, people who were, are, or will be designated as subject to the AEA Proclamation are detained and confined at CECOT or are in criminal custody. *See* Cerna Decl. ¶ 6 (describing two planes of people who were subject to AEA removal on March 15 and 32 people in criminal custody over a month ago).

All class and subclass members are suffering or will suffer the same injury: unlawful removal under the AEA, unlawful denial of their statutory rights to the removal and detention procedures contained in the INA, and violation of their right to due process. And the class and subclasses raise common questions that will generate common answers, including whether the Proclamation and its implementation violate the AEA, the INA, and the statutory protections for asylum seekers. The Petitioners' and Plaintiffs' legal claims are typical of those whom they seek to represent. Petitioners and Plaintiffs are represented by experienced counsel with significant experience litigating class actions and cases involving the rights of noncitizens. And the proposed class and subclasses satisfy Rule 23(b)(2) because Respondents have acted or refused to act on grounds that apply generally to the class and subclasses by summarily removing noncitizens without statutorily and constitutionally mandated safeguards. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). In addition, the class and subclasses are amenable to uniform group remedies, such as a writ of habeas corpus enjoining Respondents from removing the Criminal Custody Subclass—or ordering the return of the CECOT Subclass—pursuant to the Proclamation; a declaration that the Proclamation is unlawful; and an order requiring Respondents to provide meaningful notice and an opportunity to respond. *Id.*

The notices to certain individuals and lack of notice to other individuals and undersigned counsel reinforces why certification is necessary in this case. While the government has identified hundreds of individuals who could be removed or were already removed subject to the

Proclamation, it has refused to disclose the identity of such individuals. More people will likely be detained and subject to summary removal pursuant to the Proclamation. Proceeding with a class and subclasses would thus serve the purpose of Federal Rule of Civil Procedure 23. *See* William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:35 (6th ed.) (discussing "critical safeguards for class members that certification alone can provide").

The Court should certify the proposed Class and Subclasses under Rule 23(a) and 23(b)(2) or in equity, appoint Petitioners and Plaintiffs as Class Representatives, appoint Petitioners Frengel Reyes Mota, Andry Jose Hernandez Romero, J.A.B.V., M.A.O.R., G.A.A.A., and M.R.M. as CECOT Subclass Representatives (Subclass 1), appoint Petitioner T.C.I. as Criminal Custody Subclass Representative (Subclass 2), and appoint the undersigned as Class Counsel. Alternatively, the Court can use Rule 23 as a guidepost to certify a class and subclasses under principles of habeas jurisdiction and equity. Every circuit that has addressed the issue has found that a class habeas action may be maintained. *See, e.g., LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996); *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974); *Bijeol v. Benson*, 513 F.2d 965, 967 (7th Cir. 1975), *Williams v. Richardson*, 481 F.2d 358 (8th Cir. 1973); *Mead v. Parker*, 464 F.2d 1108, 1112 (9th Cir. 1972); *Napier v. Gertrude*, 542 F.2d 825, 827 & n.5 (10th Cir. 1976).

## BACKGROUND

### I. President Trump's Proclamation Invoking the AEA

The background of this litigation is set forth in greater detail in Petitioners' and Plaintiffs' simultaneously filed Amended Habeas Petition and Complaint and Motion for a TRO. On March 14, the President signed the AEA Proclamation at issue here. It provides that "all Venezuelan citizens 14 years of age or older who are members of TdA [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable

5

to be apprehended, restrained, secured, and removed as Alien Enemies." *See* Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua (Mar. 15, 2025).[2] Although the AEA calls for a "public proclamation," 50 U.S.C. § 21, the administration did not make the invocation public until around 3:53 p.m. EDT on March 15. *See J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *17 (D.C. Cir. Mar. 26, 2025); *J.G.G. v. Trump*, No. 25-cv-766-JEB, 2025 WL 890401, at *3 (D.D.C. Mar. 24, 2025).

Although the government has, as of mid-March 2025, identified 86 people in detention subject to the Proclamation and 172 more who are at liberty, counsel for Petitioners are, by chance, aware of the identity and location of only a handful of individuals in the United States who have been designated under the Proclamation. Counsel know of these individuals only because they have immigration counsel who were able to follow their clients' complicated transfers and contact undersigned counsel. Counsel also happen to be aware of the identity of several other individuals who were nearly removed from the Bluebonnet Detention Center in northern Texas on April 18, 2025, by virtue of concerned family members and immigration counsel who managed to speak with those detainees. The other known individuals designated under the Proclamation have already been disappeared into the infamous Salvadoran prison, CECOT, and their families and legal counsel have not heard from them since. Thus, many individuals are at imminent risk of summary removal and face the same irreparable, devastating outcome as those removed on March 15, with the Court potentially permanently losing jurisdiction.

## II.     Named Petitioners and the Proposed Class and Subclasses

Petitioners and Plaintiffs are noncitizens from Venezuela whom the government accused of affiliation with Tren de Aragua. Some are detained at CECOT, while others remain in criminal

---

[2] Available at: https://perma.cc/ZS8M-ZQHJ.

custody in various jurisdictions across the country. *See generally* Am. Compl. Petitioners are representative of other noncitizens subject to the Proclamation under the Alien Enemies Act because they have been accused of affiliation with Tren de Aragua and either have been removed to CECOT or are in criminal detention in the United States. The proposed class and subclasses do not seek to enjoin the detention or removal of individuals who are being detained or removed pursuant to other authorities, such as the immigration laws.

## LEGAL STANDARD

A person whose suit satisfies the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The "suit must satisfy the criteria set forth in [Rule 23(a)] (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id.*

Petitioners and Plaintiffs must also demonstrate that respondents "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required under Rule 23(b)(2). "[A] single injunction or declaratory judgment would provide relief to each member of the class," and therefore certification is appropriate under Rule 23(b)(2). *See Wal-Mart Stores*, 564 U.S.at 360. Petitioners' proposed classes satisfy the requirements of both Rule 23(a) and Rule 23(b)(2).

## ARGUMENT

**I.    The Proposed Class and Subclasses Satisfy the Requirements of Rule 23(a).**

    **A.    The Proposed Class and Subclasses Are So Numerous that Joinder Is Impracticable.**

The proposed class and subclasses are sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). "Joinder does not have to be impossible—instead, [the] plaintiff must

show 'only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate.'" *N.S. v. Hughes*, 335 F.R.D. 337, 352 (D.D.C. May 7, 2020) (quoting *D.L. v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013)), *reconsideration denied*, 2020 WL 4260739 (D.D.C. July 24, 2020). Although "[t]here is no specific threshold that must be surpassed," courts in this District "have observed that a class of at least forty members is sufficiently large to meet this requirement." *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007) (quotation omitted). Moreover, "classes including future claimants generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them." *J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (quotation omitted). "This is especially true when plaintiff seeks injunctive relief." *N.S.*, 335 F.R.D. at 352. And the numerosity requirement also takes into account "non-numerical considerations" that affect the ability of petitioners to bring individual suits. *J.D.*, 925 F.3d at 1323.

The proposed class and subclasses easily satisfy the numerosity requirement. Besides the five originally named petitioners who were nearly removed on March 15, 2025, the government removed at least 137 individuals to the CECOT prison on March 15 under the AEA who form Subclass 1. *See* Oscar Sarabia Roman Decl. Exh. 7, ECF No. 44-15 (putting number at 137). After those removals, on March 18, 2025—well over a month ago—the government identified 54 members of TdA in detention, 32 in criminal custody, and 172 on its nondetained docket. *See* Cerna Decl. ¶ 6, ECF No. 28-1 (identifying a total of 258 people in the United States who the government believes are TdA members). Those in this group who have been, are, or will be in criminal custody form Subclass 2. Based on those numbers alone, Petitioners and Plaintiffs clear the bar, but there are likely to be more individuals entering the subclasses as the government is intent on identifying more TdA members subject to removal. *See J.D.*, 925 F.3d at 1323 (stating

8

that joinder may be impracticable in light of "fluidity" of classes "and their limited resources"); *see also, e.g.*, *O.A. v. Trump*, 404 F. Supp. 3d 109, 155 (D.D.C. 2019); *P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 509 (D.D.C. 2020); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 181 (D.D.C. 2015); *see also Kidd v. Mayorkas*, 343 F.R.D. 428, 437 (C.D. Cal. 2023) ("where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied").

Joinder is also impracticable because class and subclass members are detained and the vast majority are unrepresented by counsel. Many in the proposed class and subclasses are pro se, indigent, have limited English proficiency, and/or have a limited understanding of the U.S. judicial system. And due to their imprisonment and isolation from the world, including their existing and potential counsel Subclass 1 members who are at CECOT cannot practically bring their own challenges. *See Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 45 (D.D.C. 2018) (finding "joinder impracticable" for class of noncitizens due to "lack of geographic proximity of the proposed members and the inherently transitory nature of the class").

### B. The Class and Subclasses Present Common Questions of Law and Fact.

The claims asserted by the proposed class and subclasses include common questions of law and fact that satisfy Rule 23(a)(2). At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 349-50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). To satisfy the commonality requirement under Rule 23(a)(2), raising "[e]ven one single common question will do." *Thorpe v. Dist. of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014). Even a single common question of law or fact is sufficient, so long as the resolution of the common question "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *Ramirez*, 338 F.

Supp. 3d at 45 (citing *Wal-Mart Stores*, 564 U.S. at 350). "[W]here plaintiffs allege widespread wrongdoing by a defendant . . . a uniform policy or practice that affects all class members" satisfies that requirement. *Thorpe*, 303 F.R.D. at 145; *accord R.I.L-R*, 80 F. Supp. 3d at 181.

Petitioners and Plaintiffs in this case have identified a "single course of conduct"—the unlawful removal of noncitizens under the Proclamation—that provides the basis for every class and subclass member's injury. *Ramirez*, 338 F. Supp. at 46; *see also O.A.*, 404 F. Supp. 3d at 156; *accord P.J.E.S.*, 502 F. Supp. 3d at 509 (Title 42 expulsion policy was "a uniform policy or practice that affects all class members"). In addition to this common injury, numerous questions are common to the proposed class: whether the removals are beyond the power granted to the President under the AEA; whether the removals violate statutory and regulatory removal procedures; and whether Respondents' denial of meaningful procedural protections to challenge Plaintiffs' and Petitioners' removal violates the AEA and the Fifth Amendment. Additionally, subclass members share the common legal and factual questions regarding the conditions at CECOT and whether Petitioners' ongoing or imminent detention there violates the Fifth, Sixth, and Eighth Amendments. Any one of these common issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. *See Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 118 (D.D.C. 2017) (even a single common issue will do); *Coleman*, 306 F.R.D. at 82 (same); *Thorpe*, 303 F.R.D. at 145 (same). And given these common questions, "'factual variations among the class members will not defeat the commonality requirement.'" *Damus*, 313 F. Supp. 3d at 332 (quoting *Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012)).

Answering any one of these common legal questions will "drive the resolution of the litigation." *Ramirez*, 338 F. Supp. 3d at 45 (cleaned up) (quoting *Wal-Mart Stores*, 564 U.S. at 350). Should the Court agree that Respondents cannot lawfully remove noncitizens under the

Proclamation because there is, for instance, no "invasion or predatory incursion" by a "foreign government or nation," all class and subclass members will benefit from the requested relief, which includes a declaration to that effect and an injunction requiring Respondents not to remove individuals or to return removed individuals from CECOT. Should the government's use of the AEA be upheld by this Court and on appeal, then at that point individual habeas actions may be needed to address whether any given person is, on the particular facts, a TdA member who fell with the Proclamation. But at this stage, a class action is the appropriate means of addressing the threshold systemic issues that affect all of the class and subclass members.

### C.  Petitioners' and Plaintiffs' Claims Are Typical of Class And Subclass Members' Claims.

Petitioners and Plaintiffs here have claims typical of the proposed class and subclasses. *See* Fed. R. Civ. P. 23(a)(3). "The typicality requirement is concerned with whether 'the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate.'" *Coleman*, 306 F.R.D. at 83 (quoting *Wal-Mart Stores*, 564 U.S. at 349). "While commonality requires a showing that the members of the class suffered an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct." *Bynum v. District of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003) (emphasis in original).

Typicality is satisfied here for largely the same reasons that commonality is satisfied. *Wal-Mart Stores*, 564 U.S. at 349 n.5 ("The commonality and typicality requirements of Rule 23(a) tend to merge" (quoting *Falcon*, 457 U.S. at 157 n. 13); *Ramirez*, 338 F. Supp. 3d at 46; *R.I.L.-R.*, 80 F. Supp. 3d at 181-82; *O.A.*, 404 F. Supp. 3d at 15556. Each proposed class and sublcass member, including the proposed class representatives, faces the same principal injury (unlawful removal), based on the same government policy (invocation of the AEA through the Proclamation),

which is unlawful as to the entire class and subclasses because it violates the AEA itself, as well as the immigration laws and the Constitution. Petitioners and Plaintiffs thus share an identical interest in invalidation of Respondents' implementation of removals under the Proclamation. Petitioners also share an identical interest with the members of both subclasses in challenging their post-removal detention and conditions of confinement at CECOT. Moreover, as with commonality, any factual differences that might exist here between Petitioners and Plaintiffs and proposed class and subclass members are not enough to defeat typicality.

### D. Petitioners, Plaintiffs, and Their Counsel Will Adequately Protect the Interests of the Proposed Class.

Petitioners, Plaintiffs, and undersigned counsel also fulfill the final requirement that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation imposes two criteria on plaintiffs seeking to represent a class: '(1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Ramirez*, 338 F. Supp. 3d at 47 (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

Petitioners and Plaintiffs here will fairly and adequately protect the interests of the proposed class and subclasses. There are no differences that create conflicts between the interests of the Petitioners and Plaintiffs, on the one hand, and the interests of the class and subclass members on the other. Petitioners and Plaintiffs do not seek any unique or additional benefit from this litigation that may make their interests different from or adverse to those of absent class and subclass members. Instead, Petitioners and Plaintiffs aim to secure relief that will protect them and the entire class and subclasses from Respondents' challenged policy and to require Respondents to facilitate their return for Subclass 1. Petitioners and Plaintiffs have no incentive to deviate from

12

this class and subclass relief. Nor do Petitioners and Plaintiffs seek financial gain at the cost of absent class members' rights.

In addition, proposed class and subclass counsel includes experienced attorneys with extensive experience in complex immigration cases and class action litigation. *See* Galindo Decl. ¶¶ 1-9. As the declaration makes clear, Proposed Class Counsel have been appointed class counsel in several successful class action cases concerning the rights of noncitizens and others. *See, e.g., id.* ¶¶ 4, 7.[3]

## II. The Proposed Class Satisfies Rule 23(b)'s Requirements.

Certification of a class or subclass under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The D.C. Circuit has explained that a "principal purpose of Rule 23(b)(2) . . . is to enable class resolution of civil-rights claims alleging classwide deprivations of protected rights." *J.D.*, 925 F.3d at 1314. "'The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Id.* at 1314-15 (quoting *Wal-Mart*, 564 U.S. at 360).

---

[3] "It is 'far from clear' . . . 'that there exists in this district a requirement that a class certified under Rule 23(b)(2) must demonstrate ascertainability to merit certification.'" *O.A.*, 404 F. Supp. 3d at 159 (quoting *Garcia Ramirez v. ICE*, 338 F. Supp. 3d 1, 48 (D.D.C. 2018)). Moreover, any such requirement has been "'disavowed by four federal appellate courts.'" *Id.* (quoting *Hoyte v. D.C.*, 325 F.R.D. 485, 489 n.3 (D.D.C. 2017)). Even assuming such a requirement exists, the proposed class here is readily ascertainable because membership in the class is defined by clear and objective criteria that are known to Respondents and because identifying class members is administratively feasible.

Rule 23(b)(2) is satisfied here because Respondents have acted on grounds that apply generally to the class and subclasses by subjecting them all to the same Proclamation and threatening to or in fact summarily removing them without complying with the AEA, INA and due process. *See R.I.L-R*, 80 F. Supp. 3d at 182 ("[T]he suit challenges a policy 'generally applicable' to all class members."). Petitioners seek injunctive and declaratory relief that would benefit them as well and "would resolve all class members' claims 'in one stroke.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 350); *see, e.g., J.D.*, 925 F.3d at 1315; *Nio*, 323 F.R.D. at 34-35. "The relief Plaintiffs seek" is thus both "'generally applicable to the class'" and subclasses and "indivisible," and certification under Rule 23(b)(2) is proper. *O.A.*, 404 F. Supp. 3d at 157; *accord, e.g., Huisha-Huisha*, 560 F. Supp. at 166 (Rule 23(b)(2) satisfied because the class seeks relief that "is generally applicable to the class and is indivisible") (cleaned up).

The class and subclasses are exactly the kind of classes that Rule 23(b)(2) is meant to embrace. The class's and subclasses' interests are sufficiently related to warrant aggregate litigation. This is especially the case because members of the proposed class and subclasses are indigent; their detention also means that they cannot bring their own individual suits; and for Subclass 1, they are in El Salvador, out of reach to immigration counsel. It is far more efficient for this Court to grant injunctive and declaratory relief protecting all the class and subclass members than to force individuals to pursue piecemeal litigation, especially as the government has already announced its plans to swiftly remove more people under the Proclamation.

**III.     Alternatively, a Class Can Also Be Certified Under Habeas Equity Principles.**

A habeas class and subclass may be maintained either under Rule 23 or in equity informed by Rule 23 principles. *See, e.g., LoBue*, 82 F.3d at 1085 ("If . . . he meant to claim that there is no equivalent to class actions in habeas, he was wrong, for courts have in fact developed such

14

equivalents."); *Streicher v. Prescott*, 103 F.E.D. 559, 561 (D.D.C. 1984) ("although the precise requirements of Fed. R. Civ. P. 23 do not apply to habeas corpus proceedings, analogous procedures have been utilized in habeas actions"); *Sero*, 506 F.2d at 1125 (the Supreme Court "confirms the power of the judiciary, under the All Writs Act, . . . to fashion for habeas actions 'appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage'" (citing *Harris v. Nelson*, 394 U.S. 286 (1960)); *Bijeol*, 513 F.2d at 968 (agreeing with *Sero* that "a representative procedure analogous to the class action provided for in Rule 23 may be appropriate in a habeas corpus action" like the one at issue); *Williams*, 481 F.2d at 361 ("under certain circumstances a class action provides an appropriate procedure to resolve the claims of a group of petitioners and avoid unnecessary duplication of judicial efforts"); *Mead*, 464 F.2d at 1112–13 ( "there can be cases, and this is one of them, where the relief sought can be of immediate benefit to a large and amorphous group. In such cases, it has been held that a class action may be appropriate"); *Napier*, 542 F.2d at 827 & n.5 (recognizing "class treatment" with "reference to Rule 23 in proper circumstances"); *see also Hamama v. Adducci*, 912 F.3d 869, 879 (6th Cir. 2018) (noting that classwide habeas still available notwithstanding INA provision barring classwide injunctive relief). Additionally, the Supreme Court has ruled on the merits in class habeas cases. *See, e.g., Johnson v. Guzman Chavez*, 594 U.S. 523, 532 (2021); *Nielsen v. Preap*, 586 U.S. 392, 400 (2019); *Jennings v. Rodriguez*, 583 U.S. 281, 290 (2018).

## CONCLUSION

The Court should certify the proposed amended Class and new Subclasses under Rule 23(a) and 23(b)(2) or in equity, appoint Petitioners and Plaintiffs as Class Representatives, appoint Petitioners Frengel Reyes Mota, Andry Jose Hernandez Romero, J.A.B.V., M.A.O.R., G.A.A.A., and M.R.M. as CECOT Subclass Representatives (Subclass 1), appoint Petitioner

T.C.I. as Criminal Custody Subclass Representative (Subclass 2), and appoint the undersigned as Class Counsel.

Dated: April 24, 2025

Respectfully submitted,

Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo
Evelyn Danforth-Scott
Cody Wofsy
Cecillia D. Wang (D.D.C. Bar No. CA00042)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
nsmith@aclu.org
osarabia@aclu.org
mngo@aclu.org
edanforth-scott@aclu.org
cwang@aclu.org
cwofsy@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Aditi Shah (D.C. Bar No. 90033136)*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org
ashah@acludc.org


*Admission to DDC Bar pending

/s/ Lee Gelernt
Lee Gelernt (D.D.C. Bar No. NY0408)
Daniel Galindo (D.D.C. Bar No. NY035)
Ashley Gorski
Patrick Toomey
Sidra Mahfooz
Omar Jadwat
Hina Shamsi (D.D.C. Bar No. MI0071)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org
ptoomey@aclu.org
smahfooz@aclu.org
ojadwat@aclu.org
hshamsi@aclu.org

Somil B. Trivedi (D.C. Bar No. 1617967)
Bradley Girard (D.C. Bar No. 1033743)
Michael Waldman (D.C. Bar No. 414646)
Sarah Rich
Skye Perryman (D.C. Bar No. 984573)
Audrey Wiggins (DC Bar No. 482877)
Christine L. Coogle (DC Bar No. 1738913)
Pooja Boisture
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
strivedi@democracyforward.org
bgirard@democracyforward.org
mwaldman@democracyforward.org
srich@democracyforward.org
sperryman@democracyforward.org

awiggins@democracyforward.org  
ccoogle@democracyforward.org  
pboisture@democracyforward.org

*Attorneys for Petitioners-Plaintiffs*