## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LIYANARA SANCHEZ, as next friend on behalf of
FRENGEL REYES MOTA, *et al.*,

*Petitioners–Plaintiffs*,

J.G.G., *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,

*Respondents–Defendants*.

Case No: 1:25-cv-00766-JEB

## PETITIONERS-PLAINTIFFS' SUPPLEMENTAL MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS[1]

Petitioners-Plaintiffs and Next Friends M.Z.V.V., J.A.B.V., M.Y.O.R., M.A.O.R., M.M.A.A., G.A.A.A., M.R.M., and T.C.I. move for permission to proceed under pseudonyms in the above-captioned case. The named Petitioners and Next Friends are challenging the Presidential Proclamation entitled the "Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua" and its implementation. They do so in a time of extreme anti-immigrant rhetoric and hostility.  The individuals seeking to proceed under pseudonym here fall into three categories: (1) next friends, suing on behalf of their family members detained at the Centro del Confinamiento del Terrorismo ("CECOT") in El Salvador;

---

[1] Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel conferred with the government. The government takes no position on this motion.

(2) Petitioners detained at CECOT; and (3) a Petitioner detained in criminal custody in the United States.

This Court previously permitted the original named Plaintiffs—J.G.G., G.F.F., J.G.O., W.G.H., and J.A.V.—to proceed under pseudonyms. March 15, 2025, Minute Order (Plaintiffs "shall be permitted to proceed pseudonymously"). Other courts to consider similar motions in other AEA cases have also granted them. *See, e.g.* Order Granting Petitioners' Motion for Leave to Proceed Under Pseudonyms, *G.F.F. v. Trump*, No. 1:25-cv-2886 (S.D.N.Y. Apr. 8, 2025), ECF No. 10; Order, *D.B.U. v. Trump*. No. 1:25-cv-1163 (D. Colo. Apr. 14, 2025), ECF No. 11; Order of Court, *A.S.R. v. Trump*, No. 3:25-cv-115 (W.D. Pa. Apr. 15, 2025), ECF No. 9; Order, *W.M.M. v. Trump*, No. 1:25-cv-59 (N.D. Tex. Apr. 16, 2025), ECF No. 9; April 24, 2025 Minute Order, *J.A.V. v. Trump*, No. 1:25-cv-72 (S.D. Tex. Apr. 24, 2025). Petitioners ask this Court to grant anonymity to the new Petitioners and Next Friends because the amended complaint, declarations, and subsequent filings will contain highly sensitive and personal information about their immigration status and history. Moreover, individuals detained at CECOT face retributive violence should it come to light that they are challenging their confinement there. Respondents will not be prejudiced in their ability to litigate the legality of the Proclamation, and the public's interest in knowing the identities of the Petitioners and Next Friends is minimal.  Petitioners and Next Friends are willing to provide the Court with their names.  Thus, this Court should protect the Petitioners' and Next Friends' safety and liberty interests and grant the Motion.

## I.    The Use of Pseudonyms Is Justified Here.

While the general rule is that complaints state the names of the parties, *see* Fed. R. Civ. P. 10(1), this Court has the discretion to allow a plaintiff to proceed anonymously. *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995). Courts may permit the use of

pseudonyms when "the impact of the plaintiff's anonymity" outweighs "the public interest in open proceedings and on fairness to the defendant." *Chao*, 587 F. Supp. 2d at 99; *see also Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005). At the time of filing, Petitioners need only make a "colorable argument in support of the request." *Qualls*, 228 F.R.D. at 10. Courts examine: (1) whether Petitioners' request is intended "to preserve privacy in a matter of a sensitive and highly personal nature"; (2) whether the petitioner has a reasonable expectation of "physical or mental harm"; (3) whether the petitioner is a minor; (4) whether the defendant is the government; and (5) the type of prejudice the defendant might experience if the petitioner proceeds anonymously. *Chao*, 587 F. Supp. 2d at 99; *see also United States v. Hubbard*, 650 F.2d 293, 317–21 (D.C. Cir. 1980) (setting forth a balancing test that considers, inter alia, "the strength of the . . . property and privacy interests" involved with the "possibility of prejudice" to those opposing disclosure). Courts in this District have exercised broad discretion to "allow plaintiffs to proceed under a pseudonym in cases involving matters of a sensitive and highly personal nature." *Doe v. Cabrera*, 307 F.R.D. 1, 4 (D.D.C. 2014) (citing *Chao*, 587 F. Supp. 2d at 99); *see also Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 152–53 (D.D.C. 2011); *Doe v. Von Eschenbach*, No. 06–2131, 2007 WL 1848013, at *2 (D.D.C. June 27, 2007).

Here, Petitioners' claims are sensitive and highly personal. Many Petitioners and Next Friends are asylum seekers who face significant risk of persecution—including possible physical harm or death—if their identities are publicly revealed through this lawsuit. Moreover, many Petitioners are currently detained at CECOT, where they face persecution and torture from their captors for their involvement in this lawsuit. Finally, individuals who are publicly alleged by the U.S. government to be Tren de Aragua members face a real risk of serious harm if they are returned to Venezuela based on these unsubstantiated allegations. Similarly, Next Friends—who

currently live in Venezuela—also face serious harm by virtue of being family members of Petitioners alleged to be affiliated with Tren de Aragua. Moreover, each of the Respondents is a government agency or official sued in an official capacity, and Respondents will experience no prejudice from allowing Petitioners and Next Friends to proceed pseudonymously. In light of the extreme sensitivities of Petitioners' and Next Friends' case and the potential danger posed to Petitioners and their families, the public interest does not require the use of their full names. In short, the relevant factors in this case weigh heavily in favor of allowing Petitioners and Next Friends to proceed under pseudonyms. *See Chao*, 587 F. Supp. 2d at 99.

> **A. Petitioners' Claims Are Sensitive and Highly Personal, and Public Disclosure Could Result in Physical or Mental Harm to Petitioners, Next Friends, and Their Families.**

Petitioners and Next Friends seek to proceed under pseudonyms to protect their privacy and safety, as well as the safety of family members who remain in their countries of origin. While the public typically has an interest in "knowing the facts surrounding judicial proceedings," this case is one in which anonymity is necessary "to preserve privacy in a matter of a sensitive and highly personal nature" and to protect Petitioners and Next Friends from possible future harm. *Doe v. Von Eschenbach*, 2007 WL 1848013, at *1–2 (D.D.C. June 27, 2007).

Both Petitioners and Next Friends have highly sensitive and personal reasons for remaining under pseudonym:

Petitioners (J.A.B.V., M.A.O.R., G.A.A.A., M.R.M., T.C.I.): Petitioners have several independent reasons to proceed pseudonymously.

*First*, the amended complaint contains sensitive, personal information, including details of their asylum claims. For example, J.A.B.V. fled Venezuela after he campaigned for the opposition leader, and was subsequently abducted by masked men, beaten, and told he would be

killed if he campaigned again. Similarly, G.A.A.A. fled Venezuela and sought asylum in the United States due to violence in his hometown at the hand of a paramilitary group. Given these dangers, Petitioners face further risk of harm if their identities were disclosed publicly. They fled their countries of origin because they were persecuted and/or feared persecution if they remained. As asylum seekers fleeing danger, they fall within a particularly vulnerable class of migrants for whom confidentiality about the nature and existence of their claims is particularly important, as their "identification [could] create[] a risk of retaliatory physical or mental harm." *Qualls*, 228 F.R.D. at 10-11 (internal quotation marks and citation omitted); *see also* U.N. High Comm'r for Refugees, Advisory Opinion on the Rules of Confidentiality Regarding Asylum Information ("UNHCR Advisory Opinion") (Mar. 31, 2005) at 2-3[2] ("[P]rivacy and its confidentiality requirements are especially important for an asylum-seeker, whose claim inherently supposes a fear of persecution by the authorities of the country of origin and whose situation can be jeopardized if protection of information is not ensured."). Indeed, if Petitioners' persecutors learned of their asylum claims, this lawsuit, or the circumstances of Petitioners' immigration to the United States, it could leave them in significant danger.

Petitioners also face further harm if the U.S. government publicly identifies them as Tren de Aragua members, without evidence, as part of this lawsuit. This harm is irreparable: once these allegations about Petitioners are made public, they "could not be made secret again." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317 (1983) (Blackmun, J., denying application for stay); *Senior Executives Ass'n v. United States*, 891 F. Supp. 2d 745, 755 (D. Md. 2012) (recognizing that disclosure of information "is a bell that one cannot unring").

The federal immigration regulations reflect this concern for the sensitivity of asylum

---

[2] *Available at* http://www.refworld.org/docid/42b9190e4.html.

applications and the attendant need for confidentiality. Asylum regulations provide for the confidentiality of asylum applicants and credible fear interviewees, including the fact that an applicant has applied for asylum or received a credible fear interview. *See* 8 C.F.R. §§ 208.6, 1208.6. The Department of Homeland Security has acknowledged the importance of these regulations to the future safety of asylum applicants. *See Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008) ("As DHS recognizes, the confidentiality regulations are of utmost importance in protecting asylum applicants because the 'regulations safeguard information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin.'") (quoting U.S. Citizenship & Immig. Serv. Asylum Div., U.S. Dep't of Homeland Sec., *Fact Sheet: Fed. Regulations Protecting the Confidentiality of Asylum Applicants* (2005)). For the same reasons, when the Board of Immigration Appeals issues published asylum-related decisions, it routinely uses only the initials of the applicant. *See, e.g.*, *Matter of M-H-Z-*, 26 I. & N. Dec. 757 (B.I.A. 2016).

In recognition of the powerful interest that asylum seekers possess in maintaining their confidentiality, numerous courts have allowed them to proceed with pseudonyms or initials. *See, e.g.*, *M.A. v. Mayorkas*, No. CV 23-1843, 2023 WL 5321924 (D.D.C. July 6, 2023); *Las Americas Immigrant Advocacy Center v. DHS*, No. 24-CV-1702, Dkt. 60 (D.D.C. Nov. 18, 2024); *Nora v. Wolf*, No. 1:20-CV-00993, 2020 WL 12956896, at *2 (D.D.C. Apr. 16, 2020); *O.A. v. Trump*, No. 18-cv-2718, 2019 WL 3536334 (D.D.C. Aug. 2, 2019), ECF No. 3; *N.L.A. v. Holder*, 744 F.3d 425, 428 n.1 (7th Cir. 2014); *Doe v. Holder*, 736 F.3d 871, 872 n.1 (9th Cir. 2013); *Doe v. Holder*, 651 F.3d 824, 826 (8th Cir. 2011); *Al Otro Lado, Inc. v. Nielsen*, 2017 WL 6541446, at *8 (S.D. Cal. Dec. 20, 2017); *M.M.M. v. Sessions*, No. 18-1759-BAH (D.D.C. July

27, 2018), ECF No. 2; *M.G.U. v. DHS*, No. 18-cv-1458-BAH (D.D.C. June 21, 2018); *Ms. L. v. ICE*, No. 18-428 (S.D. Cal. Mar. 6, 2018), ECF No. 26.

*Second*, Petitioners detained at CECOT have legitimate reason to fear that, should their information become public, and should it come to light that they are challenging their detention, they would likely become victims of retributive violence at CECOT. Retributive violence is a regular occurrence at CECOT, *see* Bishop Decl. ¶¶ 2, 210, ECF No. 102-5, and such a high-profile challenge to their detention would almost certainly incur consequences for Petitioners. Being named in a public CBS list does not alter the analysis, as the government of El Salvador has no way of knowing which specific individuals who wish to remain anonymous are challenging their detention there, and the general nature of the list does not link any particular anonymous Petitioner to a known person detained at CECOT.

*Third*, Petitioner, who is in federal criminal custody, also has legitimate reason to fear that public disclosure of his name could expose him or his family to retaliation, or subject him to retributive treatment while in detention. Detention staff have already pressured him to sign a paper falsely asserting that he was a member of Tren de Aragua. He fears being falsely labeled as a member of Tren de Aragua would increase the risk of target mistreatment while in U.S. custody, and, if removed to Venezuela, would place him at serious risk of harm. *See* Hanson Decl. ¶ 28, ECF No. 102-2. He also fears removal to CECOT, where individuals accused of being affiliated with Tren de Aragua have been subjected to abusive and inhumane conditions.

Next Friends (M.Z.V.V., M.Y.O.R., M.M.A.A.): Next Friends also have legitimate reasons to proceed pseudonymously. Next Friends—all of whom reside in Venezuela—face serious risk of harm if their identities are disclosed, simply because they are close family members of individuals falsely alleged to be members of Tren de Aragua. Given the gang's

notoriety and the Venezuelan government's harsh treatment of those even suspected of association with the gang, disclosing Next Friends' identities could subject them to surveillance, harassment, and physical harm. *See* Hanson Decl. ¶ 28, ECF No. 102-2. Indeed, courts in this District have routinely permitted next friends to proceed under pseudonyms. *See McCutchen v. Becerra*, No. 1:21-CV-01112, 2021 WL 1718806, at *4 (D.D.C. Apr. 23, 2021) (permitting plaintiffs and their next friends to proceed under pseudonym); *M.J. v. D.C.*, No. 1:18-CV-01901, 2018 WL 11491159, at *4 (D.D.C. Aug. 14, 2018) (same); *Asylumworks v. Wolf*, No. NO. 1:20-CV-03815, 2020 WL 13460835, at *4 (D.D.C. Dec. 23, 2020) (granting next friend's motion to proceed under pseudonym).

### B. Respondents Are Government Officials Who Will Not Be Prejudiced, and The Public Interest Will Be Served

Allowing Petitioners and Next Friends to proceed pseudonymously is especially appropriate where, as here, Respondents are government officials sued in their official capacity. *See, e.g.*, *Chao*, 587 F. Supp. 2d at 99 n.9 ("[W]hen a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." (citing *Yacovelli v. Moeser*, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004))).

Moreover, Respondents will suffer no prejudice should Petitioners and Next Friends be allowed to proceed under pseudonym. Because Respondents will know Petitioners' and Next Friends' true identities, allowing them to proceed pseudonymously would pose no "risk of unfairness to the opposing party." *Chao*, 587 F. Supp. 2d at 99; *see also Al Otro Lado*, 2017 WL 6541446, at *6 (finding no prejudice to government defendants who "know the Individual Plaintiffs' names" and "have the information they need to defend against the claims"). Additionally, any public interest in disclosing Petitioners' and Next Friends' identities is greatly

outweighed by the significant risk of harm that such disclosure would pose to them. Finally,

forcing Petitioners and Next Friends to expose their identities, including to their persecutors, to

pursue litigation "creates an unnecessary risk of chilling the willingness of asylum seekers from

litigating important issues like the ones raised in this case." *Al Otro Lado*, 2017 WL 6541446, at

*7. Thus, permitting Petitioners and Next Friends to use pseudonyms "will serve the public's

interest in this lawsuit by enabling it to go forward." *Does I thru XXIII v. Advanced Textile

Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000).

## CONCLUSION

For the foregoing reasons, Petitioners and Next Friends should be permitted to proceed in

this suit under their proposed pseudonyms.

Dated: May 6, 2025

Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo (D.D.C. Bar No. CA00219)
Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
nsmith@aclu.org
osarabia@aclu.org
mngo@aclu.org
edanforth-scott@aclu.org
cwang@aclu.org
cwofsy@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Aditi Shah (D.C. Bar No. 90033136)*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA

Respectfully submitted,

/s/ *Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
Daniel Galindo (D.D.C. Bar No. NY035)
Ashley Gorski
Patrick Toomey
Sidra Mahfooz
Omar Jadwat
Hina Shamsi (D.D.C. Bar No. MI0071)
Michael K.T. Tan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org
ptoomey@aclu.org
smahfooz@aclu.org
ojadwat@aclu.org
hshamsi@aclu.org
m.tan@aclu.org

529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org
ashah@acludc.org


*Attorneys for Petitioners-Plaintiffs*
*\*Admission to DDC Bar pending*

Somil B. Trivedi (D.C. Bar No. 1617967)
Bradley Girard (D.C. Bar No. 1033743)
Michael Waldman (D.C. Bar No. 414646)
Sarah Rich
Skye Perryman (D.C. Bar No. 984573)
Audrey Wiggins (DC Bar No. 482877)
Christine L. Coogle (DC Bar No. 1738913)
Pooja Boisture
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
strivedi@democracyforward.org
bgirard@democracyforward.org
mwaldman@democracyforward.org
srich@democracyforward.org
sperryman@democracyforward.org
awiggins@democracyforward.org
ccoogle@democracyforward.org
pboisture@democracyforward.org