# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

J.G.G. et al.,

       *Plaintiffs*;

LIYANARA SANCHEZ, as next friend
on behalf of FRENGEL REYES MOTA,
et al.,

       *Petitioners–Plaintiffs*,

    v.

DONALD J. TRUMP, in his official
capacity as President of the United
States, et al.,

       *Respondents–Defendants*.

Case No. 1:25-cv-00766-JEB

**RESPONDENTS–DEFENDANTS'
OPPOSITION TO PLAINTIFFS'
AND PETITIONERS–
PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

# Table of Contents

Background ................................................................................................ 2

Legal Standard ......................................................................................... 5

Argument .................................................................................................. 6

    I.     This Court Lacks Jurisdiction to Certify a Class. ................................ 6

          A.     Petitioners cannot seek habeas in this district. ........................ 6

          B.     This Court still lacks jurisdiction over the original Plaintiffs. ...................................................................................... 9

    II.    In Any Case, Plaintiffs-Petitioners Fail to Satisfy the Requirements to Certify a Class. .......................................................... 14

          A.     The putative class and subclasses do not satisfy commonality, typicality, or Rule 23(b)(2). .................................. 14

          B.     Ascertainability and Numerosity. ............................................... 19

    III.    Habeas Class Actions are Especially Improper Here. ......................... 22

          A.     The All Writs Act does not permit class actions outside of Rule 23. ....................................................................................... 22

          B.     Habeas is unfit for class adjudications. ...................................... 24

Conclusion ............................................................................................... 28

## Introduction

Even after the Supreme Court held that Plaintiffs' lack jurisdiction to bring their claims in this district, Plaintiffs persist in attempting to pursue their claims here.  Now they are joined by habeas Petitioners detained in El Salvador and throughout the nation.  Petitioners and Plaintiffs seek to certify several classes based on these groups.  But the Plaintiffs-Petitioners' plea for class wide relief lacks merit, and Petitioners have done nothing to cure the jurisdictional defects that caused the Supreme Court to vacate this Court's order in the first place.  So this Court should decline to certify a class here.

As explained elsewhere, none of the named Petitioners or class members are in custody in this district.  Since there is no constructive custody either, this Court does not have jurisdiction to hear the habeas petitions much less certify a class.  This is true of both those detained in El Salvador and those detained in various districts across the United States.  Similarly, the original named Plaintiffs try to maintain their original claims by framing them as claims about notice.  But that technical reframing does not vest this Court with jurisdiction, as Plaintiffs themselves impliedly admit by bringing the exact same claims in habeas petitions in the districts of their confinement.

Even if the Court has jurisdiction, however, none of the classes satisfy the strictures of Rule 23. All of the proposed classes are inundated with individual issues. And none of the representatives are typical of the putative class members, which vary in innumerable but important ways.  This is certainly true of the criminal custody

subclass, which can include everyone from individuals facing a misdemeanor to those in state custody on death row who will likely never be removed. The proposed classes also raise issues of ascertainability and numerosity, because they are premised on inherently fluid definitions dependent on the actions of others. For example, El Salvador can (and has) changed who is detained in CECOT. And for the criminal custody subclass, the federal government may not even know who is in state custody, why they are in custody, or for how long they are to be detained. Premising class-wide relief on a putative class defined by speculation makes ascertainbility and numerosity impossible. So Plaintiffs-Petitioners cannot satisfy their burden to certify any classes.

In addition, equity and the All Writs Act do not grant courts an alternative route to craft class action free of the strictures of the federal rules. That is particularly true for habeas petitions, which are unfit for class actions. This Court should not expand class actions in such a novel way to resuscitate the very claims that the Supreme Court already vacated for a lack of jurisdiction. The Court should deny the Motion for Class Certification.

## Background

In March, the President issued Proclamation No. 10903, invoking the Alien Enemies Act (AEA), Rev. Stat. §4067, U.S.C. § 21, to detain and remove Venezuelan nationals "who are members of TdA." Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua, 90 Fed. Reg. 13034. In the early hours of March 15, the five named Plaintiffs, representing a putative class, initiated this litigation and sought immediate injunctive relief against their removal under the

AEA.  ECF Nos. 1, 4.  In the complaint, Plaintiffs sought relief in habeas, but then dismissed their habeas claims and proceeded on their other causes of action. ECF No. 1 at 20-21; Mar. 15 Transcript at 22:21-25. This Court provisionally certified a class of "All noncitizens in U.S. custody who are subject to the March 15, 2025, Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua' and its implementation."  Minute Order on Motion To Certify Class.  This Court also issued two temporary restraining orders (TROs) preventing removal of the named Plaintiffs and further removals of class members under the AEA.  *Id.*; ECF No. 66.

After the D.C. Circuit denied the government's stay motions, the government applied to the Supreme Court to vacate the TROs. The Supreme Court granted that application, holding that, because the aliens' claims "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas," "jurisdiction lies in only one district: the district of confinement." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1005–06 (2025) (per curiam) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). The Court further held that the aliens are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case,'" including notice "that they are subject to removal under" the AEA, "within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

In defiance of the Supreme Court's decision, Plaintiffs persist in their efforts to anchor this habeas litigation outside of the jurisdiction of confinement. After an unsuccessful attempt at a third TRO, Plaintiffs amended their complaint to add new claims on behalf of two new subclasses. ECF No. 101. The claims for these new subclasses are brought under habeas, with (now) Petitioners arguing Respondents in this district have constructive custody over them. *Id.* The first subclass Petitioners seek to certify includes all "noncitizens in custody at the Terrorism Confinement Center ("CECOT") in El Salvador" pursuant to the Proclamation (CECOT Subclass). *See* Petitioners' Motion for Class Certification, ECF No. 103-1 at 2-3 ("Mot."). This class is represented by Petitioners Frengel Reyes Mota, Andry Jose Hernandez Romero, J.A.B.V., M.A.O.R., G.A.A.A., and M.R.M., who are currently detained in CECOT and have petitioned for habeas relief through family members. *Id.* The second subclass is all "noncitizens in criminal custody who were, are, or will be" subject to the Proclamation, even if they are in state custody (Criminal Custody Subclass). *Id.* This class has a single named representative, T.C.I., who is in state criminal custody in New Jersey. *Id.* Petitioners also seek a modification of the original class, including all "noncitizens who were, are, or will be" subject to the Proclamation. *Id.* It is unclear if this expansion now includes anyone outside of the subclasses. In addition, the original named Plaintiffs (J.G.G, G.F.F., J.G.O., W.G.H., J.A.V.) are maintaining their claims under "equity and under the Administrative Procedure Act." *Id.* Even though these Plaintiffs have filed habeas petitions in the

districts where they are confined, Plaintiffs argue that their notice claims are a precondition for habeas and can be brought in this Court. *Id.*

Along with their Motion for Class Certification, Petitioner-Plaintiffs moved for emergency injunctive relief a fourth time. ECF No. 102. They seek an order requiring the government to facilitate the return of the CECOT subclass to the United States, and an order enjoining AEA removals of members of the criminal subclass. *Id.* The government has separately responded to this motion, explaining why this Court still lacks jurisdiction and why Petitioners' claims fail on the merits and do not warrant an extraordinary preliminary injunction.  ECF No. 108.

## Legal Standard

It is blackletter law that courts must assure themselves of jurisdiction before granting relief.  *Kaplan v. Cent. Bank of Islamic Republic of Iran*, 896 F.3d 501, 511 (D.C. Cir. 2018).  Only after jurisdiction is established can a court consider certifying a class, which demands more of a plaintiff than is required to survive a motion to dismiss under Rule 12(b)(1) or 12(b)(6)." *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 194 (D.D.C. 2024).  To certify a class under Federal Rule of Civil Procedure 23(a) a proposed class representative plaintiffs must establish that: (1) the class is so numerous that joinder of all of its members is impracticable; (2) the case involves questions of fact or law that are common to all class members; (3) the named plaintiffs' claims are typical of those of the class; and (4) the named plaintiffs will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Under Rule 23(b)(2), a class may be maintained only if all of the requirements of Rule 23(a) are satisfied and "final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The party seeking certification "must prove each element of Rule 23 by a preponderance of the evidence." *Lewis*, 743 F. Supp. 3d at 194.

## Argument

### I. This Court Lacks Jurisdiction to Certify a Class.

#### A. Petitioners cannot seek habeas in this district.

The Supreme Court has already made clear that the claims in this case are "core habeas petitions" meaning "jurisdiction lies in only one district: the district of confinement." *J. G. G.*, 145 S. Ct. at 1005–06. And because the original Plaintiffs were not in custody in this district, the Supreme Court vacated the Temporary Restraining Order for a lack of jurisdiction. *Id.* Nothing has changed since. The *only* individuals or class members this Court could have jurisdiction over are those being held in custody pursuant to the Proclamation in *this district*. *Id.*; *see also Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 11 (D. Mass. 2003) (because court lacked jurisdiction over class members outside of jurisdiction, they could not be part of a class). Petitioner-Plaintiffs have provided no evidence that any such individuals exist. None of the named Petitioner-Plaintiffs or classes are in custody in this district. All of them are either in custody in El Salvador, in other districts, or not in custody at all. So this Court still lacks jurisdiction to certify the classes or adjudicate their claims.

For the two Subclasses, Petitioners attempt to get around this obvious conclusion by arguing that *some* Respondent must have constructive custody. As explained in Respondents' Opposition to Petitioners' Motion for a Preliminary

Injunction (ECF 108 "Opp." at 5-14), the United States does not have custody or control over the CECOT Subclass detained by the sovereign nation of El Salvador. *See Al Maqaleh v. Gates*, 605 F.3d 84, 97 (D.C. Cir. 2010). So there can be no jurisdiction for the CECOT Subclass in this Court. Opp. 5-12.

Similarly, for the Criminal Custody Subclass, none of the class members are in custody in this district or being held in constructive custody by one of the Respondents. Opp. 13-14. Indeed, the named Petitioner T.C.I. is being held in New Jersey by state authorities. *Id.* So he is not being held in this district or even by Respondents at all. Petitioners have provided no evidence that a single individual in this Subclass is within the district.

To avoid this problem, Petitioners claim that the Criminal Custody Subclass will at some point in the *future* be in Respondent's custody. Mot. 8-9. Once again, as explained in the Opposition brief, this is totally speculative and cannot create jurisdiction in *this* district *now*. *See* Opp. 13-14; *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596 (3d Cir. 2012) ("Mere speculation is insufficient" to certify a class); *Dremann v. Francis*, 828 F.2d 6, 7 (9th Cir. 1987) (no habeas jurisdiction because "such potential confinement is considered too speculative to warrant federal habeas corpus protection"). In order to be part of a class, the members must have a claim within the court's jurisdiction. *See Monteferrante v. Williams-Sonoma*, Inc., 241 F. Supp. 3d 264, 269 (D. Mass. 2017) (striking class because it would "plainly encompass individuals whose claims are barred by jurisdictional or time limitations"). And for habeas, jurisdiction cannot be premised on future custody

7

because custody is a jurisdictional prerequisite. *See I.M. v. United States Customs & Border Prot.*, 67 F.4th 436, 439 (D.C. Cir. 2023) ("Custody Is an Essential Jurisdictional Requirement"). Because these speculative future class members are not currently in custody in this district, they cannot petition for habeas corpus here. *Id.* And in any event, Petitioners say this future custody is not necessarily removal to CECOT, but detention anywhere in the United States under the AEA. ECF No. 111 at 9. If Petitioners end up in custody somewhere in the United State under the AEA, they must file their habeas petitions there. This is exactly what the Supreme Court held. *J. G. G.*, 145 S. Ct. at 1005–06.

Moreover, some of the Criminal Custody Subclass members may receive relief from other districts where they are class members. *See, e.g., J.A.V.*, 2025 WL 1257450, at *11; *G.F.F. v. Trump*, No. 1:25-cv-2886 (S.D.N.Y.). Courts have long held that separate suits should not be maintained where a preexisting class action brings the same claims. *See, e.g., Crawford v. Bell*, 599 F.2d 890, 892–93 (9th Cir. 1979) (holding that a district court may dismiss "those portions of [the] complaint which duplicate the [class action's] allegations and prayer for relief"); *McNeil v. Guthrie*, 945 F.2d 1163, 1165–66 (10th Cir. 1991) (finding that individual suits for injunctive and declaratory relief cannot be brought where a class action with the same claims exists); *Hun v. Kashi Co.*, 2015 WL 5117061, at *2 (E.D.N.Y. Aug. 31, 2015) (staying action brought by plaintiffs who were themselves members of a nationwide class action pending settlement approval in a different district). That is especially true where, as here and in the related cases, class certification is sought under Rule 23(b)(2), which

does not allow opt outs. *See Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 361–62 (stating that Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the [d]istrict [c]ourt to afford them notice of the action."). Indeed, the Criminal Custody Subclass members' claims may already be resolved, mooting their claims here. This illustrates why it is improper to create classes in this district where the Petitioners are not in custody. So this court lacks jurisdiction over the Subclasses.

**B.    This Court still lacks jurisdiction over the original Plaintiffs.**

Even more shocking is Petitioner-Plaintiffs' attempts to evade the Supreme Court's holding regarding the exact same named Plaintiffs and related class. Mot.3; ECF No. 101 ("Am. Compl.") ¶ 95 ("Plaintiffs continue to advance their original claims in equity and under the Administrative Procedure Act").[1] As explained, the Supreme Court vacated this Court's TRO for a lack of jurisdiction because Plaintiffs' due process and statutory interpretation claims raised under the Administrative Procedure Act "must [instead] be brought in habeas." *J. G. G.*, 145 S. Ct. at 1005–06. Yet the named Plaintiffs for this class are the exact same as the first complaint (J.G.G, G.F.F., J.G.O., W.G.H., J.A.V.) pursing the same claims under the APA against the same Respondents. *Compare* Am. Compl. Counts 1-9 *with* ECF No. 1 Counts 1-9. In this regard, the Amended Complaint is no different than the claims the Supreme Court held "fall within the 'core' of the writ of habeas corpus and thus

---

[1] It appears that the original Plaintiffs were not part of Petitioners' Motion for a Preliminary Injunction. The government raised this issue in its response and noted that it would address Plaintiffs more fully here. Opp. 5 n.2, 14 n.7. Plaintiffs-Petitioners did not contest this understanding in their reply. ECF No. 11.

must be brought in habeas" where they are held in custody, which is decidedly not this court. *J. G. G.*, 145 S. Ct. at 1005–06. The only differences appear to be two new Respondents and four new claims focused on post-removal detention in CECOT, which do not clearly apply to Plaintiffs who are not in CECOT. *See* Am. Compl. Counts 10-13 (not mentioning Plaintiffs). In any event, such claims challenging confinement must be brought in habeas as well. *See Gannaway v. Stroumbakis*, 842 F. App'x 725, 729 (3d Cir. 2021) (challenges to confinement under 5th, 6th, and 8th Amendments using section 1983 were dismissed because "remedies for challenges to his incarceration are in habeas.").

So how do Plaintiffs attempt to get around the Supreme Court's clear holding? Plaintiffs claim that because notice "is a precondition to the effective exercise of habeas rights, it lies outside of habeas." Mot. 3. Put aside the fact that this does not resuscitate most of their claims, this argument still suffers from two significant problems. First, the named Plaintiffs have already received adequate notice and filed habeas petitions in the districts where they are in custody. *See J.A.V.*, 2025 WL 1257450, at *11; *G.F.F.*, No. 1:25-cv-2886 (S.D.N.Y.). This moots the named Plaintiffs' due process notice claims and makes it impossible for them to represent a class on this issue. *See J.A.V.*, 2025 WL 1257450, at *11 (ruling that notice claims were moot for named plaintiffs, including J.G.G.).

Second, even if they could maintain their due process claims, such claims still "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas" where they are held in custody. *J. G. G.*, 2025 WL 1024097, at *1. As the Supreme

10

Court recently said, historically "habeas was no less than 'the instrument by which due process could be insisted upon.'" *Brown v. Davenport*, 596 U.S. 118, 128–29 (2022) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 555 (2004) (Scalia, J., dissenting)); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 142–44 (2020) (Thomas, J., concurring).    Indeed, the "gist" of due process was to "force the Government to follow those common-law procedures deemed necessary," and those "due process rights have historically been vindicated by the writ of habeas corpus." *Hamdi*, 542 U.S. at 555 (Scalia, J., dissenting).  Indeed, habeas is "the instrument by which due process could be insisted upon."  *Id.* (Scalia, J., dissenting).  The fact Plaintiffs have recharacterized their claims to emphasize notice is irrelevant, as the "essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it."  *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976) (emphasis added).  The syllogism is simple: (1) If due process is core to habeas for those in custody, and (2) notice is core to due process, then (3) notice is also core to habeas and cannot be disentangled.  Indeed, the origins of habeas confirm this: the Assize of Clarendon of 1166 allowed "Justices to order local sheriffs to bring men in their custody before the Justices, along with two lawful men who could 'bear record' as to why the prisoner was taken."  *I.M.*, 67 F.4th at 441–42 (quoting Assize of Clarendon § 4) (cleaned up).  The entire point of habeas corpus has always been to give the prisoner notice of why he was in custody.

Plaintiffs seem to suggest that because they only challenge the sufficiency of the notice, they do not challenge their custody itself and thus do not raise issues at

the core of habeas.  But release is not the only remedy for habeas.  *See J. G. G.*, 2025 WL 1024097, at *1.  And notice alone (while core to due process) is meaningless without an opportunity to be heard and challenge the charges.  Indeed, in a similar context, the Supreme Court allowed a due process habeas claim by an alien to proceed, ruling that the alien must receive "notice of the factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker."  *Hamdi*, 542 U.S. at 533.  Here, it is difficult to see what Plaintiffs' ultimate relief would be other than some sort of change to their custody.  That sounds in habeas.  *See I.M.*, 67 F.4th at 443 (rejecting argument that request for a hearing did not reflect a habeas remedy, as it is sufficient that "a removal hearing *can* result in release").  So the claim must be brought in the district of confinement, not here.

Ironically, Plaintiffs have done just that, raising claim splitting issues.  All five of the named Plaintiffs have brought nearly identical claims through habeas petitions in their districts of confinement.  *See J.A.V.*, 2025 WL 1257450, at *11; *G.F.F.*, No. 1:25-cv-2886 (S.D.N.Y.).  This alone precludes them from bringing related claims in this Court.  *See Hudson v. Am. Fed'n of Gov't Emps.*, 308 F. Supp. 3d 388, 394 (D.D.C. 2018) (Boasberg, J.) (dismissing a claim for claim splitting).  Claim splitting requires the existing litigation to "(1) involve[] the same claims or cause of action, (2) between the same parties or their privies, and (3) before a court of competent jurisdiction."  *Steele v. United States*, 2024 WL 1111639, at *6 (D.D.C. Mar. 14, 2024) (quotations omitted) (dismissing claims for claim splitting in class action context).  The entire

point is to prevent "piecemeal" litigation where plaintiffs "present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). It does not matter if the plaintiffs add additional causes of action in the subsequent suit, what matters is if the "claims arise out of the same transactional nucleus of facts." *Id.* (dismissing new claims for claim splitting since they arose from the same nucleus). This applies "particularly in class actions." *Brewer v. Lynch*, 2015 WL 13604257, at *10 (D.D.C. Sept. 30, 2015). And it includes cases involving habeas petitions. *See Best v. Barbarotta*, 2016 WL 1588501, at *3 (E.D.N.Y. Apr. 19, 2016) (dismissing declaratory judgment claim because it was duplicative of habeas and 1983 claims in another suit). Since Plaintiffs are bringing the same claims in this Court as their existing habeas suits, they cannot maintain an action here much less represent a class.

The similarities between Plaintiffs' habeas claims and the ones in their Amended Complaint are striking. The same five named Plaintiffs bring the same nine core claims against most of the same Respondents. *Compare* Am. Compl. Counts 1-9 *with G.F.F.*, No. 1:25-cv-2886 (S.D.N.Y.), ECF 1 at Counts 1-9 *and J.A.V.*, No. 1:25-cv-00072 (S.D.T.X.), ECF 1 at Counts 1-9. The only differences are a few different Respondents and the four new post-removal custody claims. But again, even if those post-removal claims apply to the Plaintiffs Class, they arise from the same nucleus of operative facts: application of the Proclamation and removal under it. Given this, the Court should deny certification of the Plaintiffs Class because the

Court lacks jurisdiction and, even if it had jurisdiction, the named Plaintiffs are claim-splitting and cannot represent a class.

***

Since the Court lacks jurisdiction over both Subclasses and the Plaintiff Class, there is no jurisdiction over the broader general Class either. It is difficult to see what set of aliens could be a part of that class but not the others. Regardless, because challenges must be brought in habeas and there is no evidence anyone is in custody in this district, this Court lacks jurisdiction over any potential class. So the Court must deny Petitioners' Motion for Class Certification.

## II. In Any Case, Plaintiffs-Petitioners Fail to Satisfy the Requirements to Certify a Class.

Even if this Court has jurisdiction to consider class certification, Plaintiffs-Petitioners must satisfy Rule 23's requirements. Plaintiffs-Petitioners' putative class and subclasses fail to satisfy the requirements for certification.

### A. The putative class and subclasses do not satisfy commonality, typicality, or Rule 23(b)(2).

The "commonality" requirement mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). However, the proposed class's "claims must depend upon a common contention." *Wal-Mart*, 564 U.S. at 350. Moreover, "[t]hat common contention . . . must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Although for purposes of Rule 23(a)(2) even a single common question will do, "[w]hat matters to class certification . . . is not the raising of common questions—even

14

in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the class are what have the potential to impede the generation of common answers." *Id.* (citation omitted).

Plaintiffs-Petitioners cannot satisfy the commonality requirement because Plaintiffs-Petitioners have not proved similarities among the members of each putative (sub)class. Whether an alien contests membership in TdA, the evidence available for that alien's membership, what process the alien has already been given, whether the alien is removable under a different provision of law, and other such questions bearing on the potential remedy for that alien are necessarily individualized determinations unsuitable for class treatment. And the mere allegation that (sub)class members have all suffered a violation of the Due Process Clause is insufficient to satisfy commonality. *Wal-Mart*, 564 U.S. at 350. Such an allegation is particularly deficient because "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976); *see also Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) (class action may not be proper vehicle to resolve due-process claims because of flexibility inherent in due-process analysis). Because due process is a flexible concept, the dissimilarities inherent to each individual case would require a court to delve into the specific facts of each alien's case, thereby rendering it impossible to efficiently dispose of the (sub)classwide claims.

15

Nor is it true that "the claims or defenses of the [proposed] representative parties are typical of the claims or defenses of the [putative] class[es]." Fed. R. Civ. P. 23(a)(3). The typicality requirement "screen[s] out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." 7A Wright & Miller, *Federal Practice and Procedure* § 1764 (3d ed. 2018). Thus, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class member." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Here, the named Plaintiffs have had notice of the government's intention to designate under the AEA since the issuance of the Proclamation on March 14, 2025, and would therefore be entitled to significantly less notice going forward than the ordinary class member. Indeed, *no* additional notice would be necessary—they have already brought actions in the Southern District of New York and the Southern District of Texas. Thus, the putative class representatives do not possess the same interest or suffer the same injury as the putative class's members. Indeed, they do not even have standing to contest the adequacy-of-notice claim, so they cannot act as class representatives on that basis. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976).

Similarly, Petitioners have not shown that T.C.I.'s claims are typical of those in the putative criminal custody subclass. As with the named Plaintiffs and the main putative class, T.C.I. clearly has notice of his rights with respect to his TdA

designation, but Petitioners have not shown that other members of the putative criminal custody subclass have similar amounts of notice. Beyond that, T.C.I. has a pending federal criminal case in the Eastern District of New York and is in custody in New Jersey. Schulman Decl., ECF 102-13, ¶ 2. But Petitioners make no showing that T.C.I. will be remain in criminal custody for any amount of time. They specify no charge brought against T.C.I., no pretrial detention findings, no probability of a conviction, and no range of possible sentences. It is impossible, then, for Petitioners to show that T.C.I.'s claim is typical of other putative subclass members' claims. Such subclass members can exist everywhere on the spectrum from being in jail on a misdemeanor for only a short period of time, perhaps never being convicted, to those convicted of capital felonies and receiving death sentences, who would likely not be removed under the AEA in any case. Not to mention whether the Proclamation will remain in effect throughout a putative subclass member's sentence. The breadth and individual nuances of the Criminal Custody Subclass makes commonality and typicality impossible.

The same is true for the CECOT Subclass. There is no guarantee that the members of the putative CECOT Subclass would have the same remedies as the proposed class representatives. Some detainees at CECOT may have final orders of removal under the INA and thus would not have the right to return to the United States, regardless of the validity of their removals under the AEA. Because those members of the putative subclass could not have their returns facilitated, they would

have different claims and interests from the proposed representatives.  So typicality again fails.

Nor do the putative class and subclasses "satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  Here, Petitioners rely on Rule 23(b)(2), Mot. 13–14, which requires they show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (internal quotations and citation omitted).  "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.*

Here again, Rule 23(b)(2) does not authorize certification of the putative class or subclasses because, as explained above, each individual putative (sub)class member would be entitled to a different injunction or declaratory judgment against Respondents—if any at all. To whatever extent Petitioners are entitled to additional process, that process would be different for each depending on the underlying facts. As the Supreme Court has "stressed repeatedly," "due process is flexible" and "calls for such procedural protections as the particular situation demands." *Jennings*, 583 U.S. at 314 (quoting *Morrissey*, 408 U.S. at 481); *see also Vallario v. Vandehey*, 554

F.3d 1259, 1268 (10th Cir. 2009) ("Under Rule 23(b)(2), the injuries sustained by the class must be sufficiently similar that they can be addressed in a single injunction that need not differentiate between class members."); *Reid v. Donelan*, 17 F.4th 1, 11 (1st Cir. 2021) (holding that a class of aliens seeking relief from mandatory detention in § 1226(c) could not be sustained under Rule 23(b)(2) because they were not all entitled to the same procedures). A Rule 23(b)(2) class action seeking additional procedures under the Due Process Clause "does not provide a vehicle for preemptively announcing such rules." *Id.* at 12. Instead, standards should arise in the form of agency guidance or regulations or through "common law rules of precedential force, through case-by-case adjudication." *Id.* Under these circumstances, Petitioners cannot demonstrate that certification under Rule 23(b)(2) is proper.

## B. Ascertainability and Numerosity.

As a separate prerequisite to certification, a putative class must be "definite" or "ascertainable." *J.D. v. Azar*, 925 F.3d 1291, 1319–20 (D.C. Cir. 2019) (citing 1 William B. Rubenstein, *Newman and Rubenstein on Class Actions* § 3:3 (6th ed.)). It arises from Rule 23's "express[] direct[ion] that the definition of a class be determined and that its members be identified or identifiable early in the litigation, not at its end." *In re White*, 64 F.4th 302, 313 (D.C. Cir. 2023) (citing Fed. R. Civ. P. 23(c)(1)(A)). Although absolute precision is not necessary before certifying a (b)(2) class, class membership must still be determinable "with reference to 'objective criteria.'" *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014) (quoting 1 Rubenstein § 3:3); *see also* Manual for Complex Litigation § 21.222 (4th ed.) (defining class "is of critical importance because," among other things, "it identifies the persons [who are]

19

entitled to relief"); *id.* (noting that although a court need not "identify every individual member at the time of certification of a Rule 23(b)(2) class action for injunctive relief," it must be able to "determine at any given time whether a particular individual is a member of the class").

Petitioners' putative class and subclasses cannot be ascertained at the outset of litigation. This is, in part, because the classes include possible "future claimants" without limitation. Mot. 8. It is purely speculative to ask whether a given alien will eventually be part of the class and, thus, "entitled to relief," Manual for Complex Litigation § 21.222. Even restricting the definitions to aliens already designated under the Proclamation does not help for the putative subclasses.

First take the criminal custody subclasses. Merely because the government has designated an alien as a TdA member does not mean that he is in custody, let alone criminal custody. *See* Cerna Decl., ECF 28-1, ¶ 6. A designated TdA member might not be known to the government even though they are in criminal custody because they may be in state custody, especially in "sanctuary" jurisdictions that do not share information about their detainees with the federal government. This Court would need to ascertain the current whereabouts and custodial status, if any, of every TdA member known to the government to determine if any such alien is part of the putative subclass. *See Kirkman v. N.C. R.R. Co.*, 220 F.R.D. 49, 53 (M.D.N.C. 2004) ("While the Court would eventually be able to ascertain potential class members through detailed title searches, this task is simply not administratively feasible given the number of potential members across more than 300 miles of land."). And again,

that may not be possible given that (1) some of these individuals are in state custody where the jurisdiction does not share immigration information with federal authorities, (2) some of them may be in custody for significant period, and (3) the class includes "future claimants" (Mot. 8), who are not yet in custody.

Similar issues exist for the CECOT Subclass. While the government can ascertain who was removed, membership in the CECOT Subclass would require obtaining custodial records from El Salvador. Because El Salvador wields its sovereign domestic authority over the detainees in CECOT, there is nothing preventing it from transferring CECOT detainees to other facilities or releasing them. *See Abrego Garcia v. Noem*, No. 25-cv-00951, Kozak Decl. ¶ 2, ECF 92 (noting that Abrego Garcia "had been transferred from CECOT to the detention facility 'Centro Industrial' in Santa Ana"). And this Court would not have the power to obtain information on El Salvador's disposition of those detainees from the only ones who would know—Salvadoran officials. Thus, this Court cannot "determine at any given time whether a particular individual is a member of the [putative sub]class," as is necessary to maintain a (b)(2) class. Manual for Complex Litigation § 21.222.

Given the ascertainability issues with the two Subclasses, the primary class cannot be ascertained either. This is because it includes both subclasses (and potentially some other unascertainable set of aliens). In addition, because these classes are fluid and partially premised on future class members, it is impossible to determine numerosity. *See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (numerosity cannot be premised on speculation). At the very least, Petitioners have

not proven numerosity by a preponderance of the evidence. *See Lewis*, 743 F. Supp. 3d at 194. Because the putative class and subclasses are not ascertainable (and may not be numerous), this Court should decline to certify them.

## III. Habeas Class Actions are Especially Improper Here.

### A. The All Writs Act does not permit class actions outside of Rule 23.

There is no alternative means to certify a habeas class. Petitioners must satisfy Rule 23. Petitioners argue, however, that a habeas class can be maintained under "equity principles," including the All Writs Act. Mot. 14-15 (citing *U. S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (2d Cir. 1974) (relying on All Writs Act)). They claim this permits a habeas class even if nothing else does, free of the Rule 23 requirements. *Id.* This is wrong. First, general equitable principles and the All Writs Act cannot be used "to circumvent statutory requirements or otherwise binding procedural rules." *Shoop v. Twyford*, 596 U.S. 811, 820–21 (2022). So to the extent a habeas class can be maintained (it cannot), the All Writs Act cannot replace the existing procedural requirements of Rule 23 for class actions. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32–33 (2002) (All Writs Act cannot replace removal requirements). Inventing a new habeas class action mechanism through the All Writs Act circumvents these procedural rules and undermines their purpose in regulating class actions. If courts could freely do this, there would be no reason to ever follow Rule 23 or other procedural restrictions.

In addition, this innovation would circumvent the individual application and "next friend" procedures of federal habeas. *See* 28 U.S.C. § 2242 ("Application for a

writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf "). Here, a class representative can simply sign on behalf of a class of people they know nothing about (including, apparently, future class members yet to exist). That is not how equity or the All Writs Act work. *See Shoop*, 596 U.S. at 820–21 (All Writs Act cannot supplement habeas procedures).

Even if there were no existing procedural rules for class actions, there is no basis in equity or the All Writs Act to create a habeas class action. Indeed, the All Writs Act is limited to "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). It cannot create jurisdiction in the first place nor grant a court the power to extend its jurisdiction to putative class members. *See Syngenta Crop Prot., Inc.*, 537 U.S. at 33 (All Writs Act aids jurisdiction, it does not grant it). In any event, equity and the All Writs Act are limited to the relief that was "traditionally accorded by courts of equity" at "the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19, 326 n.8 (1999). There is no evidence that habeas class actions existed at the Founding. So it is unsurprising that Petitioners do not cite (and the government could not locate) any class habeas cases prior to Rule 23 enacted in 1938. Mot. 14-15. Given the lack of historical support, if a habeas class can exist at all (it cannot) it must be maintained under Rule 23. Neither equity nor the All Writs Act vest courts with the discretion to invent a new form of class action or ignore Rule 23's strictures.

23

**B.    Habeas is unfit for class adjudications.**

The Court should be especially hesitant to grant class certification here because habeas petitions are generally unfit for class actions.  The purpose of class actions are to "create an efficient mechanism for trying claims that share common questions of law or fact when other methods of consolidation are impracticable." *Dellums v. Powell*, 566 F.2d 216, 230 (D.C. Cir. 1977).  Habeas, from its inception, has been an individualized writ, however.  Indeed, the federal habeas statute is designed for individual petitioners; it requires that an "[a]pplication for a writ of habeas corpus shall be in writing signed and verified *by the person for whose relief it is intended or by someone acting in his behalf*" and "shall allege the facts concerning *the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority*, if known." 28 U.S.C. § 2242 (emphasis added).  The issuance of the writ is then "directed *to the person having custody of the person detained*" and may require the custodian to "produce at the hearing *the body of the person detained*."  *Id.* § 2243 (emphasis added).  So the habeas statute here is focused on an individual detainee applying for a writ and the court inquiring into the cause of their detention.  That is an individualized process and inquiry, not one amenable to class wide resolution.

This reflects the historical origins of habeas.  "'Habeas corpus' is Latin for 'you have the body.'"  *I.M.*, 67 F.4th at 440 (*Webster's New International Dictionary* 1121 (2d ed. 1945)).  The original Habeas Corpus Act of 1679 required the "Sheriff" to "bring up the Body before the Court to which the Writ is returnable; and certify the true Causes of Imprisonment."  Habeas Corpus Act of 1679, 31 Cha. 2 c 2 § I.

Blackstone commented that habeas was "directed to the person detaining another, and commanding him to produce the body of the prisoner with the day and cause of his caption and detention." 3 William Blackstone, Commentaries on the Laws of England 131-132 (1768). This understanding was "incorporated into the jurisprudence of every state in the Union" including the Judiciary Act of 1789, which established the writ of habeas corpus in federal law. 3 Joseph Story, Commentaries on the Constitution of the United States, §§ 1333, 1335 (Boston, 1833) (in reviewing the history of habeas, Justice Story defined habeas the same way that Blackstone did); Judiciary Act of 1789. 1 Stat. 73, 81-82 (1789). So habeas is about directing the custodian of a detainee "to produce the body of the prisoner" to the court to explain the reason for his confinement. Story, Commentaries on the Constitution of the United States, § 1333. That is, by definition, individualized. How is a court supposed to order the production of a prisoner's body if the prisoner is an unknown class member?

This is reinforced by the one exception to the rule that an application for habeas must be "signed and verified by the person for whose relief it is intended;" the application can sometimes be signed "by someone acting in his behalf." 28 U.S.C. § 2242. This is not carte blanch for any representative to seek habeas on the behalf of others. Instead, this incorporates the historical doctrine of "next friend," which allows someone close to the detainee to apply for habeas on their behalf. *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990). Not anyone can petition for habeas on behalf of any detainee lest it be abused "by intruders or uninvited meddlers, styling

themselves next friends." *Id.* (quoting *United States ex rel. Bryant v. Houston,* 273 F. 915, 916 (2d Cir. 1921) (dismissing writ because while next of friend as the wife was close enough, there was not an explanation as to why the detainee did not petition himself)). So a "next friend" must (1) "provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action," (2) "be truly dedicated to the best interests of the person on whose behalf he seeks to litigate," and (3) "have some significant relationship with the real party in interest." *Id.* at 163–64. This analysis, once again, is highly individualized, focusing on the disability preventing the detainee from applying himself, the interests of the next friend, and the friend's relationships to the detainee. *Id.* (dismissing claim brought by concerned citizen on behalf of prisoner). In fact, the named CECOT Subclass Petitioners are petitioning for habeas through their close relatives. Am. Compl. ¶¶ 12-17. This at least represents the proper conception of a "next friend" application.[2]

Named Petitioners here are essentially acting as "next friends" of the unknown class members. But Petitioners are doing so without explaining why each individual detainee cannot petition themselves, why they are dedicated to the interests of those detainees, or their relationship to the other detainees. *See Wilson v. Dixon*, 256 F.2d 536, 537–38 (9th Cir. 1958) (rejecting next friend petition because there was no explanation "why the detained person does not sign and verify the complaint and who

---

[2] The government does not concede that the allegations satisfy the other "next friend" requirements for the named Petitioners, but does not raise potential issues for the purpose of this motion. The government also believes that these requirements cannot be met simply by satisfying the Rule 23 requirements. The standards are higher and more individualized.

'the next friend' is."). At most, Petitioners claim they share an interest in similar legal questions. That is insufficient to petition as a "next friend." And if any prisoner can file a class action on behalf of all arguably similarly situated prisoners who he knows nothing about, the historical exception of "next friend" would be usurped. Petitioners seek to blow a massive hole in the historically individual writ and the narrow exception to permit "next friends" to petition on another's behalf.

It is no wonder, therefore, that the Supreme Court "has never held that class relief may be sought in a habeas proceeding." *A.A.R.P. v. Trump*, 145 S. Ct. 1034, 1036 (2025) (Alito, J., dissenting). Petitioners meekly assert that "the Supreme Court has ruled on the merits in class habeas cases." Mot. 15. In all of those cases, however, the government did not raise the issue and the Supreme Court denied relief on other grounds without resolving whether habeas classes were proper.[3] *LoBue v. Christopher*, if anything, cuts the other way because the court vacated a declaratory judgment claim for a lack of jurisdiction since it was more properly brought as a habeas claim in a different district. 82 F.3d 1081, 1082 (D.C. Cir. 1996). In so ruling, the court noted that even if a habeas class might be theoretically possible, such a class cannot assert the rights of class members not yet in custody. *Id.* So the court did not bless a habeas class action and instead ordered the case dismissed for the

---

[3] *See Schall v. Martin*, 467 U.S. 253, 261 n.10 (1984) ("We have never decided whether Federal Rule of Civil Procedure 23, providing for class actions, is applicable to petitions for habeas corpus relief."); *Jennings v. Rodriguez*, 583 U.S. 281, 324 n.7 (2018) (remanding on other grounds) (Thomas, J., concurring in part) ("This Court has never addressed whether habeas relief can be pursued in a class action"); *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) (reversing and remanding on other grounds); *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.3 (2021) (noting the Court still has not decided the issue and "we do not address that decision here.").

same reasons this Court should reject Petitioners' claims. Most of the remaining cases cited by Petitioners did not actually rule that a habeas class was proper, but instead passingly approved of the concept in dicta.[4] And the remainder of cases are unpersuasive because they are contrary to the history and practice of habeas. This Court should not stray from the tenets of habeas here to certify novel classes that do not even meet Rule 23's requirements.

## Conclusion

The motion for class certification should be denied.

Respectfully submitted,

**Yaakov M. Roth**
Acting Assistant Attorney General
Civil Division

s/Drew C. Ensign
**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044-0878
(202) 514-2000
drew.c.ensign@usdoj.gov

**August Flentje**
Special Counsel for Immigration

**Tiberius T. Davis**
Counsel to the Assistant Attorney General

---

[4] See Mead v. Parker, 464 F.2d 1108, 1112–13 (9th Cir. 1972) (just ruling that a case should not be dismissed just because it cannot be a class action without deciding if a class was proper); Williams v. Richardson, 481 F.2d 358, 361 (8th Cir. 1973) (similar); Napier v. Gertrude, 542 F.2d 825, 828 (10th Cir. 1976) (habeas was moot before class certification decided); Hamama v. Adducci, 912 F.3d 869, 878 (6th Cir. 2018) (holding that immigration statute precluded class habeas injunctions because it used word "individual," and merely noting that there may be habeas classes in other situations).

**Anthony Nicastro**
Acting Director
Office of Immigration Litigation

**Ernesto Molina**
Deputy Director

Dated: May 7, 2025                    *Counsel for Respondents–Defendants*