# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LIYANARA SANCHEZ, as next friend on behalf of FRENGEL REYES MOTA, *et al.*, <br><br> *Petitioners–Plaintiffs*, <br><br> J.G.G., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> *Respondents–Defendants*. | Case No: 1:25-cv-00766-JEB |

## PETITIONERS-PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

INTRODUCTION……………………………………..……………..……..……......1

ARGUMENT…………………………………………………………………………...2

   I.   The Court Has Jurisdiction to Certify Both Classes …………………………………...2

   II.   Both Classes Meet Rule 23's Requirement......................................................................... 4

      A. Both Classes Satisfy Commonality, Typicality, and Rule 23(b)(2)………………….4

      B. Both Classes Satisfy Ascertainability and Numerosity…………………………….13

   III.   A Habeas Class Action Is Not Only Proper, but Necessary………………..………...16

CONCLUSION……………………………………..…………………………………...20

## INTRODUCTION

Petitioners present textbook Rule 23(b)(2) classes because every class member has a number of identical legal claims, and if they prevail, each one without exception would be entitled to the same order enjoining the Proclamation's enforcement. Respondents' main argument is that some purported differences within each class preclude classwide treatment. But threshold questions like whether the AEA was properly invoked or whether removals under the AEA can circumvent immigration laws are common questions that would generate common answers as to all members of both classes, regardless of any of the factual distinctions highlighted by Respondents. The same is true of Petitioners' due process claims, which challenge common policies operating against the members of each class. As Judge Rodriguez has already found, Respondents' use of the AEA here raises "many common question of law" that render class certification appropriate, notwithstanding the "relatively-narrow" individualized "issue of the person's alleged membership in TdA." *J.A.V. v. Trump*, No. 1:25-cv-72, 2025 WL 1256996, at *4–5 (S.D. Tex. May 1, 2025) (habeas class).

Petitioners are typical of their respective classes. Members of the CECOT Class have already had the Proclamation enforced against them without due process and are now imprisoned in El Salvador at the United States's behest. Likewise, members of the Criminal Custody Class are designated as "alien enemies" under 50 U.S.C. § 21 and are thus subject to removal under the Proclamation at any moment, including with as little as 12 hours' notice. Petitioners thus satisfy commonality, typicality, and the Rule 23(b)(2) standard.

Petitioners have separately briefed why the Court has jurisdiction over the CECOT Class and Criminal Custody Class, and the Court has already authorized discovery after noting that Petitioners have "offered support for their allegation that their 'detention is at the behest and

ongoing direction of United States officials.'" ECF No. 116 at 5 (quoting *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 67 (D.D.C. 2004)). The government's remaining arguments about lack of ascertainability and numerosity based on so-called "fluidity" are red herrings. The government has information about whom it has designated under the AEA, and the inclusion of future members in a class definition is a standard practice, especially in civil rights class actions against governmental or corporate defendants.

If noncitizens in either of the classes were forced to proceed through individual habeas petitions, the vast majority would likely not be able to obtain judicial review. Members of the CECOT Class are imprisoned in El Salvador with no access to the outside world, let alone access to legal counsel in the United States. And members of the Criminal Custody Class would face extraordinary difficulty proceeding individually via habeas, given the government's stated policy of providing only 12 hours' notice (using a deficient form) to state whether they wish to contest removal by habeas corpus, and only 24 hours to file the habeas petition after that. *See* ECF No. 108-2 (Cisneros Decl.) ¶ 11. Certification of these classes therefore is appropriate and warranted.

## ARGUMENT

## I.    The Court Has Jurisdiction to Certify Both Classes.

Respondents raise several jurisdictional arguments that are fully briefed before this Court in Petitioners' motion for a preliminary injunction. Petitioners have already explained why the Court has jurisdiction over the CECOT Class due to the United States's constructive custody of class members. ECF No. 102-1 at 6–9; ECF No. 111 at 2–7. Petitioners have also already explained why *Braden* and *Padilla* give this Court jurisdiction over the Criminal Custody Class. ECF No. 102-1 at 10–11; ECF No. 111 at 7–8. Petitioners incorporate those arguments here by reference.

There is nothing "speculative," Opp. 7, about Respondents' future custody over the Criminal Custody Class. *See* Mot. at 2 (defining class as noncitizens in criminal custody who "were, are, or will be" subject to the AEA Proclamation). The class does not encompass individuals who are merely *at substantial risk* of future AEA detention (which in any event would have been sufficient). Rather, Respondents' custody over the class members is *certain*, because the class consists of individuals who "were, are, or will be" designated as "alien enemies" under the AEA Proclamation. The cases cited by Defendants are inapposite. *See, e.g.*, *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596 (3d Cir. 2012) (holding that plaintiff's showing of numerosity was too speculative where he "offered proof of only one potential class member"); *I.M. v. U.S. Customs & Border Prot.*, 67 F.4th 436, 439 (D.C. Cir. 2023) (reiterating only that custody is a jurisdictional requirement).

Finally, as Petitioners clarified at the May 7 hearing, they do not seek a single class on behalf of all Petitioners, and the original named plaintiffs are not part of the two putative classes. May 7 Tr. at 5:2-24; *see also infra* note 1. Accordingly, Petitioners will not repeat their responses to these arguments here.[1]

Respondents additionally argue that the Court might lack jurisdiction over the Criminal Custody Class because *some* class members may receive relief from injunctions in other districts. Opp. 8–9. But the government's argument is entirely speculative. Nor have Respondents identified *any* class member who "may receive relief" in other actions, *id.*, even though ICE has detainers on—and therefore knows the identities of—32 of them, *see* ECF No. 28-1 (Cerna Decl.) ¶ 6. Even

---

[1] Petitioners' opening brief described the "CECOT Class" and "Criminal Custody Class" as "subclasses" based on the Court's prior provisional class certification, because the Supreme Court did not directly address that portion of the TRO nor any class certification issues. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1005–06 (2025). Following the May 7 hearing, however, Petitioners describe the subclasses instead as proposed classes for purposes of this motion.

assuming that putative class members are detained in districts where courts have ordered preliminary relief, at these early stages of litigation it is far from clear that any class members are "fully protected by [another] action." *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979); *see also* Opp. 8 (citing *Hun v. Kashi Co.*, No. 15-cv-1391, 2015 WL 5117061, at *2 (E.D.N.Y. Aug. 31, 2015) (denying defendant's motion to dismiss in light of "the potential harm to plaintiffs if the case is dismissed and the [parallel suit's] settlement is not subsequently approved")).[2] And, in any event, whether any class members ultimately do get protection from a different classwide injunction is irrelevant. *See Kohen v. Pac. Inv. Mgmt. Co.,* 571 F.3d 672, 677 (7th Cir.2009) ("[A] class will often include persons who have not been injured by the defendant's conduct. . . . Such a possibility or indeed inevitability does not preclude class certification."); *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) (same). What matters is that Petitioner T.C.I. is not covered by any of the existing injunctions and he thus has standing to bring suit on behalf of the Criminal Custody Class. *See* 1 Newberg & Rubenstein on Class Actions § 2:3 (6th ed.) ("in cases seeking injunctive or other equitable relief[,] it is well settled that . . . the standing inquiry focuses solely on the named plaintiff or proposed class representative").

## II.    Both Classes Meet Rule 23's Requirements.

### A.    Both Classes Satisfy Commonality, Typicality, and Rule 23(b)(2).

Respondents' arguments as to commonality, typicality, and Rule 23(b)(2) all essentially point out various possible differences between class members. Opp. 15–16. But none of those differences alter the common threshold questions that Petitioners raise, nor the common relief

---

[2] Respondents' reliance on *McNeil v. Guthrie*, 945 F.2d 1163, 1165–66 (10th Cir. 1991), is misplaced. Opp. 8. There, the court addressed the problem of a pro se class member individually "seeking to litigate issues *within* the class action," and not through class counsel. *McNeil*, 945 F.2d at 1165–66 (emphasis added). No such problem is present here.

sought. *See Damus v. Nielsen*, 313 F. Supp. 3d 317, 332 (D.D.C. 2018) ("as this Circuit has held, if there is a 'single' common question, 'factual variations among the class members will not defeat the commonality requirement'" (citing *Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012))); *Davis v. U.S. Parole Comm'n*, No. 1:24-CV-01312 (TNM), 2025 WL 457779, at *5 (D.D.C. Feb. 11, 2025) (certifying class challenging systemic failure to provide disability accommodations in setting parole and supervised release conditions and rejecting argument that the individualized nature of accommodations defeats certification; the court explained, "in a civil-rights suit such as this, commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members" (cleaned up)).

And it is black-letter law that classes can litigate common claims, like the legality of a policy, and save individualized back-end claims for later litigation. *See* 6 Newberg & Rubenstein on Class Actions § 18:17 (6th ed.) ("[I]ndividualized claims [not common to the whole class] are not made part of the class action and, accordingly, are generally not precluded by the class action judgment. This is so even though the individualized claims may share such a close factual predicate with the claims in the class suit that they would have had to have been joined in two-party litigation."); Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4455.2 (3d ed.) (same); *see also Damus*, 313 F. Supp. 3d at 334 (rejecting arguments regarding lack of cohesion for Rule 23(b)(2) class because "Plaintiffs ask only that the Court address an alleged systematic harm"); *cf. Hoyte v. District of Columbia*, 325 F.R.D. 485, 494 (D.D.C. 2017) ("The D.C. Circuit has likewise held [in the Rule 23(b)(3) context] that 'the mere fact that damage awards will require individualized fact determinations is insufficient by itself to preclude class certification'" (citation omitted)). Respondents fail to grapple with this basic feature of class-action law.

To satisfy the commonality requirement under Rule 23(a)(2), "even a single common question will do," as long as its determination "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, *Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (cleaned up); *see also DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) ("Rule 23(a)(2) does not require that all questions be common to the class."). As Petitioners have already explained, both classes raise numerous common questions of law, Mot. 9–10, the answers to which will drive the resolution of the litigation, *Wal-Mart*, 564 U.S. at 350. The individualized circumstances Respondents point to—*e.g.*, whether a noncitizen contests TdA membership, what evidence a noncitizen has to contest TdA membership, or whether the noncitizen is removable under a different provision of law—do not affect the threshold common questions regarding the legality of the Proclamation and class members' removal under the AEA. For example, the questions of whether the AEA's statutory predicates are met, or whether detention at CECOT violates the Constitution, do not turn on the specifics of a particular class member's circumstances.

Nor do the questions of what basic notice and process is required turn on a class member's individualized circumstances. For the CECOT Class, the individual circumstances relevant to the due process claim here are identical: no class member received adequate advance notice of their designation and the alleged basis for that designation before Respondents removed them from an ICE detention facility to be loaded onto planes bound for CECOT. ECF No. 102-1 at 3. And the Criminal Custody Class challenges the government's current notice procedures, which: (1) provide notice merely 12 hours ahead of removal, with an English-only form that does not inform the individual that they can challenge their designation, how to do so, or on what timeframe; (2) require them to somehow know they need to state their intent to file a habeas petition in that 12-hour timeframe; and (3) require them to actually file a habeas petition within 24 hours after that. ECF

No. 108-2 (Cisneros Decl.), ¶ 11; *id.* at 4 (Form AEA-21B). The common questions—whether these "notice" procedures violate the Due Process Clause or the AEA itself—plainly apply across the classes. *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (class certification proper for due process claim); *G.F.F. v. Trump*, No. 25 CIV. 2886 (AKH), 2025 WL 1301052, at *8 (S.D.N.Y. May 6, 2025); *D.B.U. v. Trump*, No. 1:25-cv-1163, 2025 WL 1304288, at *8 (D. Colo. May 6, 2025); *Savino v. Souza*, 453 F. Supp. 3d 441, 452 (D. Mass. 2020) (certifying Rule 23(b)(2) due process class, holding that "[t]he case law supports a finding of commonality for class claims against dangerous detention conditions, even when some detainees are more at risk than others").

More generally, courts regularly consider due process claims and provide categorical guidance as to what due process requires, including in class actions. *See, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 228–30 (2005); *Greene v. Lindsey*, 456 U.S. 444, 450–56 (1982); *Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974); *Goss v. Lopez*, 419 U.S. 565, 577–84 (1975); *see also G.F.F.*, 2025 WL 1301052, at *8 (holding that implementation of Proclamation must comply with AEA and due process); *A.S.R. v. Trump*, No. 3:25-CV-00113, 2025 WL 1378784, at *19–20 (W.D. Pa. May 13, 2025) (holding that the government's current notice protocols is insufficient).

Respondents misread *Jennings v. Rodriguez*, 583 U.S. 281 (2018), and *Reid v. Donelan*, 17 F.4th 1 (1st Cir. 2021). Opp. 18–19. First, neither case involved the straightforward question of what notice is due for individuals subject to the same policy. Second, the *Jennings* Court *did* decide several common legal issues, on a classwide basis, involving the application of constitutional avoidance to several detention statutes. 583 U.S. at 296–306. Because the Court rejected all those claims, the *only* remaining issue was the individualized claim that required due process balancing of case-specific facts for people detained under different authorities. *Id.* at 312. Similarly, in *Reid*, the First Circuit found class certification inappropriate because it had considered and rejected, on

a classwide basis, a bright-line rule for when prolonged detention violates due process. *See* 17 F.4th at 5. These cases reflect the proper course here: courts first address the common legal issues on a classwide basis, and only if those fail would individuals litigate whether they are properly designated as TdA members on their particular facts. *See, e.g.*, *Califano*, 442 U.S. at 698–701 (noting "the need for case-by-case adjudication" of individualized claims following resolution of the common challenge to the agency's notice and hearing procedure); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991) (resolving claim that arrest procedures were categorically deficient, while acknowledging that as-applied claims "in a particular case" would vary with context).

Certification under Rule 23(b)(2) is appropriate for largely the same reasons. *See Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 47 n.17 (D.D.C. 2007) ("An inquiry into whether the defendant acted on grounds generally applicable to the 23(b)(2) class is often considered to be encompassed by the commonality requirement of Rule 23(a)[.]"); *DL v. District of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017) ("Rule 23(b)(2) exists so that parties and courts, especially in civil rights cases like this, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief."). As long as a "single injunction" can remedy the harm class members face, class certification under Rule 23(b)(2) is proper. *DL*, 860 F.3d at 725 (quoting *Wal-Mart*, 564 U.S. at 360) (rejecting defendants' argument that "even if its policies run afoul of IDEA, there are many different reasons it might have denied a particular child a FAPE"). If the Proclamation or Respondents' implementation of the Proclamation is unlawful, all class members are entitled to the same injunction or declaratory relief—a single injunction may declare the notice procedures or Proclamation itself unlawful; order the government to apply the INA's removal procedures before removing anyone under the AEA; enjoin removals without an opportunity to

apply for humanitarian relief; require the government to facilitate the return of those deported in violation of the AEA or the Constitution; or require certain minimum notice procedures. *See R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 182 (D.D.C. 2015) ("A determination of whether that policy is unlawful would resolve all class members' claims 'in one stroke'" (quoting *Wal-Mart*, 564 U.S. at 350)).

Respondents' typicality arguments as to both classes are baseless.[3] With respect to the Criminal Custody Class, Respondents contend that factual differences in charges, pretrial detention findings, probability of conviction, and range of sentences mean that Petitioner T.C.I. may remain in criminal custody for a different amount of time than other members of the Criminal Custody Class. Opp. 16–17. But how long a class member remains in criminal custody is irrelevant. What matters for typicality is that the class representative and class members face the same principal injury from the same course of conduct, *see Bynum v. District of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003), and they do: all class members are in criminal custody; all class members are designated as "alien enemies" pursuant to the AEA; and all class members are challenging their resulting future AEA removal and confinement by Respondents. *See* Mot. 2; *Rumsfeld v. Padilla*, 542 U.S. 426, 438, 444 (2004) (discussing challenges to future confinement).

And factual differences in length of criminal incarceration do not affect the many claims T.C.I. raises that are typical of the entire Criminal Custody Class, including whether the AEA notice procedures are lawful; whether the Proclamation is invalid because there is no "invasion or predatory incursion" within the meaning of the AEA; whether the Proclamation is invalid because it does not target a "foreign nation or government"; whether the Proclamation improperly

---

[3] Respondents also contest the typicality of the original named plaintiffs' claims. As noted above, the original named plaintiffs are not part of the two designated classes. *See supra* n.1.

circumvents the INA's removal procedures; and whether the Proclamation improperly eliminates the screening requirements and substantive prohibitions for torture and persecution guaranteed by the Convention Against Torture and withholding statute. *J.D. v. Azar*, 925 F.3d 1291, 1321 (D.C. Cir. 2019) (affirming class certification where the class members' entitlement to relief "is entirely unaffected by the myriad factual differences noted by the government").[4]

The government also asserts that T.C.I.'s due process claim is not typical because he has already received notice and has not shown that other members of the putative class have received similar amounts of notice. Opp. 16–17. That argument is irrelevant because T.C.I.'s several claims challenging the Proclamation's validity are more than enough to justify class certification. But it is also wrong: The fact that T.C.I. has been provided a deficient notice does not resolve his due process claim, and the most basic notice requirements do not vary across individuals in the AEA context. For example, the government offers no reason why the procedural information in the notice forms should vary from person to person, or why the government should provide the factual bases for TdA allegations for some people and not others. And with respect to T.C.I. in particular, his due process claim is live and representative of the class's because his notice failed to satisfy due process. Among other things, it failed to specify the factual basis for the government's

---

[4] The government argues that some class members may be subject to the death penalty and will "likely" not be removed under the AEA, or that others may have criminal sentences that outlast the invocation of the AEA. Opp. 17. But the government has not foreclosed the possibility of removing individuals under the AEA while still serving their criminal sentences. *See* ECF No. 102-14 at 50 (Bukele offering to allow U.S. to "outsource" prison system); *cf.* Brian Mann, *'Homegrowns Are Next': Trump Hopes to Deport and Jail U.S. Citizens Abroad*, NPR (Apr. 16, 2025) (Trump considering criminal incarceration abroad), https://perma.cc/B2L9-LLL4.
Moreover, where Petitioners bring a "Rule 23(b)(2) class action advancing a uniform claim and seeking uniform injunctive and declaratory relief," "the inclusion in the class" of class members who do not suffer an injury "no more gives rise to an Article III concern than it poses a problem under Rule 23(a)." *J.D.*, 925 F.3d at 1324–25; *see also DG*, 594 F.3d at 1198 ("[A] class will often include persons who have not been injured by the defendant's conduct . . . . Such a possibility or indeed inevitability does not preclude class certification." (quoting *Kohen*, 571 F.3d at 677)).

designation or how to challenge his designation, and it was read to him only in English. *See* ECF No. 102-13. Thus, the government's contention that T.C.I. and other named petitioners "do not even have standing to contest the adequacy-of-notice claim" is simply incorrect. Opp. 16. None of the named petitioners have received, for example, notice of the factual basis for the government's allegations against them. *See also* ECF No. 67-1 at 2–3 (describing deficiencies in the notices provided to other petitioners); ECF No. 102-14 at 10, 12 (notice forms include no factual basis for designation).

The government's position would put those in the Criminal Custody Class in an impossible catch-22 as to their notice claim. On the government's view, a named petitioner like T.C.I. who received a notice (even a legally inadequate one) and who managed to file a habeas petition is not "typical" of the class. But the government also takes the position that a person who has not received a notice has no standing to bring their challenge. *See, e.g.*, *D.B.U.*, 2025 WL 1304288, at *2. In other words, no class representative would ever be able to bring a claim about the inadequate procedures. That means class members—individuals in criminal custody who have been designated but have *not* received notice—will be entirely in the dark because they will have no reason to know they should challenge the inadequate notice process or their designation. By the time those individuals learn of their designation as TdA members, it will likely be too late to bring a challenge, especially because the government claims it has no ability to rectify their wrongful removal once they end up at CECOT. Regardless, "there is nothing in Rule 23(a)(3) which requires the named plaintiffs to be clones of each other or clones of other class members." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 261 (D.D.C. 2002) (citation omitted). "[L]imited factual distinctions between class members do[] not destroy typicality," and Petitioners' "claims are typical if they arise from the same course of events"—the Proclamation—"and class members

make similar legal arguments." *Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 420 (D.D.C. 2017).

Respondents also argue that the named CECOT Petitioners' claims are not typical, asserting that some CECOT detainees may have removal orders under both the AEA and the INA. Opp. 17 ("Some detainees at CECOT may have final orders of removal under the INA and thus would not have the right to return to the United States, regardless of the validity of *their removals under the AEA*.") (emphasis added). For purposes of certification for a preliminary injunction, however, the CECOT Petitioners seek to represent a class consisting of only those removed to CECOT based solely on the AEA.[5]

For these reasons, courts in AEA cases across the country have certified district-wide habeas classes and granted classwide injunctions. *See, e.g., J.A.V.*, 2025 WL 1256996, at *6; *D.B.U. v. Trump*, No. 1:25-CV-01163-CNS, 2025 WL 1304198, at *10 (D. Colo. May 6, 2025); *G.F.F. v. Trump*, No. 25 CIV. 2886 (AKH), 2025 WL 1166482, at *3 (S.D.N.Y. Apr. 9, 2025), *amended*, 2025 WL 1166909 (S.D.N.Y. Apr. 11, 2025); *A.S.R. v. Trump*, No. 3:25-cv-113, 2025

---

[5] The government's claim here that there are hybrid INA-AEA individuals, and its prior representations that the individuals on the third plane were not removed "solely" on the basis of the AEA raise further questions regarding Respondents' reliance on the AEA to deport individuals on that third plane on March 15 to CECOT, and their compliance with the Court's original classwide temporary restraining order. *See* ECF No. 28-1 (Cerna Decl.) ¶ 6 ("The third plane departed after that time [of the Court's TRO], but all individuals on that third plane had Title 8 final removal orders and thus were not removed *solely* on the basis of the Proclamation at issue.") (emphasis added). Thus, Petitioners reserve the right to seek certification of a class of CECOT Venezuelan detainees who fall into this dual status—*i.e.*, individuals removed from the United States based on a final immigration order designating Venezuela as the country of removal, but who ended up at CECOT apparently based on the AEA.

WL 1208275, at *4 (W.D. Pa. Apr. 25, 2025);[6] *but see W.M.M. v. Trump*, No. 1:25-CV-059-H,

2025 WL 1358476 (N.D. Tex. May 9, 2025).[7]

**B.    Both Classes Satisfy Ascertainability and Numerosity.**

As previously briefed, "[i]t is 'far from clear,' . . . 'that there exists in this district a

requirement that a class certified under Rule 23(b)(2) must demonstrate ascertainability to merit

certification.'" *O.A. v. Trump*, 404 F. Supp. 3d 109, 159 (D.D.C. 2019) (citation omitted).

Although "the D.C. Circuit has not opined on the requirement," ascertainability "has been recently

disavowed by four federal appellate courts." *Id*. at 159–60 (citing *Hoyte*, 325 F.R.D. at 489 n.3).

That is "consistent with the intent of the drafters of Rule 23(b)(2), who explicitly endorsed its use

in cases such as this that challenge widespread illegal practices because the class members are

often 'incapable of specific enumeration.'" *DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C.

2013). Regardless, both classes would satisfy any ascertainability requirement.

The government claims that the classes are not ascertainable, but they are specifically

defined as persons identifiable by criteria known by the government. Indeed, the government

cannot credibly argue that it does not know whom *the government* itself has identified as "subject

to" the Proclamation—including those who have received notices of TdA membership, those

---

[6] The *A.S.R.* court later decertified the class, but solely on the basis of supposed lack of numerosity, relying on the government's representation that there were no designated individuals in the district. *See* Order, *A.S.R. v. Trump*, No. 3:25-cv-113 (W.D. Pa. May 13, 2025), ECF No. 74 at 5–8.

[7] Counsel in *W.M.M.* have filed a motion for reconsideration of the district court's class certification ruling. *See* Mot. to Reconsider, *W.M.M. v. Trump*, No. 1:25-CV-059-H (May 12, 2025), ECF No. 68. Among other errors, the court in *W.M.M.* incorrectly held that the mere existence of individualized claims defeated class certification, even for common claims that could "render classwide relief appropriate." 2025 WL 1358476, at *17–18. It also held, contrary to the Supreme Court's April 7 *J.G.G* ruling, that "injunctive relief" might be unavailable to prevent removal under the AEA because the "sole function of habeas corpus is to provide relief from unlawful imprisonment or custody." *See id.* at *19; *but see J.G.G.*, 145 S. Ct. at 1005 ("Challenges *to removal* under the AEA . . . must be brought in habeas." (emphasis added)).

whom they have already removed to CECOT, and those whom the government intends to remove pursuant to the AEA. *See* ECF No. 28-1 (Cerna Decl.) ¶ 6 (identifying 86 individuals in custody, including 32 in criminal custody, and 172 on the non-detained docket); *see also* Supp. Mem. at 2, 11, *A.A.R.P. v. Trump*, No. 24A1007 (May 12, 2025) (identifying 176 putative class members in one district). The fact that both classes contain "'future claimants' without limitation," Opp. 20, makes no difference, as courts routinely certify classes with future, unknown members, so long as membership is "defined by clear and objective criteria." *See O.A.*, 404 F. Supp. 3d at 160 (class of asylum seekers who cross the southern border outside of a port of entry after a specified date); *see also J.D.*, 925 F.3d at 1322–23 (affirming certification of "a class consisting of all pregnant unaccompanied minors who are or will be in ORR custody" and noting that "classes including future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class members, much less joining them'" (citation omitted)).

Respondents raise concerns that they lack information about designated TdA members in state criminal custody (though they do not raise, and therefore waive, this particular argument as to those in federal criminal custody). Opp. 20. But even accepting the government's premise that it cannot ascertain the location or custodial status of certain individuals in state custody, the government plainly knows *the identity* of those class members. Thus, if these individuals ever come into federal custody, or if Respondents obtain additional information about their location through other means, Respondents would know that they fall within the class and would be subject to any orders of this Court regarding that class.

As to the CECOT Class, Respondents do not contest that they can ascertain who they delivered to the Salvadoran prison on March 15. That alone is sufficient to meet the lenient ascertainability requirement in a (b)(2) case. Respondents instead revert to rehashing their

constructive custody arguments to suggest that the United States cannot ascertain whether El Salvador has relocated any individuals to a different prison—although Respondents never contend that El Salvador has *refused* to provide that information.[8] And to the extent the Court finds constructive custody over the CECOT Class, it follows that the United States can obtain information regarding which individuals remain in U.S.-funded detention in El Salvador. Respondents' concern about individuals who have been released is purely hypothetical and, in any event, not something that would escape attention. Indeed, families and attorneys of those deported to CECOT still have not heard anything from that group for the last two months.[9]

Lastly, the government argues that numerosity is not satisfied, but their own records reflect that there are easily enough CECOT and Criminal Custody class members to make joinder impracticable, Mot. 8–9, especially since the two classes contain future, unknown members. *See J.D.*, 925 F.3d at 1322 ("[C]lasses including future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class members, much less joining them.'" (quoting 1 Newberg & Rubenstein on Class Actions § 3:15)).[10] Petitioners have already pointed to evidence of at least 137 individuals removed to the CECOT prison on March 15 under the AEA; evidence of over 30 people in criminal custody who are alleged by Respondents to be TdA members; and the government's own statements that they continue to identify more TdA members

---

[8] Notably, El Salvador's Vice President has stated that "la calidad de los internos o de la persona que viene no la califica El Salvador; la califica el Estado que pide la prestación de servicio" [the status of detainees or the people who come here isn't assessed by El Salvador; it's assessed by the state that requests the service]. Florent Zemmouche, Grand Continent, *Entrevista con el Consigliere de Bukele* (May 6, 2025), https://perma.cc/RD4Q-XH9J.

[9] Daniella Silva, *Anguished Families Are Losing Hope as They Can't Reach Loved Ones Sent to El Salvador Mega-Prison*, NBC News (May 7, 2025), https://perma.cc/46M9-VCJF.

[10] Respondents cite *Reed v. Bowen*, 849 F.2d 1307 (10th Cir. 1988), Opp. 21, but that case did not even address numerosity. *See Reed*, 849 at 1309 (addressing denial of class based on lack of sufficient commonality, live controversy, and adequate plaintiffs with a stake in the litigation).

subject to removal. Mot. 8. Considering the fluid nature of the classes and the lack of financial resources of class members, Petitioners easily clear this hurdle. *See J.D.*, 925 F.3d at 1323.

## III.    A Habeas Class Action Is Not Only Proper, but Necessary.

All of the circuit courts to address the issue, including the D.C. Circuit, have found that habeas petitioners can litigate common claims through a class action or similar procedure available at equity. *See, e.g.*, *LoBue v. Christopher*, 82 F.3d 1081, 1085 (D.C. Cir. 1996); *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975); *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974); *Williams v. Richardson*, 481 F.2d 358 (8th Cir. 1973); *Mead v. Parker*, 464 F.2d 1108, 1112 (9th Cir. 1972); *Napier v. Gertrude*, 542 F.2d 825, 827 & n.5 (10th Cir. 1976); *see also Monk v. Shulkin*, 855 F.3d 1312, 1319 (Fed. Cir. 2017). Respondents unsuccessfully attempt to distinguish some of these cases, Opp. 27–28, but overlook the relevant discussion about the availability of class habeas. In particular, in *LoBue*, the district court had certified a class and on appeal, the D.C. Circuit rejected an intervenor–appellant's argument that the petitioner "could not have maintained a class action . . . nor sought class-wide relief in those proceedings," and explicitly pointed out that "courts have in fact developed such equivalents" of class actions in habeas. *LoBue*, 82 F.3d at 1085 (citing *Sero*, 506 2d. at 1125–30). Nor did the court, as Respondents claim, note that "such a class cannot assert the rights of class members not yet in custody." Opp. 27. And other courts have repeatedly held that habeas claims may be pursued in a Rule 23 class action or a similar mechanism available at equity. *See, e.g.*, *Sero*, 506 F.2d at 1125 (the Supreme Court "confirms the power of the judiciary, under the All Writs Act, . . . to fashion for habeas actions 'appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage'" (citing *Harris v. Nelson*, 394 U.S. 286 (1960)); *Bijeol*, 513 F.2d at 968 (agreeing with *Sero* that "a representative procedure analogous to the class action provided for in Rule 23 may be appropriate

in a habeas corpus action" like the one at issue); *Williams*, 481 F.2d at 361 ("under certain circumstances a class action provides an appropriate procedure to resolve the claims of a group of petitioners and avoid unnecessary duplication of judicial efforts"); *Mead*, 464 F.2d at 1112–13 ("there can be cases, and this is one of them, where the relief sought can be of immediate benefit to a large and amorphous group. In such cases, it has been held that a class action may be appropriate"); *Napier*, 542 F.2d at 827 & n.5 (recognizing "class treatment" with "reference to Rule 23 in proper circumstances"); *see also Monk*, 855 F.3d at 1319 ("We see no principled reason why the Veterans Court cannot rely on the All Writs Act to aggregate claims[.]").

The Court should thus either grant class certification under Rule 23(b)(2), as discussed above, or the Court can use Rule 23 as a guidepost to certify both classes in equity pursuant to the All Writs Act. *See, e.g.*, *Streicher v. Prescott*, 103 F.R.D. 559, 561 (D.D.C. 1984) (applying the criteria for class certification under Rule 23 to certify a habeas class even though the court determined that "the precise requirements of Fed. R. Civ. P. 23 do not apply to habeas corpus proceedings"). Petitioners satisfy either test, and are not seeking anything beyond what other courts have done, including multiple district courts in the AEA context. *See, e.g.*, *J.A.V.*, 2025 WL 1256996, at *6; *supra* at 12–13.

Respondents cite broad principles about the All Writs Act that do not apply here, Opp. 23, because there is jurisdiction to certify the classes as previously discussed, *supra* at 2–3, and the relief sought here—habeas relief—is a traditionally equitable remedy, *see Harris*, 394 U.S. at 300. Moreover, as multiple courts have affirmed, the judiciary possesses the power "under the All Writs Act, 28 U.S.C. § 1651 (1970), to fashion for habeas actions 'appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage.'" *Sero*, 506 F.2d at 1125 (quoting *Harris*, 394 U.S. at 299). Thus, regardless of whether there were class habeas cases prior

to Rule 23's enactment in 1938, the availability of class habeas is established in this and all other circuits to address the issue. *See supra*.

The government asserts that named Petitioners proceeding as "next friend" on behalf of their loved ones detained in CECOT may not serve as class representatives, but they cite no applicable case law to support such a proposition. Opp. 22–23; *see also id*. 25–27. In fact, it is common for cases brought on behalf of minors, by and through their parents or guardians, or on behalf of detained individuals who are otherwise not capable of moving on their own behalf, to proceed as a class. *See, e.g.*, *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 505, 534 (D.D.C. 2020) (provisionally certifying class of unaccompanied noncitizen minors where named plaintiff was a 16-year-old proceeding through his father in the United States); *Salazar v. District of Columbia*, 954 F. Supp. 278, 280 & n.2 (D.D.C. 1996) (certified class action with minor plaintiffs proceeding by and through their parents); *Groseclose v. Dutton*, 788 F.2d 356, 357 (6th Cir. 1986) (class action originally brought by multiple parties proceeding as next friend of medically incapacitated death row inmate). Courts evaluate whether an individual may proceed as "next friend" separately from whether the party that they are standing in for serves as an adequate class representative. *See Ali v. Ashcroft*, 213 F.R.D. 390, 406–07 (W.D. Wash.) ("The requirements of Fed. R. Civ. P. 23, not the doctrine of next friend standing, sufficiently address whether the individual Petitioners and their attorneys are appropriate class representatives."), *aff'd,* 346 F.3d 873 (9th Cir. 2003), *opinion withdrawn on denial of reh'g sub nom. Ali v. Gonzales*, 421 F.3d 795 (9th Cir. 2005), *as amended on reh'g* (Oct. 20, 2005); *see also Youakim v. Miller*, 425 U.S. 231, 236 n.2 (1976) (treating "whether the District Court properly identified the Rule 23(b)(2) class" as an independent inquiry from "whether appellant Linda Youakim properly sued as 'next friend' of her four brothers and sisters"); *Bryan C. v. Lambrew*, 340 F.R.D. 501, 514–15 (D. Me. 2021)

(analyzing propriety of next friend representation prior to the motion to certify the class). That is because "[a] 'next friend' does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest." *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990). The government is simply wrong to assert that the "next friend" is proceeding on behalf of the class; rather, it is the person who the "next friend" stands in for that serves as the class representative, and Respondents have identified no conflicts or inability of the named Petitioners to serve as class representatives.

Nothing about habeas petitions renders them unfit for class treatment where, as here, class members raise common issues. While certain claims brought in habeas may be individualized—for instance, whether a person's prior conviction should be upheld—Petitioners here raise threshold, facial challenges to the AEA Proclamation and its implementation. *Supra*. The government's citation to the dissent in *A.A.R.P. v. Trump*, 145 S. Ct. 1034 (2025), Op. 27, not only ignores the Supreme Court's decision to stay removals on behalf of a putative habeas class, *A.A.R.P.*, 145 S. Ct. at 1034 , it also fails to address the reasons why equity demands class treatment in this context. Members of the proposed classes are in detention—the CECOT Class, entirely incommunicado—and generally lack resources, English proficiency, familiarity with the U.S. legal system, and access to counsel to bring their own cases.

If people designated under the AEA are forced to litigate their claims on an individual basis under Respondents' notice regime, many, if not most, designees will be permanently consigned to a notorious Salvadoran prison without ever obtaining judicial review. This too weighs in favor of permitting a class to litigate the threshold legal questions under either Rule 23 or in equity. *See, e.g.*, *U.S. ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976) ("Only a representative proceeding avoids a multiplicity of lawsuits and guarantees a hearing for individuals, such as many

of the class members here, who by reason of ignorance, poverty, illness or lack of counsel may not have been in a position to seek one on their own behalf."); *Sero*, 506 F.2d at 1126 (similar); 2 Newberg & Rubenstein on Class Actions § 4:35 (6th ed.) (discussing "critical safeguards for class members that certification alone can provide").

## CONCLUSION

The Court should certify the CECOT Class and the Criminal Custody Class.

Dated: May 14, 2025

Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo (D.D.C. Bar No. CA00219)
Cody Wofsy
Spencer Amdur
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
nsmith@aclu.org
osarabia@aclu.org
mngo@aclu.org
cwofsy@aclu.org
samdur@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Aditi Shah (D.C. Bar No. 90033136)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org
ashah@acludc.org

Respectfully submitted,

/s/ *Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
Daniel Galindo (D.D.C. Bar No. NY035)
Ashley Gorski
Patrick Toomey
Sidra Mahfooz
Omar Jadwat
Hina Shamsi (D.D.C. Bar No. MI0071)
Michael K.T. Tan*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org
ptoomey@aclu.org
smahfooz@aclu.org
ojadwat@aclu.org
hshamsi@aclu.org
m.tan@aclu.org

Somil B. Trivedi (D.C. Bar No. 1617967)
Bradley Girard (D.C. Bar No. 1033743)
Michael Waldman (D.C. Bar No. 414646)
Sarah Rich
Skye Perryman (D.C. Bar No. 984573)
Audrey Wiggins (DC Bar No. 482877)
Christine L. Coogle (DC Bar No. 1738913)

Pooja Boisture
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 796-4426
strivedi@democracyforward.org
bgirard@democracyforward.org
mwaldman@democracyforward.org
srich@democracyforward.org
sperryman@democracyforward.org
awiggins@democracyforward.org
ccoogle@democracyforward.org
pboisture@democracyforward.org

*Attorneys for Petitioners-Plaintiffs*
*Admission to DDC Bar pending*