IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| J.G.G. et al.,<br><br>    *Plaintiffs*;<br><br>LIYANARA SANCHEZ, as next friend on behalf of FRENGEL REYES MOTA, et al.,<br><br>    *Petitioners–Plaintiffs*,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>    *Respondents–Defendants*. | Case No. 1:25-cv-00766-JEB<br><br><br><br><br><br><br>**RESPONDENTS–DEFENDANTS' MOTION TO STAY ORDER PENDING APPEAL** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 5

    I.    The Government Is Likely to Prevail on the Merits. ............................... 5

        A.    Because there is no constructive custody, this Court lacked jurisdiction. ................................................................................... 6

        B.    Plaintiffs cannot bring a freestanding, retrospective due-process claim for injunctive relief. ............................................... 10

    II.    The Remaining Equitable Factors Favor a Stay. .................................. 15

CONCLUSION ................................................................................................................... 16

## INTRODUCTION

After reviewing highly sensitive diplomatic documents, this Court correctly concluded that the United States does not have constructive custody over Tren de Aragua members being detained by El Salvador. That should have ended this habeas case. Instead, this Court has mistakenly maintained its jurisdiction by way of an implied cause of action for due process. Such a claim still sounds in habeas, however. Moreover, this Court then ordered Respondents to facilitate the filing of habeas even though there is no habeas jurisdiction. That was an impermissible equitable remedy. Even if the class members could file habeas (as the named Petitioners had) there would be no jurisdiction. So the only way to facilitate the filing of meaningful habeas petitions would be to force the Executive to engage in diplomatic negotiations to regain custody over the petitioners.

As the Supreme Court held previously in this case, such a remedy is out of bounds. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025) (per curiam). There is no habeas jurisdiction, so Plaintiffs cannot bring their claims. And an injunction is improper because such a remedy relies on the independent choices of a sovereign nation. Based on the same evidence this Court relied on in finding no constructive custody, it is completely speculative that a court order could result in Defendants' regaining custody and thus redress Plaintiffs' injury. So there is no basis to order a sweeping injunction against the Government. And any possible remedy would violate the separation of powers.

Because Defendants can establish at least a substantial question on the merits and will be irreparably injured—along with the public interest—if forced to commit

1

to a course of foreign action within the week, and because Plaintiffs will suffer no harm fairly traceable to Defendants from a stay of this Court's order, this Court should stay its order pending Defendants' appeal. Due to this Court's immediate deadline, Defendants moved for a stay in the court of appeals contemporaneously.

## BACKGROUND

On March 15, 2025, the President issued a Proclamation invoking the Alien Enemies Act to detain and remove members of Tren de Aragua ("TdA"), an entity that the State Department has designated a foreign terrorist organization. *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua*, 90 Fed. Reg. 13,033. The Proclamation authorizes the detention and removal under the AEA of "all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States." *Id.* § 1; *see also id.* § 3.

Also on March 15, five Venezuelan nationals detained at an immigration detention center in Texas sued in the District of Columbia to block the Government from removing them under the Proclamation. Although they initially sought relief under both the Administrative Procedure Act (APA) and by a writ of habeas corpus, those plaintiffs later dismissed their habeas claims at this Court's suggestion. ECF 20 at 22:1–3. This Court granted an injunction as to those plaintiffs, certified a class of "[a]ll noncitizens who were, are, or will be subject to the Alien Enemies Act Proclamation," and issued a second injunction as to that class. Second March 15 Minute Order.

The Government appealed both injunctions and filed emergency motions for stays pending appeal. The court of appeals issued a divided ruling denying a stay, each judge writing separately. *J.G.G. v. Trump*, 2025 WL 914682, at *1 (D.C. Cir. Mar. 26, 2025). The Supreme Court then vacated the orders for lack of jurisdiction, finding that those plaintiffs' claims fell "within the 'core' of the writ of habeas corpus and thus must be brought in habeas," and "[f]or 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement,'" which was not the District of Columbia. *J.G.G.*, 145 S. Ct. at 1005.

By the time this Court issued its second injunction on March 15, some members of the CECOT class members had already been removed from the United States. They later arrived in El Salvador and were detained under El Salvador's own authority. Redacted Kozak Decl., ¶¶ 9–10. That led to a second (and now a third) round of the litigation.

On April 16, this Court issued an order finding probable cause that the Government was in criminal contempt of its vacated orders for having failed to return to the United States the aliens who had been removed *before* the relevant order issued. ECF 80. This Court offered that the Government could "purge" its contempt "by asserting custody of the individuals who were removed," so they could seek habeas review. ECF 81 at 43–44. Otherwise, this Court said that it would seek prosecution of the responsible officials, including by appointing a private prosecutor if necessary. *Id.* at 44.

The Government immediately sought relief, based on that order's dramatic infringement of the separation of powers: The President either had to give up his *foreign-affairs* power by asserting custody over aliens held by a foreign sovereign, or else give up his *prosecutorial* power by pursuing contempt charges against his own officials. The court of appeals granted an administrative stay that remains in place. *See J.G.G. v. Trump*, 2025 WL 1151208, at *1 (D.C. Cir. Apr. 18, 2025).

Separately, this Court invited Plaintiffs to amend their complaint to address factual developments since March. A new set of Petitioners–Plaintiffs, most of whom were already confined in El Salvador, then joined the case. ECF 101, ¶¶ 12–17. They sought a writ of habeas corpus, and moved to certify a class consisting of "[a]ll noncitizens in custody at the Terrorism Confinement Center ('CECOT') in El Salvador who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua' and/or its implementation." ECF 103-3, ¶ 3(a).

These plaintiffs then moved for a preliminary injunction directing the Government to "to immediately request and take all reasonable steps to facilitate (i) the release of the CECOT Subclass from the CECOT prison in El Salvador, and (ii) the return of the CECOT Subclass to the United States." ECF 102-15, ¶ 1.

In opposition, the Government pointed out that this Court lacked habeas jurisdiction because the United States does not have constructive custody over these plaintiffs. ECF 108, at 5–12. After a hearing and after the Government filed under seal documents demonstrating that the United States lacks constructive custody over

4

the CECOT detainees, *see* ECF 118-1 to -6, this Court ordered additional discovery into the issue of constructive custody.

Following subsequent productions and further briefing, this Court held that it lacked jurisdiction over the CECOT detainees' habeas claims because they had not shown that they were in the United States' custody. ECF 148 ("Op.") at 15–27.

Nevertheless, this Court held that it did have jurisdiction in equity over these plaintiffs' freestanding claim that their removal to El Salvador violated their due-process rights. *Id.* at 27–31. This Court then unilaterally modified the putative class and certified it as modified. *Id.* at 63. This Court granted a preliminary injunction based on this due-process claim, ordering the Government to "facilitate the ability of the CECOT Class to seek habeas relief." ECF 147 at ¶ 3. The Government is moving for a stay pending appeal in the court of appeals contemporaneously.

## LEGAL STANDARD

In considering whether to grant a stay pending appeal, courts asks whether the applicant (1) "is likely to succeed on the merits," (2) "will be irreparably injured absent a stay," (3) whether a stay will not "substantially injure" other interested parties, and (4) whether a stay is in the "public interest." *Nat'l Treasury Emps. Union v. Trump*, 2025 WL 1441563, at *1 (D.C. Cir. May 16, 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

## ARGUMENT

I.   **The Government Is Likely to Prevail on the Merits.**

The Government is likely to succeed on appeal. This Court agreed that the United States does not have actual or constructive custody over plaintiffs, and

5

therefore that there is no jurisdiction for their claims in habeas. Yet this Court *sua sponte* recognized a freestanding due-process claim by which plaintiffs could seek the opportunity to pursue habeas relief. That does not cure the jurisdictional problem. Further the lack of custody means the Government cannot "facilitate" habeas review—at least not without engaging in military or diplomatic efforts that courts lack authority to order. Plaintiffs thus cannot seek equitable relief for past due-process violations.

### A. Because there is no constructive custody, this Court lacked jurisdiction.

The Supreme Court made clear that challenges to the Proclamation (or to detention or removal pursuant thereto) must be brought in habeas in the district of confinement. *J.G.G.*, 145 S. Ct. at 1005. Since plaintiffs are being held in El Salvador, this Court could only have habeas jurisdiction over this case if the Government had constructive custody. Based on the evidence produced below, this Court correctly concluded that the United States does *not* have constructive custody. Op. at 22–27.

Constructive custody exists only if "the imprisoning sovereign is the respondent's agent." *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 47 (D.D.C. 2004). Here, however, the evidence shows that plaintiffs are being held under the authority of El Salvador alone. *See* Op. at 24; ECF 129 at ¶¶ 9–10. Nor does the United States have control or even a presence at the detention facility. *See Al Maqaleh v. Gates*, 605 F.3d 84, 97 (D.C. Cir. 2010) (lack of control over leased Air Force base meant no habeas). Based on a fulsome record following jurisdictional discovery, this Court correctly ruled that the United States lacks constructive custody over the aliens held at

6

CECOT and therefore that this Court lacks jurisdiction over their habeas claims. Op. at 27.

That should have been the end of this case. Indeed, as to the aliens held in El Salvador, this was the only theory that plaintiffs' counsel even pursued below. *See* ECF 102 (no mention of equitable claim for due process). Instead, this Court *sua sponte* reasoned that it could exercise jurisdiction over a standalone due process claim targeting the Government's failure to provide sufficient notice to plaintiffs before they were removed under the AEA. Op. at 30.

Doing so was in error, even apart from the merits. The Supreme Court has made clear that courts are not advocates; they must evaluate the theories pressed to them, not come up with their own. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). As to the so-called CECOT Class, Plaintiffs here sought relief solely on a habeas theory of constructive custody. Having rejected that theory, this Court should not have developed a substitute alternative due-process theory on its own accord.

That theory was also plainly wrong. This retrospective claim of inadequate notice is, in purpose and effect, a challenge to plaintiffs' removal. It therefore sounds in habeas—no less than the constitutional claims asserted by the original plaintiffs, which the Supreme Court held had to be pursued through habeas.

As the Supreme Court said in rejecting this Court's first set of orders, because plaintiffs' "claims for relief 'necessarily imply the invalidity' of their confinement and removal under the AEA, their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *J.G.G.*, 145 S. Ct. at 1005 (quoting *Nance v.*

7

*Ward*, 597 U.S. 159, 167 (2022)). Applying this logic, the Supreme Court vacated this Court's orders that were, in part, premised on a due-process claim that plaintiffs did not receive adequate notice prior to removal. *Id.* at 1006; ECF 1 at ¶¶ 101–04. This Court's due process claim is no different. Since that claim is not brought in habeas (because there is no habeas jurisdiction), this order fails just like the first.

This Court's new due process claim sounds in habeas for at least two reasons. *First*, notice is core to due process and "due process rights have historically been vindicated by the writ of habeas corpus." *Hamdi v. Rumsfeld*, 542 U.S. 507, 555 (2004) (Scalia, J., dissenting). So due-process claims are core habeas claims. *See Brown v. Davenport*, 596 U.S. 118, 128–29 (2022) ("[H]abeas was no less than 'the instrument by which due process could be insisted upon.'").

*Second*, the point of the due-process claim is to challenge the validity of plaintiffs' removal. Their argument is that they did not get enough process prior to removal and thus were unable to dispute the basis for that removal. *See* Op. at 67; *I.M. v. U.S. Customs & Border Prot.*, 67 F.4th 436, 443 (D.C. Cir. 2023) (rejecting argument that request for a hearing by itself did not reflect a habeas remedy, as it is sufficient that "a removal hearing *can* result in release"). This Court acknowledged this when it said that the violation requires "restoration of the status quo ante and an injunction barring deprivation of the plaintiff's rights without the requisite procedural protections." Op. at 36 (quotation omitted). Restoration of the status quo means undoing the removal, thus "necessarily imply[ing] the invalidity" of the removal. *J.G.G.*, 145 S. Ct. at 1005.

8

This Court's attempt to separate the pre-removal due-process challenge from a challenge to the invalidity of the removal is unavailing. Op. at 30. If this Court were right, due-process challenges to a criminal defendant's trial would not challenge the validity of the conviction. But such due process claims are core to habeas and cannot be brought through standalone equitable challenges. *See Mack v. City of Chicago*, 723 F. App'x 374, 376 (7th Cir. 2018) ("Mack's due-process claim based on an unfair criminal trial necessarily would impugn the validity of his conviction"); *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) ("[A] § 1983 claim for a due process violation based on the denial of a fair criminal trial may be brought only after the conviction is set aside."). The same is true for challenges to a lack of notice prior to a hearing. *See Early v. Blankenship*, 221 F.3d 1342 (8th Cir. 2000) (challenge to notice of disciplinary hearing "would necessarily imply the invalidity of [the] disciplinary result" and thus must be brough in habeas). The due-process claim strikes at the heart of the validity of the removals, and packaging the claim as notice-related does nothing to change that fact

The analysis is not helped by the Supreme Court's dicta that it is "skeptical of the self-defeating notion that the right to the *notice* necessary to actually seek habeas relief . . . must *itself* be vindicated through individual habeas petitions, somehow by plaintiffs who have not received notice." *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1370 (2025) (cleaned up). The majority in *A.A.R.P.* was responding to the dissent's arguments regarding classwide relief and defending the proposition that such claims could proceed for a putative class—not that they could proceed outside of habeas. *Id.*

9

Indeed, that case *was* a habeas action, filed in the correct venue and challenging a notice procedure prospectively before removal. *Id.* Nothing in *A.A.R.P.* calls into the question the Supreme Court's ruling in this case, just weeks earlier, that challenges to AEA detention or removal must proceed in habeas. And if anything, this Court's due-process theory here is even more of a "core" habeas challenge given that it involves removals that have already occurred (and thus that would necessarily be invalidated if plaintiffs prevail). Plaintiffs' habeas claims simply cannot be transmuted into a standalone due-process claim.

## B. Plaintiffs cannot bring a freestanding, retrospective due-process claim for injunctive relief.

Regardless of whether this Court could exercise jurisdiction over these due-process claims, this Court's injunction fails because the purely retrospective due-process violation that this Court identified is not redressable in equity. Indeed, there is no way for this Court to order effective injunctive relief. Plaintiffs are not in United States custody. And the separation of powers prevents this Court from ordering the Executive to retake custody from El Salvador—that would be akin to ordering an invasion of a foreign country or a directive to negotiate a diplomatic deal, neither of which falls within the scope of the Judicial power.

Again, this Court correctly recognized that the United States does not have constructive custody over plaintiffs, and so this Court lacked jurisdiction to hear their habeas challenges. Op. at 23–24. Still, this Court ruled that plaintiffs' due-process rights were violated when they were removed to El Salvador without enough notice to allow them to file for habeas. *Id.* at 39. And, to remedy that injury, this Court

10

ordered the Government to "facilitate Petitioners' ability to proceed through habeas." *Id.* at 67. Even assuming jurisdiction, that remedy is internally contradictory. Because the Government lacks constructive custody, the Government cannot facilitate plaintiffs' ability to file for habeas.

Insofar as this Court intended for the Government to facilitate the filing of habeas petitions *in the United States* while plaintiffs remain *in custody in El Salvador*, the problem is obvious: As this Court correctly ruled, no federal court would have jurisdiction over these habeas petitions because the United States does not exercise custody over plaintiffs. *Id.* at 27. The ability to file a petition that no court would have jurisdiction over is no remedy at all. It would not meaningfully provide plaintiffs with the ability to be heard and bring their claims, the very injury this Court seeks to redress. *Id.* at 39.

Indeed, this case proves the point. The named petitioners were able to file habeas petitions through next friends. *Id.* at 15. Yet this Court still lacked habeas jurisdiction because the Government does not have custody over those plaintiffs. *Id.* at 27. In short, because plaintiffs cannot seek habeas relief, there is nothing to "facilitate."

Insofar as this Court instead intended for the Government to facilitate the filing of habeas petitions by *regaining custody*, that mirrors the extraordinary and impermissible relief that this Court already twice attempted to impose—but that reviewing courts twice rejected. *See J.G.G.*, 145 S. Ct. at 1005 (vacating orders that purported to require the Government to retain custody over aliens subject to

11

Proclamation); *J.G.G.*, 2025 WL 1151208, at *1 (granting administrative stay of order threatening criminal prosecution unless the Government reasserted custody).

Separation-of-powers principles foreclose this Court's third attempt to do the same thing. To regain custody of plaintiffs, the Government would have to take active steps either to compel or persuade the Salvadoran government to release them from its custody. This Court's order thus requires the United States to commit to a course of military or diplomatic action.

That remedy unconstitutionally intrudes on the Executive's plenary power over foreign affairs. "Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952). Article II "authorizes the Executive to engag[e] in direct diplomacy with foreign heads of state and their ministers," *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 14 (2015), which is why the Supreme Court has "taken care to avoid 'the danger of unwarranted judicial interference in the conduct of foreign policy,'" *Biden v. Texas*, 597 U.S. 785, 805 (2022). This Court's order impermissibly seeks to wrestle this complex matter of foreign affairs away from the Executive. In doing so, it violates the separation of powers. *See United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) ("[T]he President alone has the power to speak or listen as a representative of the nation."). "It is trite, but true, that not every wrong has a remedy." *Vasapolli v. Rostoff*, 39 F.3d 27, 30 (1st Cir. 1994).

Article III further bars the relief this Court ordered. As this Court agreed, plaintiffs "bear the burden" of "demonstrat[ing] standing for each claim that they press." Op. at 52–53. For standing, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). And when "existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to . . . permit redressability of injury." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs can only demonstrate redressability in such cases if "substantial evidence of a causal relationship between the government policy and the third-party conduct . . . leav[es] little doubt as to . . . the likelihood of redress." *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665–66 (D.C. Cir. 2025). Simple "guesswork as to how independent decisionmakers will exercise their judgment" is insufficient. *Id.*

Here, as this Court found, El Salvador is not "indifferent" to plaintiffs' detention and has itself chosen "for reasons far outside the ken of a federal district court . . . to detain Plaintiffs at CECOT." Op. at 24. In anticipating that the United States would be able to regain custody simply by asking, mere "guesswork" is all plaintiffs have. *Hecate Energy*, 126 F.4th at 665. They provided no facts suggesting that El Salvador would likely transfer custody if a court ordered the United States to

13

facilitate such a transfer. To the contrary, the very facts this Court relied on to find no constructive custody prove otherwise: El Salvador has chosen to detain plaintiffs on its own and maintains control over their detention, outside access, and even transfers, without American input. Op. at 22; *see also id.* (observing that El Salvador offered to trade plaintiffs to their home country of Venezuela in exchange for an equal number of political prisoners held there by the Maduro regime).

There is thus no evidence that El Salvador would release plaintiffs "upon nothing more than a request by the United States." *Abu Ali*, 350 F. Supp. 2d at 68. That is why plaintiffs' constructive custody theory failed. *Accord Gul v. Obama*, 652 F.3d 12, 18 (D.C. Cir. 2011) (rejecting habeas jurisdiction over prisoners transferred to Afghanistan and Sudan, even though court could "order the Government to take all steps within its power to alleviate their injury," because injury was "traceable" to a foreign sovereign with broad discretion on how to act). And for the very same reasons, the prospect of "facilitation" is too speculative to confer standing on plaintiffs to seek an injunction on due-process grounds. To hold otherwise would create an end-run around constructive custody and habeas jurisdiction: if a respondent lacks custody, simply order them to gain custody and thereby create jurisdiction.

In the end, plaintiffs' only injury traceable to the United States is a purely *past* one: that they were removed without adequate notice or an opportunity to file habeas. Op. at 39. That is not an "ongoing" or "imminent injury" that can justify prospective injunctive relief. *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1227 (D.C.

14

Cir. 2024). Plaintiffs thus lack standing for injunctive relief against the Government, and this Court's further order granting such relief is likely to be reversed on appeal.

## II.   The Remaining Equitable Factors Favor a Stay.

The other equitable factors also favor a stay. To start, this Court's order, if not stayed, will irreparably injure the Government. As explained, the order intrudes on the Executive's foreign-affairs authority by forcing the United States to engage in military actions or sensitive diplomatic negotiations to regain custody of over 100 gang members from a foreign prison. It is difficult to conceive of a more significant harm to the separation of powers. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (order threatens "serious, perhaps irreparable, consequence" to the separation of powers).

This injunction also illustrates why the harm to the Government and the public interest "merge" where the Government seeks a stay. *Nken v. Holder*, 556 U.S. 418, 435 (2009). By binding the Executive's hands as to foreign affairs or military action, this Court's order severely harms the public interest. Requiring the United States to seek to extract plaintiffs from Salvadoran custody risks alienating a strategic ally in the war on foreign terrorist organizations that have devastated countries in Central and South America and have targeted this nation. *See, e.g.*, ECF 118-3, at 2; ECF 118-4; ECF 118-5, at 1. If the United States were to seek the return of over 100 individuals that El Salvador has imprisoned, for the express purpose of giving them an opportunity to seek their release, the United States' reliability as a partner in fighting foreign terrorist organizations would diminish. Other countries, too, may see the United States as unable to commit to a single course of action in foreign affairs,

15

weakening the President's ability to negotiate with foreign sovereigns on behalf of the nation.

Further, the "sensitive and weighty interests of national security and foreign affairs" warrant the utmost deference to the Executive's view. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–35 (2010). Courts have neither "technical expertise nor official responsibility" to make judgments that may have wide-ranging effects on the United States' strategic interests. *Ludecke v. Watkins*, 335 U.S. 160, 170 (1948).

Meanwhile, plaintiffs will suffer no harm from a stay of this Court's order. They are currently in the custody of El Salvador, and the United States has no authority over their detention. Even if this Court's order were not stayed, plaintiffs would experience no change in their station. The equities thus decidedly tip in favor of a stay.

## CONCLUSION

This Court's order should be stayed pending appeal.

                                      Respectfully submitted,

**Yaakov M. Roth**
Acting Assistant Attorney General
Civil Division

**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation

**August Flentje**
Special Counsel for Immigration

s/Tiberius T. Davis
**Tiberius T. Davis**
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044-0878
(202) 514-2000
tiberius.davis@usdoj.gov

**Anthony Nicastro**
Acting Director
Office of Immigration Litigation

**Ernesto Molina**
Deputy Director
Office of Immigration Litigation

Dated: June 10, 2025                      *Counsel for Respondents–Appellants*