# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

J.G.G. et al.,

       *Plaintiffs*;

LIYANARA SANCHEZ, as next friend
on behalf of FRENGEL REYES MOTA,
et al.,

       *Petitioners–Plaintiffs*,

    v.

DONALD J. TRUMP, in his official
capacity as President of the United
States, et al.,

       *Respondents–Defendants*.

Case No. 1:25-cv-00766-JEB

**RESPONDENTS–DEFENDANTS'
OPPOSITION TO PLAINTIFFS'–
PETITIONERS' MOTION TO
CERTIFY CLASS**

## Table of Contents

Introduction ..................................................................................................................... 1

Background ...................................................................................................................... 2

Argument ........................................................................................................................ 4

      I.     Class Actions Cannot Proceed in Habeas. .................................................. 4

           A.     Habeas is unfit for class adjudications. ......................................... 5

           B.     The All Writs Act does not allow for habeas classes. .................... 9

      II.    In Any Case, Petitioners Do Not Satisfy the Requirements to Certify a Class ............................................................................................ 11

           A.     Petitioners fail to satisfy the Rule 23(a) requirements ............... 12

           B.     Petitioners fail to satisfy the Rule 23(b) requirements ............... 17

Conclusion ..................................................................................................................... 20

Exhibit A: Joint Status Report in *J.O.P. v. DHS*, 19-cv-01944 (D. Md.)

## Introduction

Petitioners' alleged due-process injury, standing alone, is insufficient to warrant the extraordinary injunctive relief they seek, especially now that they have been released from custody and are apparently at liberty win their native Venezuela.[1] As explained in detail in Respondents' opposition to their request for a preliminary injunction, the Petitioners suffer no prospective irreparable harm that mere process alone can remedy without implicating the validity of their merits of their removals under the AEA—only remedied through the "core" writ of habeas corpus. Recognizing this obstacle, they have returned to insisting on a habeas remedy, making essentially the same arguments this Court has already rejected. But habeas classes are not a thing. And there is no alternative means to create a habeas-like class action.

Moreover, now that the proposed putative class members have also been released from CECOT and are at liberty in their native country, many of the ties that previously bound this class were extinguished along with the order certifying that class. The appellate court essentially recognized this reality when it vacated the class certification order. At this point, little is known about the material circumstances of the putative class members, and Petitioners offer no meaningful evidence on this front. In fact, one class member has already rejected relief similar to that requested here. Accordingly, Petitioners fail to meet their burden to show that the putative class

---

[1] For brevity, "Petitioners" will refer to the parties styled Plaintiffs and Petitioners–Plaintiffs, and "Respondents" will refer to the parties styled Respondents–Defendants.

faces sufficient common irreparable harm such that their requested injunction would provide relief to the class as a whole.

Thus, this Court should deny the motion to certify the putative class.

## Background

In March, the President issued Proclamation No. 10,903, invoking the AEA, 50 U.S.C. § 21, to detain and remove certain Venezuelan nationals "who are members of TdA." 90 Fed. Reg. at 13,034. In the early hours of March 15, the five named Petitioners, representing a putative class, initiated this litigation and sought immediate injunctive relief against their removal. ECF 1, 4. In the complaint, Petitioners sought relief in habeas, but they then dismissed their habeas claims to proceed on their other causes of action. ECF 1 at 20–21; Mar. 15 Hr'g Tr. at 22:21–25. This Court issued two temporary restraining orders ("TROs") preventing removal from the United States under the AEA of a provisionally certified class consisting of all aliens in United States custody who are subject to the Proclamation.

After the D.C. Circuit denied Respondents a stay, Respondents applied to the Supreme Court to vacate the TROs. The Supreme Court granted that application, holding that, because Petitioners' claims "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas," "jurisdiction lies in only one district: the district of confinement." *J. G. G.*, 604 U.S. at 672 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). Plaintiffs were not confined in the District of Columbia, and therefore this Court lacked jurisdiction over their habeas claims. The Court further observed that the aliens are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case,'" including notice "that they are subject to

2

removal under" the AEA, "within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Id.* at 673 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

Petitioners have nonetheless persisted in their efforts to anchor this habeas litigation in this Court. After an unsuccessful attempt at a third TRO, Petitioners amended their complaint to add new claims on behalf of two new classes, a class of removed aliens detained at El Salvador's Terrorism Confinement Center ("CECOT"), and a class of criminal detainees. This Court denied certification and preliminary relief to the criminal-detainee class. *J.G.G. v. Trump*, 786 F. Supp. 3d 37, 73, 80 (D.D.C. 2025). And this Court found that it likely lacked habeas jurisdiction over the CECOT class because the United States did not have constructive custody over the aliens in CECOT. *Id.* at 59.

This Court did find, however, that it had jurisdiction in equity to entertain a claim that the government violated the CECOT class's due-process rights by failing to provide them with sufficient notice before they were removed under the AEA. *Id.* at 61. And finding it likely that Petitioners would prevail on the merits of this equitable claim, this Court certified a redefined CECOT class and awarded it a preliminary injunction, ordering Respondents to facilitate custody of the CECOT class to permit Petitioners to bring habeas claims against their AEA designations. *Id.* at 79–82.

Respondents appealed this Court's order and sought a stay pending appeal. The D.C. Circuit granted an administrative stay that remained in place for months. While the appeal was pending, El Salvador transferred the CECOT class to Venezuela as part of a prisoner swap. ECF 168-1 ¶ 7. The D.C. Circuit then vacated this Court's order and remanded the case for this Court to consider whether the new circumstances have "alter[ed] the appropriateness of injunctive relief." *J.G.G.*, 2025 WL 2317650, at *3 (quoting *Goland v. CIA*, 607 F.2d 339, 370 n.7 (D.C. Cir. 1978)). In particular, the court noted that "the transfer alters the harm experienced by [Petitioners]" and could well "render[] the entire action moot." *Id.* In doing so, the D.C. Circuit noted the lack of custody and said the "order presented serious constitutional questions." *J.G.G.*, 2025 WL 2317650, at *3. That is because "federal courts likely cannot order the Executive Branch to engage in diplomacy or to reach specified diplomatic goals." *Id.* (citing *United States ex rel. Keefe v. Dulles*, 222 F.2d 390, 394 (D.C. Cir. 1954); *Edye v. Robertson*, 112 U.S. 580, 598 (1884); *Chi. & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948)).

Petitioners now move yet again for "preliminary" injunctive relief. ECF 177. In conjunction, they seek class certification of substantially the same class as the CECOT class from the previous round of motions: "the 137 men removed to CECOT solely under the AEA on March 15 and 16." ECF 178-1 ("Mot."), at 1.

## Argument

## I.    Class Actions Cannot Proceed in Habeas.

This action continues to sound in habeas. As explained in the government's opposition to the preliminary-injunction motion, this action falls within "core" habeas

jurisdiction. *J. G. G.*, 604 U.S. 670. This Court should therefore deny certification here because habeas petitions are incompatible with class actions. Given that Petitioners ask this Court to compel the government to *retake custody* of foreign nationals apparently at liberty in their home country without meaningful knowledge of the class's circumstances, the proposed class action is all the more inappropriate.

### A.    Habeas is unfit for class adjudications.

Due to the individualized nature of the writ of habeas corpus, the class action model is an incompatible vehicle for effective and efficient relief. Class actions are intended to "create an efficient mechanism for trying claims that share common questions of law or fact when other methods of consolidation are impracticable." *Dellums v. Powell*, 566 F.2d 216, 230 (D.C. Cir. 1977). By contrast, habeas, from its inception, has been an individualized writ. Indeed, the federal habeas statute is designed for an individual petitioner; it requires that an "[a]pplication for a writ of habeas corpus shall be in writing signed and verified *by the person for whose relief it is intended or by someone acting in his behalf*" and "shall allege the facts concerning *the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority*, if known." 28 U.S.C. § 2242 (emphases added). The issuance of the writ is then "directed *to the person having custody of the person detained*" and may require the custodian to "produce at the hearing *the body of the person detained*." 28 U.S.C. § 2243 (emphases added). So the habeas statute here is focused on an individual detainee applying for a writ and the court inquiring into the cause of a petitioner's detention. That is an individualized process and inquiry, not one amenable to classwide resolution.

This reflects the historical origins of habeas. "'Habeas corpus' is Latin for 'you have the body.'" *I.M. v. CBP*, 67 F.4th 436, 440 (D.C. Cir. 2023) (quoting *Webster's New International Dictionary* 1121 (2d ed. 1945)). The original Habeas Corpus Act of 1679 required the "Sheriff" to "bring up the Body before the Court to which the Writ is returnable; and certify the true Causes of Imprisonment." Habeas Corpus Act of 1679, 31 Cha. 2 c 2 § I. Blackstone commented that habeas was "directed to the person detaining another, and commanding him to produce the body of the prisoner with the day and cause of his caption and detention." 3 William Blackstone, *Commentaries on the Laws of England* 131–32 (1768). This understanding was "incorporated into the jurisprudence of every state in the Union," including the Judiciary Act of 1789, which established the writ of habeas corpus in federal law. 3 Joseph Story, *Commentaries on the Constitution of the United States*, §§ 1333, 1335 (Boston, 1833) (in reviewing the history of habeas, defining habeas the same way that Blackstone did); Judiciary Act of 1789, 1 Stat. 73, 81–82. Thus, habeas is about directing the custodian of a detainee "to produce the body of the prisoner" to the court to explain the reason for his confinement. 3 Story, *Commentaries* § 1333. That is, by definition, individualized. How could a court order the production of a prisoner's body if the prisoner is an unknown class member? This obstacle takes on greater meaning where, as here, the putative class members are apparently at liberty in foreign nation, not in United States custody, and little is known otherwise about their present circumstances.

Even the one exception to the rule that an application for habeas must be "signed and verified by the person for whose relief it is intended," allowing for the

application to sometimes be signed "by someone acting in his behalf," 28 U.S.C. § 2242, is not carte blanche to seek habeas on another's behalf. Instead, this provision incorporates the historical doctrine of the "next friend," which allows someone close to the detainee to apply for habeas on their behalf. *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990). Not just anyone may petition for habeas on behalf of any detainee, lest it be abused "by intruders or uninvited meddlers, styling themselves next friends." *Id.* (quoting *United States ex rel. Bryant v. Houston,* 273 F. 915, 916 (2d Cir. 1921) (dismissing writ because although wife was close enough to be next friend, there was not an explanation why detainee could not petition for himself)). A "next friend" must (1) "provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action," (2) "be truly dedicated to the best interests of the person on whose behalf he seeks to litigate," and (3) "have some significant relationship with the real party in interest." *Id.* at 163–64. This analysis, once again, is highly individualized, focusing on the disability preventing the detainee from applying on his own behalf, the interests of the detainee, and the friend's relationship to the detainee. *Id.* (dismissing claim brought by concerned citizen on behalf of prisoner). Evidencing this fact, the named Petitioners are petitioning for habeas through their own close relatives. Am. Compl. ¶¶ 12–17. This at least represents the proper conception of a "next friend" application.[2]

---

[2] Respondents do not concede that the allegations satisfy the other "next friend" requirements for the named Petitioners, but Respondents do not raise those potential issues for the purpose of this motion. Respondents also contend that these requirements cannot be met simply by satisfying the Rule 23 requirements. These standards are higher and more individualized.

The named Petitioners here are essentially acting as "next friends" of the unknown class members. Because the putative class members have been released from CECOT and are apparently at liberty in their home country, Petitioners have little knowledge of the individual circumstances of these proposed class members and offer no meaningful evidence on this point. Instead, Petitioners simply assume that the putative class members are experiencing similar problems and have an interest in the proposed relief. *See Wilson v. Dixon*, 256 F.2d 536, 537–38 (9th Cir. 1958) (rejecting next friend petition because there was no explanation "why the detained person does not sign and verify the complaint and who 'the next friend' is"). Especially given that Petitioners seek not to obtain unknown class members' release from custody but their placement *back* in custody, relief cannot be based on mere assumptions. Petitioners also claim they share an interest with the putative class in similar legal questions. But that is insufficient to petition as a "next friend." If any prisoner could file a class action on behalf of all arguably similarly situated prisoners about whom he knows nothing, the historical exception of "next friend" would be usurped. Petitioners seek to blow a massive hole in the historically individual writ and the narrow exception permitting only a "next friend" to petition on another's behalf.

It is no wonder, therefore, that the Supreme Court has never held that classwide relief may be sought in a habeas proceeding. *A. A. R. P. v. Trump*, 605 U.S. 91, 107 (2025) (Alito, J., dissenting). Instead, Petitioners attempt to rely on cases merely presented in a class habeas form. But in all of those cases, the government

did not raise the issue, and the Supreme Court denied relief on other grounds without resolving whether habeas classes were proper.[3] And *LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C. Cir. 1996), if anything, cuts against Petitioners' position because it vacated a declaratory judgment for a lack of jurisdiction since it was more properly brought as a habeas claim in a different district. In so ruling, the court noted that, even if a habeas class might be theoretically possible, such a class cannot assert the rights of class members not yet in custody. *Id.* So the court did not bless a habeas class action, instead ordering the case dismissed for the same reasons this Court should reject Petitioners' claims. Most of the remaining cases Petitioners cite did not actually rule that a habeas class was proper but instead approved of the concept in passing dicta.[4] And the remaining cases are unpersuasive because they are contrary to the history and practice of habeas. This Court should not stray from the tenets of habeas to certify novel classes that do not even meet Rule 23's requirements.

### B.    The All Writs Act does not allow for habeas classes.

There is no alternative means to certify a habeas class, either. A habeas class cannot be maintained under "equity principles," including the All Writs Act. First,

---

[3] *See Schall v. Martin*, 467 U.S. 253, 261 n.10 (1984) ("We have never decided whether Federal Rule of Civil Procedure 23, providing for class actions, is applicable to petitions for habeas corpus relief."); *Jennings v. Rodriguez*, 583 U.S. 281, 324 n.7 (2018) (remanding on other grounds) (Thomas, J., concurring in part) ("This Court has never addressed whether habeas relief can be pursued in a class action"); *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) (reversing and remanding on other grounds); *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.3 (2021) (declining to address the issue).

[4] *See Mead v. Parker*, 464 F.2d 1108, 1112–13 (9th Cir. 1972) (just ruling that a case should not be dismissed just because it cannot be a class action without deciding if a class was proper); *Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973) (similar); *Napier v. Gertrude*, 542 F.2d 825, 828 (10th Cir. 1976) (habeas was moot before class certification decided); *Hamama v. Adducci*, 912 F.3d 869, 878 (6th Cir. 2018) (holding that immigration statute precluded class habeas injunctions because it used word "individual," and merely noting that there may be habeas classes in other situations).

the All Writs Act is limited to "all writs necessary or appropriate in aid of [the courts'] respective jurisdictions." 28 U.S.C. § 1651(a). It can neither create jurisdiction in the first place nor grant a court the power to extend its jurisdiction to putative class members. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32–33 (2002). In any event, equity and the All Writs Act are limited to the relief that was "traditionally accorded by courts of equity" at "the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–19, 326 n.8 (1999). There is no evidence that habeas class actions existed at the Founding.

Second, even if habeas class actions were feasible (they are not), the class would still have to satisfy the strictures of Rule 23. General equitable principles and the All Writs Act cannot be used "to circumvent statutory requirements or otherwise binding procedural rules." *Shoop v. Twyford*, 596 U.S. 811, 820–21 (2022). So the All Writs Act cannot replace the existing procedural requirements of Rule 23 for class actions. *See Syngenta*, 537 U.S. at 32–33 (All Writs Act cannot replace removal requirements). Inventing a new habeas class-action mechanism through the All Writs Act circumvents these procedural rules and undermines their purpose in regulating class actions. If courts could freely do this, there would be no reason ever to follow Rule 23 or other procedural restrictions.

In addition, this innovation would circumvent the individual-application and "next friend" procedures of federal habeas. *See* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose

relief it is intended or by someone acting in his behalf."). A class representative could simply sign on behalf of a class of people he knows nothing about (including, apparently, future class members yet to exist). That is not how equity or the All Writs Act works. *See Shoop*, 596 U.S. at 820–21 (All Writs Act cannot supplement habeas procedures). Given the lack of historical support, if a habeas class can exist at all (it cannot), it must be maintained under Rule 23. Neither equity nor the All Writs Act vests courts with the discretion to invent a new form of class action or sidestep Rule 23's strictures.

Third, even if the All Writs Act could be used, this Court should still use the Rule 23 requirements as guidelines for certifying any class. Even the rare cases that have permitted habeas class actions under the All Writs Act have stressed the "unusual circumstances" attendant to such certifications. *Bijeol v. Benson*, 513 F.2d 965, 967 (7th Cir. 1975). In evaluating whether to certify a class, courts still routinely rely on Rule 23's requirements. *See Napier v. Gertrude*, 542 F.2d 825, 827 n.2 (10th Cir. 1976); *United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125–26 (2d Cir. 1974) (finding Rule 23 to provide a rubric for determining the "circumstances which make multiparty actions appropriate"). To the extent this Court believes the All Writs Act permits habeas class actions, it should at least hold Petitioners to the Rule 23 standard.

## II.    In Any Case, Petitioners Do Not Satisfy the Requirements to Certify a Class.

Even if this Court accepted that the writ of habeas corpus could be presented in a class action or that the claims do not sound in habeas, Petitioners would still

have to satisfy Rule 23's requirements. But given the material change in their circumstances, the putative class does not satisfy the requirements for certification.

### A.    Petitioners fail to satisfy the Rule 23(a) requirements.

To certify a proposed class under Rule 23(a), the named representatives must establish that: (1) the class is so numerous that joinder of all of its members is impracticable; (2) the case involves questions of fact or law that are common to all class members; (3) the named representatives' claims are typical of those of the class; and (4) the named representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Under Rule 23(b)(2), a class may be maintained only if all the requirements of Rule 23(a) are satisfied and "final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*." Fed. R. Civ. P. 23(b)(2) (emphasis added). The party seeking certification "must prove each element of Rule 23 by a preponderance of the evidence." *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 194 (D.D.C. 2024).

The "commonality" requirement mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). But, as the Supreme Court has elaborated, the proposed class's "claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "That common contention . . . must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Although for purposes of Rule 23(a)(2) even a single common question will do, "[w]hat matters to class certification . . . is not the raising of common questions—even in droves—but

rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the class are what have the potential to impede the generation of common answers." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Petitioners cannot satisfy the commonality requirement because Petitioners have not proved similarities among the members of proposed class that their proposed injunction will remedy for the entire class. Now that the named Petitioners and the putative class members have been released and are apparently at liberty in their native country, little is known about the class members' current circumstances, and Petitioners have offered no meaningful evidence about them. This includes questions of collateral consequences, ongoing constructive custody, and irreparable harm. For each of these Petitioners claims he wants to return, has claims such as asylum to raise, is subject to reentry bars, and is being mistreated by Maduro and other Venezuelans as a result of the AEA designations. None of these matters are common among class members. At the very least, Petitioners have not shown that these issues are common among the 137 class members they seek to represent, as is their burden.

As explained in Respondents' opposition to the motion for preliminary injunction, collateral harms about which Petitioners complain are not irreparable prospective harms capable of being redressed by a process-only remedy without implicating the validity of the underlying merits. Moreover, Petitioners make no showing that these harms are common to the class anyway.

The named Petitioners assert that they would like to return to the United States to pursue their asylum claims and live legally, but they offer no evidence that the entire class has asylum claims or even wishes to return to the United States. Besides, a process-only core habeas remedy would not encompass asylum processing anyway. And, though the AEA bar to reentry is common to the class as whole, it is unknown whether any of the proposed class members would be subject to additional bars to reentry under provisions such 8 U.S.C. § 1182(a) (listing multiple grounds for inadmissibility, including health-related grounds, criminal convictions within or without the United States, terrorist activity, or membership in a totalitarian party). Without even showing a common desire to reenter the United States in the near future, this is hardly an irreparable harm in need of the type of classwide preliminary relief sought, nor is it a harm that necessarily provides relief to the entire class. In addition, the other alleged harms relating to how third parties are treating the declarants have not been shown to be common and are unlikely to be so.

And the mere allegation that class members have all suffered a violation of the Due Process Clause, alone, is insufficient to satisfy commonality in this context. *Wal-Mart*, 564 U.S. at 350. Such an allegation is particularly deficient because "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976); *see also Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) (class action may not be proper vehicle to resolve due-process claims because of flexibility inherent in due-process analysis). The dissimilarities inherent in each individual case would require this Court to delve into

the specific facts of each alien's case, thereby rendering it impossible to efficiently dispose of the classwide claims.

Nor is it true that "the claims or defenses of the [proposed] representative parties are typical of the claims or defenses of the [putative] class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "screen[s] out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." 7A Wright & Miller, *Federal Practice and Procedure* § 1764 (3d ed. 2018). Thus, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class member." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

Circumstances are quite different now that the class members are no longer detained in CECOT and are instead apparently at liberty in their home country. Even if the named Petitioners return to the United States to pursue their asylum claims, other class members—perhaps those without any viable legal claims to remain in the United States or even to challenge their TdA designation or AEA removals—may be averse to being taken back into United States custody and most likely detained. *E.g.*, Ex. A ("Joint Status Report"), at 2 (discussing that one class member's interest in return to the United States is "undermined" by Respondents' insistence that he "will be detained upon return"). In fact, the declarations offered by only a handful of the named Petitioners do not even confirm their willingness to be taken back into United States custody and detention—let alone to possibly lose on the merits and be removed

again or kept in custody if removal were not possible. Instead, their declarations indicate only their interest in obtaining asylum, living legally in the United States, or clearing their names. Thus, the named Petitioners' claims are not only atypical of the other class members, but they are also insufficiently typical of the relief they purportedly seek. Accordingly, the named Petitioners have not met their burden to establish their ability to adequately represent the putative class.

Given these variations, Petitioners have done nothing to show numerosity that breaks down these various issues. For example, there is no evidence on how many class members even want to return to the United States or have asylum claims. The only evidence Petitioners provide is the number of people El Salvador detained in CECOT.

As a separate prerequisite to certification, a putative class must also be "definite" or "ascertainable." *J.D. v. Azar*, 925 F.3d 1291, 1319–20 (D.C. Cir. 2019) (citing 1 William B. Rubenstein, *Newman and Rubenstein on Class Actions* § 3:3 (6th ed.)). This prerequisite arises from Rule 23's "express[] direct[ion] that the definition of a class be determined and that its members be identified or identifiable early in the litigation, not at its end." *In re White*, 64 F.4th 302, 313 (D.C. Cir. 2023) (citing Fed. R. Civ. P. 23(c)(1)(A)). Although absolute precision is not necessary before certifying a (b)(2) class, class membership must still be determinable "with reference to 'objective criteria.'" *Thorpe v. District of Columbia*, 303 F.R.D. 120, 139 (D.D.C. 2014) (quoting 1 Rubenstein § 3:3); *see also* Manual for Complex Litigation § 21.222 (4th ed.) (defining class "is of critical importance because," among other things, "it

identifies the persons [who are] entitled to relief"); *id.* (noting that although a court need not "identify every individual member at the time of certification of a Rule 23(b)(2) class action for injunctive relief," it must be able to "determine at any given time whether a particular individual is a member of the class"). Under this alternative rubric, there would be no way to determine numerosity at this stage, either. *See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (numerosity cannot be premised on speculation). At the very least, Plaintiffs have not shown numerosity by a preponderance of the evidence. *See Lewis*, 743 F. Supp. 3d at 194. Because the putative class is not ascertainable and has not been shown to be numerous, this Court should decline to certify it.

### B.    Petitioners fail to satisfy the Rule 23(b) requirements.

Nor does the putative class "satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*, 564 U.S. at 345. Here, Petitioners rely on Rule 23(b)(2), which requires they show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Often referred to as the "cohesiveness" requirement, the class's interests must be sufficiently cohesive such that requested injunction benefits the entire class. Whereas the Rule 23(b)(3) class model finds its efficiency and effectiveness in the predominance of facts and law, the Rule 23(b)(2) class finds the same in the cohesiveness of the class members' interests in the relief sought. As the Supreme Court has explained, "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that

17

it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (quoting Nagareda, 84 N.Y.U. L. Rev. at 132). "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.*

Rule 23(b)(2) does not authorize certification here. As explained above, the changed circumstances and the lack of evidence of the current circumstances of the putative class members render Petitioners unable to show that the proposed injunction will likely benefit the whole class. *See Vallario v. Vandehey*, 554 F.3d 1259, 1268 (10th Cir. 2009) ("Under Rule 23(b)(2), the injuries sustained by the class must be sufficiently similar that they can be addressed in a single injunction that need not differentiate between class members."); *Reid v. Donelan*, 17 F.4th 1, 11 (1st Cir. 2021) (holding that a class of aliens seeking relief from mandatory detention in 8 U.S.C. § 1226(c) could not be sustained under Rule 23(b)(2) because they were not all entitled to the same procedures). A Rule 23(b)(2) class action seeking additional procedures under the Due Process Clause "does not provide a vehicle for preemptively announcing such rules." *Reid*, 17 F.4th at 12. Rather, it tends to devolve into individualized injunctions for each class member. Thus, generalized standards should arise in the form of agency guidance or regulations or through "common law rules of precedential force, through case-by-case adjudication." *Id.*

Because a Rule 23(b)(2) class action is limited to a single injunction providing sweeping relief to the entire class, it is more compatible with a prohibitory ("status

quo") injunction than with the mandatory ("affirmative") injunction sought here. Thus, especially after the Supreme Court clarified the scope, purpose, and due-process concerns of the 23(b)(2) vehicle in *Wal-Mart*, courts have returned to being more skeptical of classwide mandatory injunctions. *See, e.g.*, *Berni v. Barilla S.p.A.*, 964 F.3d 141, 148–49 (2d Cir. 2020) (declining to read an equitable exception into Rule 23(b)(2) to permit certification of class seeking mandatory injunctive relief where no showing of likelihood of future harm absent injunction); *Huashan Zhang v. USCIS*, 978 F.3d 1314, 1325 (D.C. Cir. 2020) (reserving question of whether 23(b)(2) certification "is appropriate when an agency denies benefits in many individual adjudications resting on a common legal rationale," noting that "[t]he appropriate relief must be 'indivisible'" under *Wal-Mart*). Indeed, as Justice Story warned, unbounded equitable power is "the most formidable instrument of arbitrary power, that could well be devised." I Joseph Story, *Commentaries on Equity Jurisprudence* § 19 (4th ed. 1846).

Considering those principles, it strains reason to claim that all proposed class members, who have been released from Salvadoran custody and returned to their home country, would be interested in being stripped of their apparent liberty by being taken back into United States custody, only for the opportunity to challenge their TdA designation or AEA removals. Again, one class member has expressed strong reservations about this option, and it is likely many others would refuse this "relief" too.

Such dissimilarities of interest present their own due process concerns. *See Wal-Mart,* 564 U.S. at 361–62 (stating that Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."). Under these circumstances, Petitioners cannot demonstrate the cohesiveness necessary for certification under Rule 23(b)(2).

In any event, given the current circumstances, arranging to take each class member back into custody is likely to involve individualized action by Respondents for each class member. Thus, contrary to the necessity of indivisible relief, Petitioners' request would devolve into individualized injunctions that make this case inappropriate under Rule 23(b)(2).

Alternatively, to meet the cohesiveness requirement and ensure the whole class obtains relief, the class composition cannot be determined until relief is individually requested. Without knowing which, if any, of the proposed class members will benefit from process-only relief that necessitates the United States' taking them back into custody, the true composition is not ascertainable.

### Conclusion

Petitioners' motion to certify the proposed class should be denied.

Respectfully submitted,

**Brett A. Shumate**
Assistant Attorney General
Civil Division

**Yaakov M. Roth**
Principal Deputy Assistant Attorney General
Civil Division

**Drew C. Ensign**
Deputy Assistant Attorney General
Civil Division
Office of Immigration Litigation

**August Flentje**
Special Counsel for Immigration
Civil Division

s/Tiberius T. Davis
**Tiberius T. Davis**
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044-0878
(202) 514-2000
tiberius.davis@usdoj.gov

**Anthony Nicastro**
Acting Director
Office of Immigration Litigation

**Ernesto Molina**
Deputy Director
Office of Immigration Litigation

Dated: October 31, 2025                *Counsel for Respondents–Defendants*