IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LIYANARA SANCHEZ, as next friend on behalf of FRENGEL REYES MOTA, *et al.*,

*Petitioners–Plaintiffs*,

J.G.G., *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Respondents–Defendants*.

Case No: 1:25-cv-00766-JEB

**NOTICE OF FILING OF DECLARATIONS**

Pursuant to this Court's Order (Dkt. 196), attached are declarations signed by Secretary of Homeland Security Kristi Noem, who made the decision to continue the transfer of detainees out of U.S. custody on March 15 and 16, 2025, and two attorneys who provided her with privileged legal advice before she made that decision: Acting DHS General Counsel Joseph N. Mazzara and Deputy Attorney General Todd Blanche. (Then-Principal Associate Deputy Attorney General Emil Bove is no longer with the Department of Justice.)

The Court's order directed declarations from all individuals "involved in the decision." Defendants interpret the word "involved," in this context, to refer to the official who personally made the decision and the officials responsible for the legal advice regarding the decision—but not, for example, every individual who was involved in implementing the decision, or every

1

subordinate who conducted research during formulation of the legal advice, because there would be no apparent basis to pursue criminal contempt charges against those individuals.[1]

With the identity of the relevant officials now clearly presented under oath, there is no basis for any witness testimony. Absent a waiver of the attorney-client privilege, the lawyers who gave Secretary Noem legal advice cannot testify about the substance of that advice. As for Secretary Noem, the Court has all the information it needs to make a referral if it believes one to be justified, and further factual inquiry by the Court would raise constitutional and privilege concerns.

As the Court has explained, the relevant questions are (i) whether the Court's order was "clear and reasonably specific'"; (ii) whether a defendant "violated the order"; and (iii) whether the violation "was willful." Dkt. 196 at 1-2. The first question is purely a legal one. Defendants maintain that this Court's TRO was not "clear and reasonably specific" as to returning the detainees who had already been removed from the United States. The second question, in this case, hinges solely on the first—there is no factual dispute that Defendants transferred custody of the detainees who had already been removed from the United States; the only question is whether, as a matter of law, that conduct violated the order. The third question is also derivative: the absence of a clear order unambiguously prohibiting the transfer of already-removed detainees means any violation was not willful as a matter of law. *Cf. Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 & n.20 (2007) (holding that acting consistent with a "not objectively unreasonable" "albeit erroneous" interpretation cannot support even civil liability under a willfulness standard).

---

[1] Although he was identified in Defendants' prior notice about the sequence of events on March 15, Deputy Assistant Attorney General Drew Ensign was not involved in the decision at issue other than through relaying what this Court said on the record and in its written order to DHS and DOJ leadership. Defendants are therefore not submitting a declaration from him with this filing.

Accordingly, if the Court continues to believe its order was sufficiently clear in imposing an obligation to halt the transfer of custody for detainees who had already been removed from the United States, the Court should proceed promptly with a referral. Defendants reiterate, however, that they believe Judge Katsas's concurring opinion makes that position untenable. The point is not that a majority of the D.C. Circuit agreed with Judge Katsas. Rather, the point is that if a leading jurist like Judge Katsas concluded that Defendants' interpretation of the TRO is legally *correct*, it is impossible to find beyond a reasonable doubt that Defendants' interpretation is so unreasonable as to make their conduct *criminally contumacious*. For those reasons, Defendants maintain that this inquiry should be terminated without a referral.

In all events, however, there is no basis to require Secretary Noem, or the attorneys who gave her legal advice, to provide live testimony. Compelling senior Executive Branch officials to testify in court encroaches on the separation of powers. *See, e.g.*, Order, *In re Noem*, No. 25-2936 (7th Cir. Oct. 31, 2025) (granting mandamus). Moreover, the appropriate time for a contempt defendant to testify is at a criminal trial, if the defendant exercises the constitutional right to choose to testify in his or her defense. It would be prejudicial and constitutionally improper to compel testimony in advance of a referral for prosecution, particularly when all of the facts that are necessary for a potential referral are already known and have been presented under oath.

Dated: December 5, 2025

Respectfully submitted,

Brett A. Shumate
Assistant Attorney General
Civil Division

Drew C. Ensign
Deputy Assistant Attorney General
Office of Immigration Litigation

/s/ *Tiberius Davis*
Tiberius Davis
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice

Anthony Nicastro
Acting Director
Office of Immigration Litigation

*Counsel for Respondents–Defendants*