IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LIYANARA SANCHEZ, as next friend on behalf of FRENGEL REYES MOTA, *et al.*,

*Petitioners–Plaintiffs*,

J.G.G., *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Respondents–Defendants*.

Case No: 1:25-cv-00766-JEB

**MOTION FOR RECONSIDERATION
OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

  This Court has been conducting an inquiry into whether there is probable cause to find that federal officials committed criminal contempt by facilitating the transfer of custody of detainees designated by the President as alien enemies who had been removed from the United States before this Court issued a TRO in the evening of March 15, 2025. Although Defendants have submitted sworn declarations from the official who made this decision and the attorneys who advised her about it, the Court has concluded that it still lacks sufficient information to determine whether that decision "was a willful violation" of its TRO. ECF 200 at 1. The Court expressed that it needs testimony "to better understand the bases of the decision to transfer the deportees out of United States custody in the context of the hearing on March 15, 2025." *Id.* at 1-2. Ostensibly to that end, the Court has ordered testimony from Deputy Assistant Attorney General Drew Ensign and former DOJ attorney Erez Reuveni. *See id.* at 2. Defendants now seek reconsideration of that order or, in the alternative, a protective order to circumscribe the scope of the testimony.

1

1.      At the outset, the Court's inquiry exceeds its authority and is now intruding on the prerogatives of a co-equal branch.  Criminal contempt is a criminal offense, and the investigation and prosecution of crimes is core executive power reserved to the Executive Branch. *See United States v. Texas*, 599 U.S. 670, 679 (2023) ("The Executive Branch—not the Judiciary—makes arrests and prosecutes offenses on behalf of the United States.").  Although federal courts may summarily prosecute criminal contempt "committed in the presence of the court," 18 U.S.C. § 402, this is not such a case.  And for all other criminal contempt cases, the role of the court is limited to making a referral to the DOJ.  *See* Fed. R. Crim. Pro. 42(a)(2) ("The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney.").  Indeed, "the courts of appeals are in accord that a district court exceeds its power in assuming the role of a prosecutor during proceedings for indirect criminal contempt." *United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996).  The referral is not merely for ultimate *prosecution*, but also for such *investigation* as may be warranted before determining whether to bring charges.  *See Young v. United States ex rel. Vuitton et Fils SA*, 481 U.S. 787, 801-02 (1987) ("Referral will thus enhance the prospect that investigative activity will be conducted by trained prosecutors pursuant to Justice Department guidelines."); *see also id.* at 820 (Scalia, J., concurring in the judgment) (explaining that courts have no "*investigative* or prosecutory authority" (emphasis added)).

Here, this Court already has all of the information necessary to make such a referral, if it believes that Defendants violated the Court's order.  Defendants have not questioned the Court's authority to inquire into the identity of the decisionmaker—so the Court can refer the appropriate person, if warranted—but they have already provided that information in declarations under oath. ECF 198.  And the underlying facts of Defendants' conduct are not contested.

The Court has suggested that it lacks sufficient information to evaluate whether a violation was "willful." ECF 200 at 1. But that sort of factual inquiry into a decisionmaker's subjective *mens rea* is a task for a prosecutor in evaluating whether to pursue charges; there is no authority for a federal judge, in the context of a criminal contempt inquiry, to hold a mini-trial dedicated to assessing the evidence of criminal intent. This is an unlawful usurpation of an executive function.[1] Instead, if the Court concludes that its order was clear and unambiguous in forbidding the decision that Defendants made—a pure question of law—that alone is sufficient basis to find probable cause of a willful violation, and to refer the matter for potential prosecution. *See Ganek v. Leibowitz*, 874 F.3d 73, 86 (2d Cir. 2017) ("the law has long recognized that probable cause does not demand evidence of every element of a crime" and "is particularly tolerant with respect to the mens rea element"). No further inquiry is constitutionally permissible in these circumstances.[2]

2.      The Court's own orders prove the point. The Court *already found* probable cause for criminal contempt, and although that decision was vacated on appeal, nothing in the appellate opinions supports the notion that live testimony is now required before reiterating that conclusion. The Court's insistence on compelling testimony at this juncture raises serious concerns about vindictiveness and retaliation for a successful appeal. *Cf. North Carolina v. Pearce*, 395 U.S. 711, 725 (1969) (prohibiting harsher sentence after appeal).

---

[1] The rule is different in cases of civil contempt, where the Court is seeking to enforce its own orders. *See United States v. Perry*, 116 F.3d 952, 956 (1st Cir. 1997) (contrasting the two). In that context, the Court is entitled to compel discovery and conduct necessary investigations. *See, e.g., Mass. Union of Pub. Housing Tenants, Inc. v. Pierce*, 1983 WL 150 (D.D.C. Oct. 19, 1983) (granting motion for post-judgment deposition to investigate whether defendant was complying with court's orders). But civil contempt is unavailable here because the Court's TROs were vacated by the Supreme Court for lack of jurisdiction. *See Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992) ("it is logical that the order itself should fall with a showing that the court was without authority to enter the decree."). The Court's most recent order compelling witness testimony appears to be another effort to circumvent its inability to pursue civil contempt remedies.

[2] Defendants also maintain and preserve their objections that any inquiry is improper because Defendants did not violate the Court's order (as Judge Katsas held) and because criminal contempt cannot lie for an alleged violation of an order entered without jurisdiction. *See* ECF 195.

Months ago, this Court issued a lengthy opinion analyzing the evidence and concluding that probable cause existed; the only open question was the identity of the decisionmaker, and the Court ordered Defendants to identify that person (or else take steps to "purge" the contempt). *See* ECF 81 at 21-44. Defendants appealed, and the D.C. Circuit vacated that order by a divided vote. Judge Katsas reasoned that no contempt proceedings were viable because Defendants had not violated the TRO. *J.G.G. v. Trump*, 147 F.4th 1044, 1052 (D.C. Cir. 2025) (Katsas, J., concurring). This Court has declined to follow Judge Katsas's rationale because it was not joined by a majority of the Court of Appeals panel or en banc court. ECF 196 at 1. Judge Rao reasoned that the "purge" option violated the separation of powers because it used the threat of punishment "as a backdoor to obtain compliance with a vacated and therefore unenforceable TRO." *J.G.G.*, 147 F.4th at 1064 (Rao, J., concurring). As a consequence, this Court has recognized that the "purge" option is no longer appropriate. ECF 197 at 5. The en banc court denied review, with some judges reasoning that the panel's order did not categorically foreclose this Court from proceeding to identify the decisionmaker and make a referral. *See J.G.G. v. Trump*, No. 25-5124, 2025 WL 3198891, at *3 (statement of Pillard, Wilkins, and Garcia, JJ., respecting the denial of rehearing en banc) (Nov. 14, 2025).

With the exception of Judge Katsas's opinion (which this Court has rejected as grounds to terminate the contempt inquiry), nothing about the D.C. Circuit proceedings suggests a basis for this Court to revisit its prior determinations about the elements of contempt. Given that the Court previously concluded that the transfer of custody was probably a willful violation of a clear and unambiguous order, there is simply no reason why the record now—months later—would require further development. All that has changed is Defendants have now identified the decisionmaker, which is all the Court previously sought in its original order.

4

To be sure, the Court's prior opinion was vacated. But the Due Process Clause forbids punishing Defendants for pursuing an appeal—and especially a successful appeal. The appeal thus cannot be used as a basis to impose additional burdens on Defendants. For this reason too, the Court should instead proceed immediately to a criminal referral if it continues to believe the law supports that result. There is no permissible basis for live testimony.

3. Even assuming the Court legitimately needs more information than it originally sought, and even assuming the Court has constitutional authority to conduct its own investigation to collect it, the declarations make clear that no further inquiry is possible. Any inquiry into "the bases of the decision" to proceed with the transfer (ECF 200 at 1) will implicate the attorney-client privilege. Secretary Noem attested that she made the decision, and that she made it after receiving privileged legal advice regarding this Court's order. ECF 198-1. Unless this Court intends to pierce the privilege (*see infra* at 8-9), no further information on this topic will be available.

Of course, Defendants have repeatedly, consistently, and exhaustively explained in their briefs—as early as March 16 and continuing to the present—why their decision *did not* violate this Court's orders as a matter of law. But if the Court wants to know whether the legal advice to the Secretary in the evening of March 15 accorded with the legal position articulated to the Court on March 16, there is no way to verify that without piercing the privilege.

Importantly, in the event of a criminal contempt trial, the defendant would have the right to assert an advice-of-counsel defense to negate willfulness. *See United States v. Hansen*, 772 F.2d 940, 947 (D.C. Cir. 1985) (recognizing that "[g]ood faith reliance upon advice of counsel … establish[es] a defense" to specific intent crimes); *United States v. Taylor*, 139 F.3d 924, 932 (D.C. Cir. 1998) (recognizing advice of counsel as defense to criminal contempt). That defense would present a factual question for a jury. *See United States v. DeFries*, 129 F.3d 1293, 1308-10 (D.C.

Cir. 1997) (reversing convictions due to failure to instruct on advice-of-counsel defense). Pressing this defense would require a waiver of the attorney-client privilege, because the privilege cannot be used as both sword and shield. *United States v. Bilzerian*, 926 F.2d 1285, 1292-93 (2d Cir. 1991). But that is a choice the defendant is entitled to make *at trial*. The Court cannot require that choice to be made in this preliminary probable-cause posture, just as a prosecutor could not do so before presenting an indictment to the grand jury. After all, the defendant "bears the initial burden of production" in invoking advice of counsel: "Only after the defendant satisfies his burden of producing enough facts must the prosecution rebut this defense." *United States v. Greenspan*, 923 F.3d 138, 146-47 (3d Cir. 2019); *see also United States v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989) (R.B. Ginsburg, J.) ("Reliance on advice of counsel is an affirmative defense, an assertion more positive and specific than a general denial of criminal intent."). Here, no defendant has put the legal advice at issue or otherwise used the privilege as a sword to resist a probable-cause determination. There is therefore no basis for any further inquiry by the Court at this stage.

To be clear, Defendants are not suggesting that the Court should infer a lack of willfulness from the Secretary's mere reference to legal advice. To the contrary, if the Court believes its order was clear and unambiguous in forbidding the transfer of custody, the Court need not separately assess willfulness in deciding to make a referral. To be even more clear: Defendants, at this stage and for present purposes, stand solely on their position that there was no willful violation as a matter of law because the Court's order did not clearly prohibit the decision at issue. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 & n.20 (2007). If criminal charges are ultimately pursued, then any defendant will have an opportunity at trial to assert advice-of counsel as a defense, and to accept the waiver consequences attendant to that. But there is nothing further for the Court to inquire into at this stage in terms of the mental state of the decisionmaker.

**4.** Even putting all of the above aside, there is a glaring mismatch between the issue on which the Court seeks information (namely, "the bases of the decision to transfer the deportees out of United States custody," ECF 200 at 1) and the witnesses that the Court has ordered to appear (namely, two litigation counsel who played no role in that decision).

As set forth in the declarations, Secretary Noem made the decision at issue, and she made that decision after receiving privileged legal advice from the DHS Acting General Counsel Joseph N. Mazzara and from the senior leadership of the Department of Justice (Deputy Attorney General Todd Blanche and then-Principal Associate Deputy Attorney General Emil Bove). ECF 198.

Deputy Assistant Attorney General Drew Ensign represents Defendants in this litigation, and appeared in that capacity at the TRO hearings on March 15, 2025. As he has previously told the Court—and reiterates in a sworn declaration attached to this motion—he promptly conveyed to both DHS and DOJ senior staff what the Court said on the record at the hearing and the written order that followed. Nobody has claimed that the relevant officials lacked notice or knowledge of the Court's statements or order, and the Court has not suggested any need for more information on that score. But beyond transmitting the Court's oral statements and written order, Mr. Ensign played no role in advising Defendants on compliance that evening, in formulating the legal advice that was provided to Secretary Noem that evening, or otherwise in connection with the decision at issue. Indeed, he learned of Defendants' decision at issue only after the fact. Accordingly, Mr. Ensign simply has no testimony to offer on the "bases of the decision." ECF 200 at 1. Compelling litigation counsel to provide live testimony and to be cross-examined by opposing counsel is not a step that should be taken lightly, and there is no legitimate basis to take that step here, when counsel has no personal knowledge of the only factual issue on which the Court seeks more information.

7

Mr. Reuveni is no longer employed at DOJ, but to Defendants' knowledge he likewise has no relevant firsthand information about the bases for the Defendants' decision. He did not provide legal advice to the Secretary, and does not claim to have been involved in any way in her decision. His *subjective* understanding of this Court's order has no relevance to the contempt inquiry, which turns on whether the order was *objectively* "clear and decisive and contain[ed] no doubt" in forbidding the decision that the Secretary made. *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974); *see also Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971) ("ambiguities and omissions in orders redound to the benefit of the person charged with contempt"). And the only other topics his testimony could theoretically address would relate to his involvement in the litigation as counsel opposing the TROs that Plaintiffs sought from this Court. Not only does that have no bearing on the present inquiry, but it also unquestionably implicates attorney work product and attorney-client privileged communications, as discussed further below.

For this reason as well, there is no legitimate basis for the Court's order—even taking its rationale on its own terms—and that too is grounds for reconsideration.

5. At minimum, the Court should grant a protective order to circumscribe the scope of the testimony, both to preserve the attorney-client privilege and to ensure that the questioning is limited to the narrow question relevant to the Court's inquiry.

As to the attorney-client privilege, neither Mr. Ensign nor Mr. Reuveni has any information bearing on the "bases" for the Secretary's decision—but they did act as counsel of record in this case, and Mr. Ensign remains so. Accordingly, both have generally engaged in communications with their agency clients that are protected by the attorney-client privilege, including discussions in advance of and during the TRO hearings in this case. Putting these attorneys on the stand, and inviting cross-examination by opposing counsel, poses an intolerably high risk of violating the

8

privilege. That is why courts strongly resist efforts to depose litigation counsel, unless they are the sole source of critically important information. *See Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009) (discovery burden shifts because "[d]epositions of opposing counsel are generally disfavored in federal courts"). Here, as explained, Mr. Ensign and Mr. Reuveni are entirely irrelevant, because they do not have any personal knowledge of the only issue that the Court seeks to probe.

Notably, although Mr. Reuveni no longer works for DOJ, the privilege is held by the client (Defendants here) and he is not authorized to waive it. *See In re von Bulow*, 828 F.2d 94, 100–01 (2d Cir. 1987) ("attorney may not waive the privilege without his client's consent"); *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005). Nor does it matter that he has made certain disclosures as an ostensible "whistleblower"; those disclosures, whether authorized or not, do not waive the privilege, and do not permit the Court to invite further violations of the privilege to which Defendants object. *Id.*

Accordingly, in the event that the Court refuses to reconsider and compels testimony from these two litigation counsel, Defendants request a protective order confirming that privileged information will not be sought or elicited as part of these proceedings. If the Court intends to hold that the privilege has been waived, obviated, or otherwise overcome for any reason, Defendants respectfully request that the Court defer the scheduled hearing to allow them to seek mandamus relief from the Court of Appeals in an orderly fashion before being compelled to disclose that information. Once privileged information is disclosed, that bell cannot be unrung; that is why privilege disputes often require mandamus relief. *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014) (granting mandamus relief to protect privilege). Defendants will seek this relief expeditiously if needed. Given that nine months have already elapsed since the

9

underlying events, allowing a few weeks for appellate proceedings to ensure that privileges may be preserved poses no harm and is clearly warranted.[3]

As to the scope of the testimony more generally, it should be strictly limited to the matter before the Court—namely, the bases for the at-issue decision on March 15. Testimony should thus be limited to the events of March 15 after approximately 6:45 PM (when the Court made its oral directives) in connection with this litigation. While perhaps obvious, this is an important limitation because Mr. Ensign is supervising numerous other active litigation matters where opposing counsel are engaged (and Mr. Reuveni was involved in such cases during his time as a DOJ attorney too). This proceeding cannot become an opportunity for the ACLU to probe other matters.

**6.** Finally but relatedly, Defendants renew their objection to Plaintiffs' participation in this inquiry at all. As Defendants previously explained, criminal contempt concerns the "dignity of the court" and "no longer involves the original litigants as the parties of interest"; Plaintiffs thus lack standing to participate and could only appear as fact witnesses. *See Ramos Colon v. U.S. Atty. for Dist. of Puerto Rico*, 576 F.2d 1, 5 (1st Cir. 1978); *see also Jones v. Clinton*, 206 F.3d 811, 812 (8th Cir. 2000); *United States v. Concord Mgmt. & Consulting LLC*, 2019 WL 7758635, at *6 (D.D.C. July 1, 2019). Moreover, it would be inappropriate for an interested party to be conducting a criminal investigation on behalf of the Court, even assuming the Court itself has that power. Doing so raises "a likelihood of bias or an appearance of bias" that could impugn the validity of any referral based on such partisan participation. *Taylor v. Hayes*, 418 U.S. 488, 501 (1974). The Court did not address this issue in its order, and Defendants therefore renew the concern and ask the Court to preclude Plaintiffs from participating in any testimonial proceeding.

---

[3] In the alternative, the Court could adopt a protocol by which DOJ attorneys are permitted to instruct either witness not to answer questions on privilege grounds, and the Court would make a determination following the hearing on the assertions of privilege, with an opportunity for appellate review before the witnesses are compelled to return and provide answers to any questions that the Court concludes were proper.

\* \* \*

For the reasons above, the Court should vacate its order of December 8 and make a referral decision based on the law and the uncontested facts without compelling further testimony. If the Court does proceed with testimony, it should grant a protective order with respect to privileged information or provide Defendants with an opportunity to seek appellate relief in advance of any testimony; and the Court should also limit the scope of the testimony and preclude Plaintiffs from participating. Defendants respectfully request a ruling on this motion by December 12.

Dated: December 10, 2025            Respectfully submitted,

Brett A. Shumate
Assistant Attorney General

*/s/ Tiberius Davis*
Tiberius Davis
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice

Anthony Nicastro
Acting Director
Office of Immigration Litigation

*Counsel for Respondents–Defendants*