**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 25-____**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

In re DONALD J. TRUMP, in his official capacity, et al.,

Petitioners.

———————————

On Petition for a Writ of Mandamus to the United States
District Court for the District of Columbia
Case No: 1:25-cv-00766-JEB

———————————

**PETITION FOR A WRIT OF MANDAMUS**

———————————

BRETT A. SHUMATE
*Assistant Attorney General*
YAAKOV M. ROTH
*Principal Deputy Assistant Attorney*
*General*
TIBERIUS DAVIS
*Counsel to the Assistant Attorney*
*General*

Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202)-514-4357

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................1

STATEMENT......................................................................................................5

ARGUMENT....................................................................................................12

    I.       The District Court's Order Offends the Separation of Powers.......... 13

    II.     The District Court's Order Threatens the Attorney-Client Privilege.. 22

    III.    Mandamus Relief Is Warranted...................................................25

CONCLUSION.................................................................................................28

CERTIFICATE OF COMPLIANCE ...............................................................29

CERTIFICATE OF SERVICE ........................................................................30

ADDENDUM ...................................................................................................31

ADDENDUM TABLE OF CONTENTS..........................................................32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
   968 F.2d 523 (5th Cir. 1992)......................................................................14

*Chatman-Bey v. Thornburgh*,
   864 F.2d 804 (D.C. Cir. 1988)...................................................................19

*Cheney v. U.S. Dist. Court for D.C.*,
   542 U.S. 367 (2004)...........................................................................12, 26

*Combs v. Nick Garin Trucking*,
   825 F.2d 437 (D.C. Cir. 1987)...................................................................19

*Crawford v. Jackson*,
   323 F.3d 123 (D.C. Cir. 2003)...................................................................19

*Ex parte Fisk*,
   113 U.S. 713 (1885)..................................................................................19

*Ford v. Kammerer*,
   450 F.2d 279 (3d Cir. 1971).......................................................................16

*Ganek v. Leibowitz*,
   874 F.3d 73 (2d Cir. 2017)........................................................................15

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*,
   263 F.R.D. 1 (D.D.C. 2009).......................................................................23

*In re Attorney General*,
   596 F.2d 58 (2d Cir. 1979) .......................................................................27

*In re Cheney*,
   544 F.3d 311 (D.C. Cir. 2008)...................................................................27

*In re Estab. Inspection of Hern Iron Works, Inc.*,
   881 F.2d 722 (9th Cir. 1989)......................................................................21

*In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*,
    401 F.3d 247 (4th Cir. 2005)........................................................................22

*In re Green*,
    369 U.S. 689 (1962)...................................................................................19

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014)........................................................12, 24, 27

*In re Noem*,
    No. 25-2936 (7th Cir. Oct. 31, 2025)..........................................................18

*In re Novak*,
    932 F.2d 1397 (11th Cir. 1991) ...................................................................21

*In re Sealed Case*,
    107 F.3d 46 (D.C. Cir. 1997) .......................................................................23

*In re von Bulow*,
    828 F.2d 94 (2d Cir. 1987) ....................................................................22, 27

*J.G.G. v. Trump*,
    147 F.4th 1044 (D.C. Cir. 2025)................................6, 8, 9, 12, 16, 19, 27

*J.G.G. v. Trump*,
    No. 25-5067, 2025 WL 914682 (D.C. Cir. Mar. 26, 2025)..............................7

*Jones v. Clinton*,
    206 F.3d 811 (8th Cir. 2000)........................................................................25

*Kienle v. Jewel Tea Co.*,
    222 F.2d 98 (7th Cir. 1955) .........................................................................24

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009)....................................................................................12

*North Carolina v. Pearce*,
    395 U.S. 711 (1969)....................................................................................16

*Ramos Colon v. U.S. Atty. for Dist. of Puerto Rico*,
    576 F.2d 1 (1st Cir. 1978)......................................................................24, 25

*Rumsfeld v. Padilla*,
    542 U.S. 426 (2004)...................................................................................19

*Taylor v. Hayes*,
    418 U.S. 488 (1974)...................................................................................25

*Trump v. J. G. G.*,
    604 U.S. 670 (Apr. 7, 2025) ...............................................................7, 19

*Trump v. United States*,
    603 U.S. 593 (2024)...................................................................................14

*United States v. Concord Mgmt. & Consulting LLC*, 2019 WL 7758635 (D.D.C.
    July 1, 2019)..............................................................................................25

*United States v. Fokker Servs. B.V.*,
    818 F.3d 733 (D.C. Cir. 2016)...................................................................26

*United States v. Hansen*,
    772 F.2d 940 (D.C. Cir. 1985)...................................................................17

*United States v. Joyce*,
    498 F.2d 592 (7th Cir. 1974)......................................................................16

*United States v. Marshall*,
    371 F.3d 42 (2d Cir. 2004) ........................................................................13

*United States v. Neal*,
    101 F.3d 993 (4th Cir. 1996)................................................................14, 15

*United States v. Nixon*,
    418 U.S. 683 (1974)...................................................................................27

*United States v. Straub*,
    508 F.3d 1003 (11th Cir. 2007) .................................................................20

*United States v. Taylor*,
    139 F.3d 924 (D.C. Cir. 1998)...................................................................17

*United States v. Texas*,
    599 U.S. 670 (2023)...................................................................................13

*United States v. United Mine Workers of Am.*,
  330 U.S. 258 (1947)..................................................................................20

*United States v. White*,
  887 F.2d 267 (D.C. Cir. 1989).................................................................17

*Walker v. City of Birmingham*, 388 U.S. 307 (1967).......................................20

*Willy v. Coastal Corp.*,
  503 U.S. 131 (1992)..................................................................................20

*Young v. United States ex rel. Vuitton et Fils SA*,
  481 U.S. 787 (1987)............................................................................ 14, 25

## Court Rules

Fed. R. Crim. P. 42......................................................................................14

## Statutes

18 U.S.C. § 402............................................................................................13

28 U.S.C. § 1651..........................................................................................12

50 U.S.C. § 21................................................................................................5

## Executive Actions

*Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua*,
  90 Fed. Reg. 13033........................................................................................5

## <u>INTRODUCTION</u>

Nine months ago, the district court in this case issued a TRO that prohibited the removal of a class of aliens detained under the Alien Enemies Act (AEA). The Supreme Court promptly vacated that order for lack of jurisdiction. But ever since, the district judge has been doggedly pursuing an idiosyncratic and misguided inquiry into whether Defendants willfully violated the TRO and thus committed criminal contempt. Defendants did not—and have repeatedly and forthrightly explained why not—but the court has barreled ahead. First, the court found probable cause for contempt and threatened to initiate criminal proceedings unless the Government took steps to comply with the since-vacated TRO. This Court granted a writ of mandamus quashing that improperly coercive order. Undaunted, the judge has now decided to personally investigate the *mens rea* of senior decisionmaking executive officials and, supposedly to that end, has compelled live testimony *next week* from government attorneys. This latest order portends a circus that threatens the separation of powers and the attorney-client privilege alike. Mandamus is once again required.

Since March 2025, Defendants have consistently explained that the district court's TRO only prohibited "removal" and thus did not require the Government to return alien enemies who had been physically removed from the United States before the order. While the judge had made some oral statements at an earlier hearing that suggested he wanted the Government to "turn planes around," those statements were

1

inconsistent, tentative, and ultimately superseded by a written order that purported to memorialize the decree but said *nothing* about returning anyone from abroad. As Judge Katsas reasoned last time, Defendants were correct that the TRO did not require returning already-removed aliens. Even if one disagrees, his concurrence makes it impossible to conclude that Defendants defied a *clear and unambiguous* order, a basic prerequisite for pursuing criminal contempt charges.

Still, the district court has plunged forward—and in a doubly unconstitutional manner: by conducting its own criminal investigation (contra the separation of powers) and doing so in a way that appears designed to punish Defendants for their successful mandamus petition (contra the Due Process Clause). In its original order, the district court found probable cause on every element of contempt and merely directed Defendants to identify the officials who made the decision to continue the transfer of the already-removed aliens. Defendants have since done so, naming both the decisionmaking official (Secretary Noem) and the senior attorneys who advised her, with sworn declarations from each. But the judge has moved the goalposts, insisting without explanation he now lacks sufficient information on "willfulness" and using that as a hook to compel testimony. But evaluating a putative defendant's *mens rea* is an *investigative* function—a core executive power. The court has strayed far beyond its role, which is limited to identifying a potential violation and referring it for prosecution, and deep into constitutionally uncharted territory.

The judge's order is also incoherent on its own terms. There was no willful violation as a matter of law because the TRO did not clearly forbid the conduct at issue. But if the court disagrees, there are no "factual" issues to investigate. Perhaps a defendant could invoke an advice-of-counsel defense at trial, but there is no basis to compel that choice at the probable-cause phase. Plus, the witnesses the court has called have *no personal knowledge whatsoever* of the decisionmaker's scienter. One is the Government's lead litigation counsel who has attested that he played no role in the decision; the other is a "whistleblower" who has admitted he was excluded from leadership discussions. The forthcoming hearing has every appearance of an endless fishing expedition aimed at an ever-widening list of witnesses and prolonged testimony. That spectacle is not a genuine effort to uncover any relevant facts.

While the testimony is completely irrelevant to its stated purpose, it does pose a mortal threat to the attorney-client privilege. Both witnesses are or were lawyers for the Government; the Government has not waived the privilege. Yet the judge intends to put them on the stand and even allow Plaintiffs—adversary counsel from the ACLU—to cross-examine them. That is grossly improper by every measure. And the ACLU has made clear it believes all privileges have either been waived or vitiated by the "crime-fraud" exception. Defendants have sought an advance ruling or protocol to resolve any privilege disputes with opportunity for appellate review, yet the district court has to date refused to commit to anything.

In short: Absent this Court's intervention, the district judge plans to compel wide-ranging testimony from government lawyers starting on Monday, with cross-examination by opposing counsel who have a partisan interest in attacking the Government and its officials, with no meaningful protections in place to protect privilege despite overt threats to vitiate all such protections, and to do so in service of a putative criminal investigation that the court has no constitutional authority to undertake, and that a judge of this Court has already determined is fundamentally flawed as a matter of law, even though these witnesses have no knowledge relevant to the sole question that the court seeks ostensibly to investigate.

This long-running saga never should have begun; should not have continued at all after this Court's last intervention; and certainly should not be allowed to escalate into the unseemly and unnecessary interbranch conflict that it now imminently portends. This Court should therefore again grant mandamus relief, this time foreclosing any further inquiry. The Court should also order the case to be reassigned given the strong appearance that the district judge is engaged in a pattern of retaliation and harassment, and has developed too strong a bias to preside over this matter impartially. By separate motion, Defendants also request a stay pending resolution of this mandamus petition, including an emergency administrative stay to prevent next week's hearings, which are otherwise scheduled to begin on Monday morning.

**STATEMENT**

**1.** The AEA empowers the President to detain and remove alien enemies when there is a "any invasion or predatory incursion" by a "foreign nation or government." 50 U.S.C. § 21.  On March 15, 2025, the President invoked the AEA to detain and remove a class of such aliens: Venezuelan citizens, 14 or older, who are members of Tren de Aragua (TdA), an entity that the State Department has designated a foreign terrorist organization. *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua*, 90 Fed. Reg. 13033.

**2.** On Saturday, March 15, five Venezuelan nationals detained in Texas sued in the federal district court in the District of Columbia to block the Government from removing them under the Proclamation.  They moved to certify a class, ECF 1, at 12, and for a TRO barring their removal, ECF 3-2, at 2.

Within hours, the district court granted an initial TRO and ordered Defendants not to "remove any of the individual Plaintiffs from the United States for 14 days absent further Order of the Court." 3/15/25 Second Minute Order.

Later that day, the court held a hearing.  It orally granted class certification and held that Plaintiffs were likely to succeed on the merits of their challenge to the AEA removals.  Addressing the implementation of its order, the court reassured counsel it "w[ould] issue a minute order memorializing [a TRO] so you don't have to race to write it down." ECF 20 at 42.  The court explained that the TRO "would

be to prevent the removal of the class for 14 days or until further order of the Court."
*Id.* Thereafter, in light of an earlier assertion by Plaintiffs' counsel that flights were scheduled to take off during the hearing, the court stated that "any plane containing these folks that is going to take off or is in the air needs to be returned to the United States, but those people need to be returned to the United States[,] [h]owever that's accomplished, whether turning around a plane or not embarking anyone [in the class] on the plane[.]" *Id.* at 43. The court then repeated its pledge to "issue a minute order memorializing all of this." *Id.* at 46.

Shortly after the hearing ended, at 7:25 PM, the court issued a minute order provisionally certifying a class and enjoining Defendants "from removing members of such class (not otherwise subject to removal) pursuant to the Proclamation for 14 days or until further Order of the Court." As memorialized, the court's order did *not* direct Defendants to turn around planes or to return already-removed aliens.

Two AEA flights had departed from the United States *before* the TRO, and even before the court's oral directives. *J.G.G. v. Trump*, 147 F.4th 1044, 1051 (D.C. Cir. 2025) (Katsas, J., concurring); ECF 81 at 8-9. Early the next day, AEA detainees on those flights, who had been physically removed from the United States before the order, were transferred to the custody of El Salvador. *Id.* There is not, and has never been, any factual dispute about this timeline.

**3.**  The Government appealed both TRO orders and filed emergency motions for stays pending appeal.  After oral argument, this Court issued a divided ruling denying a stay, with each judge writing separately.  *J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *1 (D.C. Cir. Mar. 26, 2025) (per curiam).

The Supreme Court then vacated the TROs, holding that the district court lacked jurisdiction to issue them.  *Trump v. J. G. G.,* 604 U.S. 670, 672 (Apr. 7, 2025) (per curiam).  The Supreme Court held that Plaintiffs' claims "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas," and that "[f]or 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement,'" which in this case was in Texas.  *Id.*

**4.**  In the meantime, the district court issued an order to show cause regarding whether the Government had violated the TRO by continuing the transfer of custody of the aliens who had been removed from the United States before the TRO issued.  As the Government explained, it had complied with the TROs by not removing any class member from United States territory after the TRO issued.  *See* ECF 58.

Despite the intervening Supreme Court vacatur, the district court proceeded to find probable cause that Defendants committed criminal contempt by violating its TRO.  ECF 81. The court reasoned that its "written TRO and the oral command defining compliance were each sufficiently clear and specific in proscribing the handover of class members to Salvadoran officials"—though the TRO said nothing

of the sort. *Id.* at 31. The court characterized the Government's reading of the TRO as "clever" and admitted it was consistent with "dictionary definitions," but still rejected it, reasoning that Defendants should have understood the written order as having incorporated the desires that the judge had expressed orally. *Id.* at 24.

Having found probable cause, the court offered a choice. The Government could "purge its contempt" within 7 days "by asserting custody of the individuals who were removed in violation of the Court's classwide TRO," *i.e.*, taking custody from El Salvador. *Id.* at 43-44. Alternatively, the Government could "identify[] the individual(s) who … made the decision not to halt the transfer of class members out of U.S. custody." *Id.* If the Government took the latter course, the court would "'request that the contempt be prosecuted by an attorney for the government'" or "'appoint another attorney to prosecute the contempt.'" *Id.*

**5.** The Government filed a mandamus petition from the probable-cause order, and this Court granted an administrative stay pending its resolution of the petition. On August 8, the Court granted the mandamus petition by a divided vote. *J.G.G.*, 147 F.4th at 1044 (per curiam).

Judges Katsas and Rao wrote concurring opinions, offering independent bases for granting the writ. Judge Katsas explained that the Government's interpretation of the TRO was correct and thus it did not violate any order, much less a clear order as required for criminal contempt. *Id.* at 1051-57. Judge Rao reasoned that the

district court's "purge" option was unconstitutional, because contempt could not be used to enforce a vacated order, particularly to force diplomatic outreach in a way that impermissibly intrudes on Executive authority. *Id.* at 1065-70. Judge Pillard dissented. *Id.* at 1075-99. Plaintiffs then sought en banc rehearing, and this Court denied that request.

**6.** Almost immediately following the denial of rehearing—even before the issuance of the mandate—the district judge made clear he would resume his inquiry. Defendants objected, because Judge Katsas's determination that Defendants had complied with the TRO made it impossible to establish beyond a reasonable doubt that Defendants' conduct rose to the level of criminal contempt. ECF 195. But Defendants added that, if the court disagreed, the official who decided to continue the transfer of custody was Secretary of Homeland Security Kristi Noem, after receiving privileged legal advice from the Acting DHS General Counsel and senior leadership of the Department of Justice (namely, the Deputy Attorney General and then-Principal Associate Deputy Attorney General). *Id.*

The district court rejected Judge Katsas's opinion as irrelevant because it was not joined by a majority of the panel or en banc court. ECF 196. The court instead took the view that the appellate ruling only foreclosed his "purge" option. ECF 197. The judge thus ordered declarations from the officials involved in the decision. ECF 196.

Defendants complied, producing declarations from Secretary Noem, Acting DHS General Counsel Joseph Mazzara, and Deputy Attorney General Todd Blanche. ECF 198.  Third Circuit Judge Emil Bove, who had been Principal Associate Deputy Attorney General at the relevant time, also submitted his own declaration to the court.  ECF 199.  All the declarants attested that Secretary Noem had made the decision after her receipt of legal advice from the other declarants.  None disclosed the substance of the legal advice, because of the attorney-client privilege.

Although the district court's original contempt order had found probable cause on all three elements of criminal contempt and merely sought the identities of the relevant officials to ensure that the right individuals were referred for prosecution, the court took a different approach after receiving those names post-remand.  Now, the judge declared that he still lacked information sufficient to determine whether the supposed TRO violation had been "willful." ECF 200. Ostensibly to address that gap in information about "the bases of the [Secretary's] decision," the court ordered live testimony.  *Id.*  But not from officials at DHS or the attorneys who advised the Secretary.   Instead, the court ordered the Government to produce *its litigation counsel in this case*, Deputy Assistant Attorney General Drew Ensign, for testimony next week.  *Id.*  The court further directed Plaintiffs to seek to secure the appearance of a former government attorney, Erez Reuveni, who became a self-appointed "whistleblower" after his termination from the Justice Department.  *Id.*

**7.**  Defendants moved for reconsideration or a protective order.  ECF 201. Defendants explained that no further evidence of "willfulness" was necessary or available absent a decision to waive the attorney-client privilege; that the order appeared to reflect retaliation for Defendants' successful mandamus petition by seeking testimony that the court had not previously deemed necessary; that neither Ensign nor Reuveni had any information relevant to the question at hand in all events, as neither had advised Secretary Noem (or even the attorneys who advised her); and that, at minimum, such testimony threatened the attorney-client privilege and thus should be strictly circumscribed with a protocol for resolving privilege disputes in an orderly fashion with a chance for appellate review.  *Id.*

For his part, Reuveni sent the district judge a letter stating his intent to appear and testify, but also confirming that his testimony would relate to attorney-client privileged communications, and effectively asking the court to order him to provide that testimony so that he could do so without violating ethical duties.  Plaintiffs also opposed Defendants' motion; they too made clear they intend to elicit privileged information, but took the position that all such privileges had been waived or were vitiated by the "crime-fraud" exception. ECF 205.  Their filing urges a wide-ranging inquiry beyond the contempt theory that the district judge has articulated, making clear that they contemplate an escalating series of inquests dedicated to identifying supposed Executive Branch misconduct.  *See id.*

## **ARGUMENT**

This Court may issue mandamus to vindicate a "clear and indisputable" right, if "no other adequate means" of relief exists, and if the writ is "appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004); *see also* 28 U.S.C. § 1651.  An order that improperly encroaches on the separation of powers meets those requirements.  *See Cheney*, 542 U.S. at 382.  Indeed, this Court has granted mandamus in this very case on that basis.  *J.G.G.*, 147 F.4th at 1045.  Mandamus relief is also classically appropriate to preserve the attorney-client privilege, before privileged information is irrevocably released.  *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 756 (D.C. Cir. 2014) (Kavanaugh, J.).

Here, both traditional considerations support mandamus.  The district court's order usurps core executive functions by conducting a criminal investigation into the *mens rea* of senior executive officials.  It fans the flames of inter-branch conflict by turning the judge into an inquisitor for no legitimate purpose given that the contempt charges are legally groundless and the testimony irrelevant.  And it endangers the attorney-client privilege by subjecting litigation counsel to cross-examination by their adversaries, who have made clear that they intend to turn this proceeding into the equivalent of a congressional oversight hearing.  Despite good-faith efforts to comply, this has become untenable.  Mandamus is necessary and appropriate.

## I.  The District Court's Order Offends the Separation of Powers.

If the district court continues to believe that Defendants violated its TRO, the court is free to refer the matter for potential prosecution.  But there is no authority for the court to conduct an independent criminal investigation on its own.  And its decision to do so here is dubious and troubling, given that Defendants have already provided all of the relevant, non-privileged information, and even the district court—before Defendants' last mandamus petition—had no difficulty reaching a probable-cause determination as to every element of the supposed offense, without any need for further evidence.  The district court's order both usurps executive power and needlessly generates inter-branch conflict by appointing itself as an investigator seeking to identify and root out imagined government misconduct.

**A.**  Criminal contempt is a criminal offense, and the investigation and prosecution of crimes is reserved to the Executive Branch.  *United States v. Texas*, 599 U.S. 670, 679 (2023) ("The Executive Branch—not the Judiciary—makes arrests and prosecutes offenses on behalf of the United States.").  While it is true that federal courts have the power to summarily prosecute criminal contempt "committed in the presence of the court," 18 U.S.C. § 402, that is "reserved for 'exceptional circumstances' and a 'narrow category' of contempt" that no one argues applies here, *United States v. Marshall*, 371 F.3d 42, 45 (2d Cir. 2004).

For all other criminal contempt cases, the law makes clear that the "court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney." Fed. R. Crim. P. 42(a)(2).  There is no further role for the court to operate as an investigator or prosecutor.  Indeed, "the courts of appeals are in accord that a district court exceeds its power in assuming the role of a prosecutor during proceedings for indirect criminal contempt." *United States v. Neal*, 101 F.3d 993, 998 (4th Cir. 1996).

Referral is required not only for the ultimate prosecution, but also for any preceding investigation.  *See Young v. United States ex rel. Vuitton et Fils SA*, 481 U.S. 787, 801-02 (1987) ("Referral will thus enhance the prospect that *investigative activity* will be conducted by trained prosecutors pursuant to Justice Department guidelines.") (emphasis added).  After all, courts have no "investigative or prosecutory authority."  *Id.* at 820 (Scalia, J., concurring in the judgment).  Rather, "the Executive Branch has 'exclusive authority and absolute discretion' to decide which crimes to investigate and prosecute." *Trump v. United States*, 603 U.S. 593, 620 (2024).  So a court violates the separation of powers when it "investigate[s] the incriminating facts through extrajudicial means," as doing so "improperly assume[s] a prosecutorial role."  *Neal*, 101 F.3d at 998; *see also Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 531 (5th Cir. 1992) (court erred when it "sua sponte initiated the contempt proceeding" and "questioned the witnesses").

**B.** The district court's inquiry here exceeds its authority and is now intruding on the prerogatives of a co-equal branch. Even assuming the court could inquire into the identity of the alleged contemnors, Defendants provided that information through sworn declarations. ECF 198. The district court's tepid justification for additional investigation is that it lacks sufficient information to evaluate whether a violation was "willful." ECF 200 at 1. But that sort of factual inquiry into a decisionmaker's subjective *mens rea* is a task for a prosecutor in evaluating whether to pursue charges; there is no authority for a federal judge, in the context of a criminal contempt inquiry, to hold a mini-trial dedicated to criminal intent. *See Neal*, 101 F.3d at 998. Nor is such an inquiry necessary before making a referral, as "the law has long recognized that probable cause does not demand evidence of every element of a crime" and "is particularly tolerant with respect to the *mens rea* element." *Ganek v. Leibowitz*, 874 F.3d 73, 86 (2d Cir. 2017).

Indeed, the district court's rationale is hardly credible, given that the court *already found* probable cause for a referral, months ago. ECF 81. At that point the court asked for declarations merely to "identify the individual(s) responsible for the contumacious conduct," not to further evaluate willfulness. *Id.* at 44. Defendants have now provided that information, and the district court can make the referral if it continues to believe there was a violation. The court's choice to instead compel live testimony raises serious concerns about vindictiveness and retaliation; there is no

apparent legitimate reason that the court would need such testimony despite finding probable cause with less evidence before. *Cf. North Carolina v. Pearce*, 395 U.S. 711, 725 (1969) (prohibiting harsher sentence after appeal).

**C.** The impropriety of the district court's unprecedented and intrusive order is further confirmed by how manifestly unnecessary it is, on multiple levels.

For one, it is now clearer than ever that no contempt charges could be viable. Criminal contempt cannot lie unless the order is "clear and decisive and contain[ed] no doubt." *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974); *see also Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971) ("ambiguities and omissions in orders redound to the benefit of the person charged with contempt"). Yet Judge Katsas, looking at the issue fresh, concluded that Defendants *did not violate the TRO* as a matter of law. *See J.G.G.*, 147 F.4th at 1052-55 (Katsas, J., concurring). He outlined the reasons why at length in his concurring opinion, and Defendants do not repeat them here. *See id.* The district court dismissed the concurrence on the ground that it was not joined by a majority of the court, but that misses the fundamental point. Even if one disagrees with Judge Katsas's interpretation of the TRO, there is no way that an interpretation adopted by a federal appellate judge after careful consideration could be so plainly wrong as to constitute criminal contempt after Defendants acted consistent with it in the heat of a fast-moving national security operation.

For another, there are no additional relevant, admissible facts to share.  As Defendants' declarations establish, Secretary Noem made the decision at issue after receiving privileged legal advice regarding the TRO.  ECF 198-1.  The district court justified its order as necessary to determine "the bases of the [Secretary's] decision."  ECF 200 at 1.  But the substance of the legal advice given to the Secretary is, of course, protected by the attorney-client privilege.  A defendant at a contempt trial would be entitled to assert an advice-of-counsel defense to negate willfulness—and in doing so, waive the privilege—but that would be a choice for such a defendant to raise at trial.  *See United States v. Hansen*, 772 F.2d 940, 947 (D.C. Cir. 1985) (recognizing "[g]ood faith reliance upon advice of counsel" as a defense to specific intent crimes); *United States v. Taylor*, 139 F.3d 924, 932 (D.C. Cir. 1998) (recognizing it as defense to criminal contempt).  Defendants have not raised any such defense to the district court's probable cause inquiry here.  Nor can the court force anyone to raise or waive that affirmative defense at this preliminary stage. *See United States v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989) (R.B. Ginsburg, J.) ("Reliance on advice of counsel is an affirmative defense, an assertion more positive and specific than a general denial of criminal intent.").  Defendants have been clear from the outset about why their conduct objectively comported with the TRO, but the court cannot further probe the subjective "bases of the [Secretary's] decision" without piercing the privilege, which there is no basis to do.

For a third, the witnesses that the district court has ordered to testify have no knowledge relevant to the only factual question the court has identified, since they played no role in the Secretary's decision or the development of the legal advice given to her. The district court did not order Defendants to produce the Secretary or the senior officials who advised her, likely because hauling senior executive officials to testify about matters submitted under oath would itself be an encroachment on the separation of powers warranting mandamus. *See, e.g.*, Order, *In re Noem*, No. 25-2936 (7th Cir. Oct. 31, 2025) (granting mandamus). Instead, however, the court has compelled testimony from two litigators who have nothing to say on the question. Deputy Assistant Attorney General Drew Ensign represents Defendants in this litigation, and appeared in that capacity at the TRO hearings on March 15, 2025—but beyond conveying the court's oral statements and written order to his clients, Ensign played no role in formulating the legal advice that was provided to Secretary Noem and was not involved in the decision at issue. He has so attested under oath. ECF 201-1. As for Reuveni, he likewise has no relevant firsthand information about the advice given to the Secretary or the basis for her decision. Even in his so-called "whistleblower" report, he never claims otherwise. ECF 158-1. Indeed, his report acknowledges he was often excluded from discussions with leadership at DHS and DOJ. *Id.* at 11-14. So the only testimony he could give would relate to his own subjective understanding of the TRO, which has no legal relevance.

**D.**    Any criminal contempt proceedings are fundamentally flawed for still another reason: It has been true for nearly 150 years that contempt cannot exist for the violation of an order that lacked jurisdiction in the first place. *See Ex parte Fisk*, 113 U.S. 713, 714 (1885).  The Supreme Court vacated the order at issue here for a lack of jurisdiction, because Plaintiffs' claims sounded in habeas, yet "jurisdiction" for habeas claims "lies in only one district: the district of confinement," which is not where Plaintiffs sued their immediate custodians. *Trump*, 604 U.S. at 672 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (emphasis added).

The district court believed that even though the Supreme Court found a lack of jurisdiction, it really had identified a defect more akin to venue than subject matter jurisdiction.  ECF 81 at 21-22.  That analogy is inapt.  Seeking habeas outside the district of confinement, even if it does not go to subject-matter jurisdiction, is more analogous to personal jurisdiction than venue. *See Crawford v. Jackson*, 323 F.3d 123, 125 (D.C. Cir. 2003); *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 810 (D.C. Cir. 1988).  And a "judgment entered without personal jurisdiction over a defendant is void as to that defendant." *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987).  If the underlying "order itself, being without jurisdiction, is void, and the order punishing for the contempt is equally void." *Ex parte Fisk*, 113 U.S. at 714.  As a result, no criminal contempt can exist here. *See In re Green*, 369 U.S. 689 (1962); *J.G.G.*, 147 F.4th at 1062 (Katsas, J., concurring) (collecting cases).

The district court's contrary authority (ECF 81 at 17-22) is inapposite. In *Walker v. City of Birmingham*, the Court expressly noted that the state court *had* jurisdiction, merely holding that collateral constitutional challenge to the order did not negate contempt. 388 U.S. 307, 315 (1967). And in *United States v. United Mine Workers of Am.*, the Court confirmed that contempt would be valid as long as the court had "jurisdiction over the subject matter and person." 330 U.S. 258, 282, 292-94 (1947). The district court focused heavily on *Willy v. Coastal Corp.*, 503 U.S. 131 (1992), which permitted Rule 11 monetary sanctions on an attorney where the underlying order lacked jurisdiction. *Id.* at 139. But as the Supreme Court noted, Rule 11 sanctions are "collateral to the merits" and deal with courts' power over attorneys "practicing before the courts" to ensure they "conduct themselves in compliance with the applicable procedural rules." *Id.* That case says nothing about the authority of courts to impose criminal contempt on a party in violation of an order that itself lacked jurisdiction and is thus inherently void.

The other cases that the district court cited make clear that *Ex parte Fisk* is still good law; they just hold that the principle applies only where the court lacked jurisdiction to enter the order at issue, not where the court lacks jurisdiction over the underlying case but issues an otherwise-proper order. *See, e.g.*, *United States v. Straub*, 508 F.3d 1003, 1006, 1010 (11th Cir. 2007). Even assuming that distinction could hold, it does not preserve the possibility of contempt here, where the district

court lacked jurisdiction to enter a TRO on claims that sound in habeas. The court thus lacked jurisdiction to issue that order itself. *See* ECF 81 at 21.

"[I]f the issuing court lacks … personal jurisdiction over the parties to it," then "the original order is deemed a nullity, and the accused contemnor cannot be fairly punished for violating nothing at all." *In re Novak*, 932 F.2d 1397, 1401–02 (11th Cir. 1991); *see also In re Estab. Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 726–27, 726 n.12 (9th Cir. 1989). That principle controls here and is yet another reason why the court's criminal contempt proceeding is legally futile and should not be permitted to continue.

\*      \*      \*

In short, the district court has assumed a prosecutorial function in violation of the separation of powers by conducting its own criminal investigation instead of referring the matter to the Justice Department. Worse, the court has done so in a way that instigates serious inter-branch tensions for no valid purpose (as the court's own earlier orders confirm), despite the legal dead-end that is clear from Judge Katsas's concurrence in the prior grant of mandamus, despite the obvious mismatch between the court's order and its ostensible purpose, and despite the jurisdictional bar that precludes any further contempt proceedings. This is an egregious and aberrational order that warrants a writ of mandamus before this district court does further irreparable damage to the separation of powers.

## II.    The District Court's Order Threatens the Attorney-Client Privilege.

Mandamus is warranted for a second traditional reason: ordering two litigators to the stand, subject to cross-examination by their opposing counsel, impermissibly threatens Defendants' attorney-client privilege.  Plaintiffs' ACLU counsel, who have no business participating in a contempt inquiry at all, have made clear they intend to take this opportunity to vitiate all privileges and to seek to root out suspected misconduct across the Government.  And the district court has refused to account for this risk by granting a protective order or otherwise adopting a protocol to ensure orderly resolution of disputes over the Government's privileges.

A.    Ensign serves, and Reuveni previously served, as counsel for Defendants *in this case*.  Accordingly, both have engaged in communications that are protected by the attorney-client privilege, including discussions in advance of and during the TRO hearings in this case.  And there is no basis for finding those privileges waived.  Contrary to Plaintiffs' claim below, Defendants have never put their legal advice at issue and have been careful not to waive it.  And although Reuveni is no longer employed by the Government, "the client holds the privilege" and has not waived it.  *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005).  Nor does it matter that he has made certain disclosures as a "whistleblower"; those do not permit the court to invite further violations to which Defendants object.  *See In re von Bulow*, 828 F.2d 94, 100–01 (2d Cir. 1987).

Putting these attorneys on the stand thus poses an intolerably high risk of violating the privilege. That is why courts "[d]epositions of opposing counsel are generally disfavored in federal courts." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009). Confirming the problem, Reuveni sent a letter to the district court effectively requesting an order directing him to divulge privileged communications so that he can do so without breaching his ethical obligations. (That letter does not yet appear on the public docket.) And Plaintiffs, late last night, filed a lengthy opposition arguing that Defendants had waived the privilege merely by *mentioning* that the provision of legal advice (without disclosing its substance), and contending that the district court should invoke the "crime-fraud" exception to pierce the privilege across the board. *See* ECF 205.[1]

Although Defendants raised this concern with the district court and requested either a protective order or else some sort of protocol to allow for adjudication of privilege disputes with opportunity for appellate review—and although Reuveni and Plaintiffs have both teed up the privilege disputes in their own submissions—the district court has taken no action to date. And the scheduled testimony is set to begin on Monday morning. As this Court has recognized, once privileged information is

---

[1] Notably, the crime-fraud exception requires *at least* probable cause that a crime was actually committed. *See In re Sealed Case*, 107 F.3d 46, 50 (D.C. Cir. 1997). So any invocation of that exception would only further confirm that the court has sufficient information to make a criminal referral, and that there is accordingly no legitimate need for any live testimony or further proceedings.

disclosed, that bell cannot be unrung. *In re Kellogg Brown & Root, Inc.*, 756 F.3d at 756. Here too, mandamus is required to preserve the Government's privileges and to prevent a far-reaching, unjustified inquest into attorney-client communications.

**B.**   The threat to Defendants' attorney-client privilege is exacerbated by another fundamental error and miscarriage of justice: allowing Plaintiffs and their ACLU attorneys to participate in the free-wheeling inquiry and cross-examine the witnesses. The court has not only ordered Defendants to put their litigation counsel on the stand, but also to subject him to cross-examination by opposing counsel—the same counsel litigating against Ensign (and previously Reuveni) in numerous high-profile immigration cases. And that counsel has made no secret of its intent to use this opportunity to seek sanctions and generally harass and punish the Government's counsel for doing their jobs. *See* ECF 205.

There is no basis for opposing counsel to participate in this roving inquiry, as criminal contempt concerns the "dignity of the court" and "no longer involves the original litigants as the parties of interest." *Ramos Colon v. U.S. Atty. for Dist. of Puerto Rico*, 576 F.2d 1, 5 (1st Cir. 1978). Whether a contempt proceeding should be investigated is a "matter concerning [the] defendant and the public, in which [the plaintiff's] interest is no greater than that of every member of the general public." *Kienle v. Jewel Tea Co.*, 222 F.2d 98, 100 (7th Cir. 1955). Plaintiffs thus lack standing to participate as anything other than fact witnesses (and here, not even that,

as they lack any relevant personal knowledge).  *See Ramos Colon*, 576 F.2d at 5;
*Jones v. Clinton*, 206 F.3d 811, 812 (8th Cir. 2000); *United States v. Concord Mgmt.
& Consulting LLC*, 2019 WL 7758635, at *6 (D.D.C. July 1, 2019).

Moreover, it would be inappropriate for an interested party to conduct a
criminal investigation on behalf of the district court, even assuming the court itself
has that power.  Opposing counsel are not neutral inquisitors; by definition they have
an interest in the underlying case and are obviously biased against Defendants.  That
makes it wholly improper for the court to let opposing counsel play any investigatory
role.  Indeed, the Supreme Court held that the appointment of a private prosecutor
was improper when the court "appoint[ed] counsel for an interested party."  *Young*,
481 U.S. at 809-14.  Granting "prosecutorial powers" under those circumstances
creates "an appearance of impropriety."  *Id.*  So too here.  Using opposing counsel
to investigate alleged contempt permits them to engage in prosecutorial functions
for their own private gain.  *Id.*  At a minimum, doing so raises "a likelihood of bias
or an appearance of bias" that could impugn the validity of any referral based on
such partisan participation.  *Taylor v. Hayes*, 418 U.S. 488, 501 (1974).

## III.  Mandamus Relief Is Warranted.

The varied and serious constitutional errors committed by the district court in
continuing its unlawful inquiry require immediate mandamus to prevent serious
irreparable harm. This Court may issue a writ of mandamus to vindicate a (1) "clear

and indisputable" right, where (2) "no other adequate means" of relief exists, if (3) the writ is "appropriate under the circumstances." *Cheney*, 542 U.S. at 380–81. Each of those requirements is plainly satisfied in this instance.

As explained above, the Government's right to relief in this case is "clear and indisputable." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 749 (D.C. Cir. 2016). The district court's ongoing inquiry dangerously intrudes on core executive prerogatives over investigations and prosecutions, presenting a classic case for mandamus to maintain the Constitution's separation of powers. *Cheney*, 542 U.S. at 382 ("Accepted mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities."). And it does so despite the fact that Defendants clearly did not violate the order at issue, much less a clear and definite one. Finally, dragging witnesses before the court whose only plausibly relevant knowledge is privileged unduly risks the disclosure of privileged information, which there is no valid basis to pierce.

The Government also has no other adequate means of relief. As before, these incursions on Article II functions will occur before any final contempt conviction and cannot be remedied after the fact. *See Fokker Servs.*, 818 F.3d at 741 (mandamus is proper for threats to "[t]he Executive's primacy in criminal charging decisions"). This prong is also "often [] met in cases where" there is a risk that a court

"erroneously order[s] disclosure of attorney-client privileged" information, because an appeal is not available and once "the cat is out of the bag." *In re Kellogg Brown & Root*, 756 F.3d at 760–61; *see also In re von Bulow*, 828 F.2d at 99 (same).

Finally, mandamus is clearly appropriate under these circumstances for all of the reasons this Court granted mandamus before. *See J.G.G.*, 147 F.4th at 1058-63, 1070-73. Immediate review is particularly appropriate to stave off a looming "constitutional confrontation" between the Executive and Judicial Branches. *United States v. Nixon*, 418 U.S. 683, 692 (1974). And it has been used in the early stages of proceedings to prevent testimony from executive officials that may harm a co-equal branch. *See In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008). As the Second Circuit has held in granting mandamus under similar circumstances, "a contempt sanction imposed on the Attorney General in his official capacity has greater public importance, with separation of powers overtones, and warrants more sensitive judicial scrutiny than such a sanction imposed on an ordinary litigant." *In re Attorney General*, 596 F.2d 58, 64 (2d Cir. 1979). The ongoing illegal inquiry here raises the same concerns. And those concerns are buttressed by the likely disclosure of privileged information, which by itself justifies mandamus. Relief is warranted now, before the district court escalates this constitutional confrontation any further.

## **<u>CONCLUSION</u>**

The Court should grant this petition for a writ of mandamus. The Court should also grant a stay of the order pending resolution of this petition, as requested in the accompanying stay motion. And the Court should reassign this case in light of the serious appearance of partiality created by the district court's actions.

Respectfully submitted,

> BRETT A. SHUMATE
> *Assistant Attorney General*
>
> YAAKOV M. ROTH
> *Principal Deputy Assistant Attorney General*
>
> *s/ Tiberius Davis*
> TIBERIUS DAVIS
> *Counsel to the Assistant Attorney General*
>
> Civil Division
> U.S. Department of Justice
> 950 Pennsylvania Avenue NW
> Washington, DC 20530
> (202)-514-4357

December 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 21(d)(1) because it contains 6,806 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 21(d) and 32(c) because it was prepared using Microsoft Word for Microsoft 365 MSO (Version 2509 Build 16.0.19231.20138) 64-bit in Times New Roman 14-point font, a proportionally spaced typeface.

*s/ Tiberius Davis*
TIBERIUS DAVIS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system.

I hereby certify that on December 12, 2025, I electronically filed the foregoing with the Clerk of the Court in the United States District Court for the District of Columbia, which will automatically serve a copy on all parties to that proceeding and to the trial-court judge through that court's electronic case management system.

*s/ Tiberius Davis*
TIBERIUS DAVIS

**<u>ADDENDUM</u>**

## ADDENDUM TABLE OF CONTENTS

Order (Dec. 8, 2025) ...............................................................Attachment A

Order (Nov. 28, 2025)............................................................Attachment B

Certificate of Interested Parties and Amici Curiae ...............................Attachment C