IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LIYANARA SANCHEZ, as next friend on behalf of FRENGEL REYES MOTA, *et al.*,

*Petitioners–Plaintiffs*,

J.G.G., *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Respondents–Defendants*.

Case No: 1:25-cv-00766-JEB

**RESPONSE TO COURT ORDER**

This Court has ordered Defendants to present a proposal to facilitate the filing of habeas corpus petitions by class members. ECF 214. At the outset, Defendants strenuously object to the lawfulness of any such relief for multiple reasons.

First, the Court lacks jurisdiction over the claims of class members who were detained by a separate sovereign and have since been transferred to their home country. The Court correctly concluded, in an earlier order, that Defendants did not have constructive custody over a prison controlled by El Salvador. *J.G.G. v. Trump*, 786 F. Supp. 3d 37, 73, 80 (D.D.C. 2025). In its more recent order, the Court reached the opposite conclusion only by refusing to view the "evidence in the light most favorable to the non-movant and drawing all justifiable inferences in its favor," as the summary judgment standard requires, *Feld v. Fireman's Fund Ins. Co.*, 909 F.3d 1186, 1190 (D.C. Cir. 2018), instead taking every inference in favor of Plaintiffs and against Defendants, ECF 215 at 6-24. Even so, there is no basis to change the Court's previous conclusion. Defendants did

1

not have control over El Salvador and could not produce the detainees, as copious evidence made clear. *See Munaf v. Geren*, 553 U.S. 674, 686 (2008). And El Salvador chose, of its own volition, to transfer class members to Venezuela. The Court previously recognized that second-guessing the interests of a foreign leader was "outside [its] ken," yet that is exactly what the Court then did. *Compare J.G.G.*, 786 F. Supp. 3d at 57, *with* ECF 215 at 12-18.

Second, even if Defendants had constructive custody, they clearly do not now that class members are ostensibly free in their native Venezuela. The Court nonetheless exercised habeas jurisdiction by making the extraordinary determination that designation under the Alien Enemies Act (AEA) gives rise to ongoing collateral consequences. But any potential impacts on travel and return are insufficient under binding precedent. *See Gul v. Obama*, 652 F.3d 12, 18 (D.C. Cir. 2011). And the other consequences that the Court identified, like "property seizure," are wholly speculative. ECF 215 at 25. The Court's analysis was patently erroneous and thus Defendants continue to object to any relief.

All of that aside, circumstances in Venezuela have materially changed since the Court issued its order. Nicolas Maduro is now in United States custody awaiting trial; the situation on the ground in Venezuela is in flux; and the United States' relations with the regime of Maduro's successor, so-called Acting President Delcy Rodríguez, are at an extraordinarily sensitive juncture. In response to the Court's order, given the fluid situation in Venezuela, Defendants do not believe there is any feasible way to allow class members to file habeas petitions at this time. *See* Rubio Decl., ¶¶ 3-4. Indeed, the Secretary of State has determined that either path that the Court has suggested would risk material damage to U.S. foreign policy interests at this delicate juncture. *Id.*; ECF 214.

The Court has referenced the possibility of holding remote habeas hearings while the class members remain in Venezuela. Defendants believe that approach would pose insurmountable legal and practical obstacles, and would not "satisfy the requirements of due process." ECF 215 at 43. *First*, Defendants could not meaningfully enforce perjury laws against witnesses in Venezuela, especially given the lack of an applicable extradition treaty. *Second*, Defendants may not be able to verify the identity of individuals that might testify in such remote proceedings. *Third*, given the current political instability in Venezuela, there is a serious risk of intentional interference with remote proceedings. Rubio Decl. ¶ 4. And Petitioners are likely to complain that they will not have sufficient access to evidence or counsel given the fluid and volatile situation in Venezuela. Moreover, conducting such hearings from Venezuela may prompt diplomatic issues with the existing regime in Venezuela. There appears to be no precedent in U.S. history for such a mass use of remote hearings. Remote habeas proceedings conducted with numerous Petitioners in a foreign nation undergoing significant changes would substantially prejudice Defendants and prevent fair adjudication of any issues presented.

Nor is it feasible to offer habeas hearings in person, which would require returning the class members to U.S. custody. Defendants are unable to retrieve class members from Venezuela at this time, as civilian travel into and out of Venezuela has become heavily restricted. Moreover, requiring engagement with the Rodríguez regime on this issue would disrupt ongoing negotiations. As Secretary Rubio's declaration makes clear, the situation in Venezuela is still in flux and highly sensitive, such that diplomatic engagement on this issue presents significant foreign-relations concerns. *See* Rubio Decl., ¶¶ 3-4. Forcing Defendants to take any action regarding class members inside of Venezuela will thus disrupt "sensitive and weighty interests of national security and

foreign affairs" with a nation that is currently in flux. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–35 (2010).

If the Court enters such an order, Defendants note that they intend to seek a stay pending appeal of any injunction. For the reasons set forth above, any injunction would lack legal basis. As for the equities, the class members are no longer detained and face, even on this Court's telling, only hypothetical and speculative "collateral consequences" from their AEA designations. Meanwhile, an injunction would impermissibly intrude on core Article II powers, and cause serious harms to the foreign policy and national security of the United States. *See J.G.G. v. Trump*, 147 F.4th 1044, 1071 (D.C. Cir. 2025) (Rao, J., concurring). Defendants should thus be given the opportunity to seek appellate review before being forced to comply with an injunction. Defendants will file a separate motion seeking that relief after a final judgment is issued.

Dated: January 12, 2025                Respectfully submitted,

                                              Brett A. Shumate
Assistant Attorney General
Civil Division

Drew C. Ensign
Deputy Assistant Attorney General
Office of Immigration Litigation

*/s/ Tiberius Davis*
Tiberius Davis
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice

Anthony Nicastro
Acting Director
Office of Immigration Litigation

*Counsel for Respondents–Defendants*