**UNDER SEAL**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LIYANARA SANCHEZ, as next friend on behalf of FRENGEL REYES MOTA, et al.,<br><br><br>Petitioner,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br><br><br>Respondents. | Civil Action No. 1:25-cv-00766-JEB<br><br><br><u>Declaration Of Michael G. Kozak</u> |

**DECLARATION OF MICHAEL G. KOZAK**

I, Michael G. Kozak, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1.    I am the Senior Bureau Official within the Bureau of Western Hemisphere Affairs (WHA) of the United States Department of State, a position I have held on different occasions previously and since January 2025. In that capacity, I lead and oversee WHA, including the country offices handling affairs regarding Central and South America and other countries in the Hemisphere. I am a career member of the Senior Executive Service and have served in a variety of senior positions in the Department of State. WHA is responsible for diplomatic relations between the United States and countries in the Western Hemisphere, including El Salvador and

**UNDER SEAL**

**UNDER SEAL**

2

Venezuela. I make the following statements based upon my personal knowledge, including from my experience since 1971 engaging in diplomatic and other work of the State Department with respect to El Salvador, Venezuela, and other countries in the region and around the world, as well as upon information made available to me in the performance of my official duties.

2.     Attached are several exhibits that are true and accurate: diplomatic notes dated March 13, 14, and 31, 2025, and a letter grant dated March 22, 2025.

**U.S.-El Salvador Arrangement**

3.     El Salvador has for many years accepted the return of its own nationals removed from the United States without conditions. Following weeks of high-level diplomatic discussions that began early in this Administration and accelerated after Secretary Rubio's trip to El Salvador on February 3, 2025, the United States and El Salvador memorialized an arrangement concerning the removal of third country nationals from the United States through a non-legally-binding exchange of diplomatic notes dated March 13 and 14. In this exchange, El Salvador expressed its "readiness to accommodate approximately 300" members of TdA to be transferred to El Salvador by the United States, along with other commitments.

4.     More specifically, in the March 13 note, the U.S. Embassy in San Salvador expressed the United States' understanding that "El Salvador intends to accommodate [the TdA members] for a duration of one year unless or until a determination concerning their long-term disposition is made." On March 14, the Ministry of Foreign Relations of El Salvador sent the U.S. Embassy a note in response committing to "house these individuals for one (1) year pending the United States' decision on their long-term disposition."

5.     The possible implication from this Salvadoran note that the United States retained some sort of decision-making authority over the TdA members' long-term disposition ran contrary

**UNDER SEAL**

to the United States' understanding of what leadership of both countries had negotiated, and the Embassy immediately brought this discrepancy to the attention of appropriate officials in the Salvadoran Ministry of Foreign Relations. Later on the same day—March 14—El Salvador withdrew its original note and issued a replacement note in which the only change was to commit to "house these individuals for one (1) year pending further decisions on their long-term disposition." The Salvadoran Ministry of Foreign Relations requested that the U.S. Embassy return the superseded note, and the Embassy did so. It is my understanding that El Salvador decided to house these TdA members in CECOT, in a part of the prison that is separated from the general prison population.

6.      The March 13 diplomatic note also memorializes the United States' intention, "[i]n recognition of El Salvador's assistance on this matter, and in order to advance the shared objective of advancing the anti-crime and anti-drug objectives of our countries," to provide in-kind and financial support to the Government of El Salvador. In its March 14 response, El Salvador expressed its appreciation for this offer. Thereafter, on March 22, the United States and El Salvador entered into a letter grant providing funds for El Salvador's law enforcement and anticrime needs. The letter grant acknowledged that El Salvador could choose to use these funds for "costs associated with" the housing of TdA members. However, the use of the funds was not limited to this purpose but was available to help address law enforcement and anticrime needs more generally. High-level Salvadoran officials have confirmed to the U.S. Embassy their understanding that the funds may be used for these broader purposes and need not be used to pay for housing TdA persons transferred from the United States.

7.      In the March 13 and 14 arrangement, as reinforced in a third diplomatic note dated March 31, the United States and El Salvador acknowledged that El Salvador would receive and

**UNDER SEAL**

**UNDER SEAL**

4

treat individuals removed pursuant to the arrangement in accordance with Salvadoran domestic law and El Salvador's international legal obligations regarding human rights and the treatment of prisoners, including obligations under the Convention Against Torture. In its March 14 note, El Salvador provided its express assurance to uphold these obligations in its reception of these individuals. El Salvador also reaffirmed "its commitment to assist the United States in combating terrorism and promoting peace and freedom across our nations, while upholding human rights."

8.      The March 13 and 14 exchange of notes between the United States and El Salvador was reported to Congress as a "qualifying non-binding instrument" under the Case-Zablocki Act, 1 U.S.C. § 112b, on April 30, 2025.

**Other Implications of the U.S.-El Salvador Arrangement**

9.      It was and remains my understanding that the detention and ultimate disposition of those detained in CECOT and other Salvadoran detention facilities are matters within the legal authority of El Salvador in accordance with its domestic and international legal obligations. Some recent events may inform this point. On April 20, Salvadoran President Bukele made a public proposal to Nicolas Maduro of Venezuela for a "humanitarian agreement that contemplates the repatriation of 100%" of the TdA members transferred from the United States to El Salvador "in exchange for the release and surrender of an identical number (252) of the thousands of political prisoners you hold." https://x.com/nayibbukele/status/1914070199659098258. On April 22, President Bukele lamented Maduro's apparent rejection of his proposal and reiterated the proposal, posting a formal version from the Salvadoran Ministry of Foreign Relations addressed to the Maduro regime. https://x.com/nayibbukele/status/1914802146325004726.

10.     Several Members of Congress have in recent weeks requested to visit CECOT or to visit specific detainees housed there, including Kilmar Abrego Garcia, a Salvadoran national

**UNDER SEAL**

**UNDER SEAL**

5

transferred to El Salvador at the same time as the TdA members. While the U.S. Embassy has facilitated these U.S. congressional trips to El Salvador per routine practice, the Salvadoran government has decided, without seeking U.S. concurrence, to accommodate some of the delegations' requests to visit CECOT and to deny others. Moreover, El Salvador transferred Mr. Abrego Garcia out of CECOT and to a different facility several weeks ago. The United States found out about this transfer only when Mr. Abrego Garcia told Senator Van Hollen, in a meeting arranged by the Government of El Salvador, that he had been transferred.

11.     Statements by high-ranking officials of both the United States and El Salvador regarding the March 13 and 14 arrangement reflect the fact that the two nations have shared common interests and that each country respects and takes into account the opinions and arguments of the other. El Salvador makes its own determinations regarding whether to accept or decline requests from the United States, just as the United States makes its own determinations regarding the requests of El Salvador. For example, the United States has requested the return of Mr. Abrego Garcia from El Salvador's custody. El Salvador has yet to return him. I have been apprised that the Secretary of State is personally pursuing his return.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of May 2025.

Michael G. Kozak
Senior Bureau Official
Western Hemisphere Affairs
U.S. Department of State

**UNDER SEAL**